# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**
05/03/2019
CT Log Number 535414060

TO: Heather Jarvis
INFINITY INSURANCE COMPANY
2201 4th Avenue North
Birmingham, AL 35203

RE: **Process Served in Florida**

FOR: Infinity Auto Insurance Company  (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jorge Sardinas, Pltf. vs. Infinity Auto Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summons, Attachment(s), Complaint(s), Exhibit(s), Attachment(s), Letter(s) |
| **COURT/AGENCY:** | Broward County Circuit Court, FL<br>Case # CACE1900930208 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Electronic Receipt on 05/03/2019 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Edward H. Zebersky<br>Zebersky Payne Shaw Lewenz, LLP<br>110 S.E. 6th Street, Suite 2150<br>Ft. Lauderdale, FL 33301<br>954-989-6333 |
| **REMARKS:** | Process received by Chief Financial Officer on 05/01/2019 and forwarded to C T Corporation System by electronic delivery on 05/03/2019. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/03/2019, Expected Purge Date: 05/08/2019<br><br>Image SOP<br><br>Email Notification,  Heather Jarvis  heather.jarvis@ipacc.com<br><br>Email Notification,  JILL DOUGLAS  jdouglas@kemper.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>954-473-5503 |

Page 1 of  1 / SK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

*19-000115303*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

JORGE SARDINAS

PLAINTIFF(S)

VS.

INFINITY AUTO INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **CACE 19-009302 (08)** |
| **COURT:** | **17TH JUDICIAL CIRCUIT** |
| **COUNTY:** | **BROWARD** |
| **DFS-SOP #:** | **19-000115303** |

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, May 1, 2019 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, May 3, 2019 to the designated agent for the named entity as shown below.

      INFINITY AUTO INSURANCE COMPANY
      DONNA MOCH
      1200 SOUTH PINE ISLAND ROAD
      PLANTATION, FL 33324

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

EDWARD ZEBERSKY
ATTORNEY
ZEBERSKY PAYNE, LLP
110 S.E. 6TH STREET, SUITE 2150
FORT LAUDERDALE, FL 33301

HB1

RECEIVED AS STATUTORY REGISTERED AGENT
on 01 May, 2019 and served on defendant or named party on 03 May, 2019
by the Florida Department of Financial Services

IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

Case No.

JORGE SARDINAS,

     Plaintiff,

vs.

INFINITY AUTO INSURANCE COMPANY,

     Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To All and Singular the Sheriffs of said State:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint in this action on
**Defendant:**

                          **INFINITY AUTO INSURANCE COMPANY**
**By Serving Its Registered Agent:**     **Florida Chief Financial Officer**
                              **200 E. Gaines Street**
                              **Tallahassee, FL 32399**

     Each defendant is required to serve written defenses to the complaint or petition on Edward H. Zebersky, Esq.,
(Florida Bar No. 0908370) Plaintiff's attorney, whose address is:

ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 SE 6th Street, Suite 2150
Fort Lauderdale, FL 33301
(954) 989-6333
Email: ezebersky@zpllp.com

within twenty (20) days[1] after service of this summons on that defendant, exclusive of the day of service, and to file the
original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter.
If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or
petition.

     WITNESS my hand and seal of said Cour   _____MAY 01 2019_____

                           BRENDA D. FORMAN
                           As Clerk of said C

                         _____
                         By: Deputy Clerk

                         **BRENDA D. FORMAN**

---

[1] "Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one
of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.
When suit is brought pursuant to 768.28, Florida Statutes, the time to respond shall be 30 days."

[1836916/1]

## AMERICANS WITH DISABILITIES ACT OF 1990

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 470, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

Case 0:19-cv-61369-WPD   Document 1-1   Entered on FLSD Docket 05/31/2019   Page 6 of 112

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CIVIL DIVISION**

**JORGE SARDINAS,**

      **Plaintiff,**

                            **CLASS REPRESENTATION**

**v.**

                            **Case No.:**

**INFINITY AUTO INSURANCE
COMPANY,**

      **Defendant.**

_____/

**CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiff, JORGE SARDINAS ("Sardinas"), individually, and on behalf of all those similarly situated, brings this action against Defendant, INFINITY AUTO INSURANCE COMPANY ("INFINITY"), and alleges as follows:

**INTRODUCTION**

1.     Sardinas and putative class members are insured under standardized insurance policies covering damage to motor vehicles that INFINITY insures.   Each has been involved in an accident causing damage to their insured vehicle for which INFINITY has declared their vehicles to be total losses, triggering its duty under the insurance policy to make actual cash value settlement payments of their insurance claims. The gravamen of this suit is that INFINITY has failed to adjust Sardinas's and class members' total loss claims in compliance with its insurance policy and Florida Statutes.

2.     INFINITY insures all its Florida individual automobile insurance policyholders, including Sardinas and Class Members, using the Form 10950PVA02 policy or a substantially similar policy form (the "Policy").  The Policy is governed by Florida law, and by its terms, it is reformed to conform to Florida Statutes, including Section 626.9743(5)(a), Florida Statutes, setting forth duties and procedures that insurers, including INFINITY, must abide by when adjusting and paying first-party total loss insurance claims like the ones at issue in this case.

3.     Section 626.9743(5)(a) allows INFINITY to adjust and settle a first-party motor vehicle total loss via a cash settlement based upon the actual cost to purchase a comparable motor vehicle.  The "actual cost" may be derived from the "retail cost" as determined from a "generally recognized used motor vehicle industry source," including an electronic database. § 626.9743(5)(a)(2), Fla. Stat.

4.     INFINITY purportedly adjusted and settled Sardinas's and Class Members' total losses in this manner, but in reality, it did not.

5.     Specifically, INFINITY used the CCC ONE electronic system and attendant database (the "CCC system"), a proprietary product licensed from CCC Information Services Inc. ("CCC"), to adjust and settle Sardinas's claim.  INFINITY takes the position that use of the CCC system complies with Florida law and the Policy.

6.     But this CCC system violates Florida law incorporated into the Policy, because the CCC system is not a "generally recognized used vehicle industry source" as required by the Policy and Section 626.9743(5)(a)(2), Florida Statutes.  As detailed below, Defendant has routinely and systematically misinterpreted the Policy and Florida law in this manner.

7.     To make matters worse, INFINITY additionally systematically breaches the Policy and violates Florida law by failing to pay as part of the actual cash value settlement the "Dealer

Preparation Fee and/or Document Fee" required to be disclosed under Sections 501.976(11) and 520.02(2), Florida Statutes, and charged by every used car dealer in Florida (the "Dealer Fees") and by failing to pay as part of that cash settlement the title and license plate registration fees collected by every used car dealer in Florida. Those fees constitute part of the "actual cost to purchase a comparable motor vehicle" under Section 626.9743(5)(a), so they must be reimbursed pursuant to the Policy and Section 626.9743(5). In adjusting total loss claims, INFINITY routinely does not pay these fees pursuant to its Policy.

8.     Similarly, INFINITY systematically breaches the Policy, because it routinely refuses to pay sales tax as part of the cash settlement, but rather offers to pay sales tax only after an insured purchases a new vehicle. The Florida courts have already held that upfront payment of sales tax, like title and license plate registration fees, are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy which must be paid upfront as part of a cash settlement pursuant to Fla. Stat. § 626.9743(5)(a), notwithstanding Fla. Stat. § 626.9743(9).

9.     To address the foregoing misinterpretations by—and disputes with—INIFINITY, Sardinas brings three counts:

10.     In Count I, Sardinas and the Class seek a declaratory judgment to address the doubt they have about their rights under Florida law and the Policy and their ongoing controversy with INFINITY over the legality of the CCC system and its failure to pay title and license plate registration fees and Dealer Fees as part of its cash settlements of total loss claims. Specifically, they ask for a declaration that the Policy and Florida law do not allow INFINITY to adjust and settle total loss claims using the CCC system and that INFINITY must pay Dealer Fees and title/license plate fees and sales tax upfront as part of its cash settlements of total loss claims.

Sardinas and the Class also seek supplementary relief in connection with their declaratory judgment cause of action, but they seek no monetary relief in Count I.

11.     In Count II, Sardinas and the Class bring a claim for breach of contract and seek past damages for INFINITY's failure to pay title and license plate registration fees as part of its cash settlements of total loss claims.

12.     In Count III, Sardinas and the Class bring a claim for breach of contract and seek past damages for INFINITY's non-payment of sales taxes as part of its cash settlements of total loss claims.

13.     In conjunction with both their declaratory judgment and breach of contract causes of action, Sardinas and the Class also seek to recover their reasonable attorneys' fees and costs.

## JURISDICTION, PARTIES, VENUE

14.     Plaintiff, Sardinas, is a natural person, has at all times material has been resident of Florida, and is sui juris. He is a named insured under INFINITY Form 10950PVA02 issued to him in Florida.

15.     Each class member is insured under the same Florida insurance policy form or a substantially and materially similar standardized Florida form as Sardinas.

16.     INFINITY is an Ohio corporation with its principal place of business in Birmingham, Alabama. It is registered to do and doing business in Florida as a Foreign Profit Corporation and is licensed to sell insurance in Florida.

17.     At all times material hereto, INFINITY was in the business of selling automobile insurance and adjusting and settling automobile insurance claims throughout Florida, including Broward County, including the sale of collision coverages and adjustment and settlement of first-party total loss claims under those coverages in the Policy there.  INFINITY may be served with

process through its registered agent for the service of process in Florida, Jimmy Patronis, the Chief Financial Officer of the Florida Department of Financial Services at 200 E Gaines St, Tallahassee, FL 32399.

18.     This Court has subject matter jurisdiction because the amount in controversy in this action exceeds $15,000.00, exclusive of attorneys' fees, interest, and litigation costs. Also, this action seeks declaratory relief and supplemental relief pursuant to Chapter 86, Florida Statutes, which confers jurisdiction on this Court. § 86,011, Fla. Stat.

19.     At this time, Sardinas and the Class have no basis to claim that the aggregate amount in controversy in this case exceed $5 million.

20.     Venue is proper in Broward County, Florida, because INFINITY is a Foreign Profit Corporation and it has offices for the transaction of, and agents transacting, its customary business in Broward County.

21.     All conditions precedent to the maintenance of this action have occurred, have been performed, have been waived, or INFINITY is estopped from asserting them, including Sardinas's and the other Class members' compliance with the following Policy provisions (to the extent they constitute conditions precedent): Part E-Coverage for Damage to the Insured Auto, Proof of Loss; and Part F, General Provisions, Suits Against Us.

## FACTUAL ALLEGATIONS REGARDING THE POLICY AND THE CCC SYSTEM

### *Policy Provisions*

22.     INFINITY insures Sardinas for Collision coverage using the Form 10950PVA02 (the "Policy").  An exemplar of the Policy is attached as **Exhibit A.**

23.     The Policy is a valid, enforceable contract governed by Florida law.

24.     The Policy provides, in pertinent part, as follows:

## PART E – COVERAGE FOR DAMAGE TO THE INSURED AUTO

\*\*\*

## ADDITIONAL DEFINITIONS USED IN PART E ONLY

1. **"Actual cash value"** means market value at the time of the loss based upon vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment.

   …

3. **"Betterment"** means a deduction for making an item better or adding value thereto.

4. **"Collision"** means **loss** caused by **the insured auto's** upset or overturn, or sudden impact with another object.
   …

8. **"Depreciation"** means the loss of value caused by physical, technological, social, and/or location deterioration.
   …

10. **"Loss"** means sudden, direct, and accidental damage to, or theft of, the insured auto, including its original optional equipment, which is permanently installed at the factory by the vehicle manufacturer or authorized dealer…

(Ex. A at pp. 12-13).

\*\*\*

## PAYMENT OF LOSS - PART E ONLY

We may pay for the loss in money, or repair or replace the damaged or stolen property…

(Ex. A at p. 15).

\*\*\*

## LIMITS OF LIABILITY - PART E ONLY

Our limits of liability for loss shall not exceed the lesser of:

[1837532/1]

6

1. the actual cash value of the stolen or damaged property, at the time of loss, which may include an adjustment for depreciation and/or betterment;

…

All claims submitted under this Part shall be subject to the applicable deductibles shown on the Declarations Page. Any applicable deductible amount and salvage value, if you retain the salvage, is subtracted from all loss payments.

(Ex. A at p. 14).

\*\*\*

## PART F- GENERAL PROVISIONS

## TERMS OF POLICY CONFORMED TO STATUTES

Terms of this policy that conflict with the statutes of the **state** in which we issue this policy are hereby amended to conform to such statutes.

(Ex. A at p. 19).

### CCC System and INFINITY's Total Loss Process

25.     Sardinas's and each Class member's insured motor vehicle sustained property damage covered under the Policy to such extent that INFINITY declared the vehicle a total loss under the Policy, triggering its duty under the Policy to make actual cash value settlement payments of their insurance claims.

26.     For Sardinas and each Class member, INFINITY undertook a routine total loss settlement process. That process involved declaring the vehicle a total loss, adjustment of the total loss claim, and a cash settlement payment to them of the purported actual cash value of the totaled vehicle.

27.     Under the Limits of Liability for the Collison coverage of the Policy and Section 319.30, Florida Statutes, INFINITY has the right when presented with a claim for damages to a vehicle where the cost to repair would be greater than its actual cash value (less depreciation and/or

betterment) to declare the vehicle a total loss and pay the lesser actual cash value. Of course, when a vehicle is stolen, it is a total loss, and INFINITY must pay the actual cash value too.

## Section 626.9743 Violations

28.     When INFINITY declares a vehicle a total loss, it must pay its insureds, including Sardinas and Class members, the vehicle's actual cash value as defined in and pursuant to Section 626.9743, Florida Statutes, because to the extent that the Policy on its face is in any way inconsistent with that statute, its own terms and Florida law compel that it be reformed to conform to the statute. (Ex. A at p. 19).Thus, if INFINITY elects to pay a cash settlement, as it did with Sardinas's and each Class member's claim, it must pay "the actual cost to purchase a comparable motor vehicle, including sales tax," which "cost may be derived from: … [t]he retail cost as determined from a generally recognized used motor vehicle industry source such as: … [a]n electronic database…" § 626.9743(5)(a)(2)(a), Fla. Stat.

29.     This cash settlement is independent of what the policyholder ends up spending, if anything. In fact, the policyholder may simply keep the cash settlement and never replace the total loss vehicle. That is why all retail costs of a comparable vehicle must be paid upfront as part of a cash settlement. In its total loss settlements under the Policy, INFINITY uses the CCC ONE electronic system and attendant database (the "CCC system"), a proprietary product licensed from CCC Information Services Inc. ("CCC"), to adjust and settle total loss claims, as it did with Sardinas's and each Class member's claims. The CCC system has the capability to provide a variety of methods for calculating total loss vehicle values which can be chosen by its licensees, here INFINITY. Accordingly, in this Complaint, "CCC system" refers to the version of this service used by INFINITY.

31. The CCC system generates a CCC Market Valuation Report ("CCC Report") that INFINITY provides to insureds, as it did with Sardinas and Class members, to explain INFINITY's valuation of their total loss vehicles and actual cash value payments under the Policy. INFINITY keeps the CCC Reports for all its total loss insureds in their claim files, as it did with Salinas and the other Class members.

32. The CCC system provides total loss valuations automatically based on supposedly comparable vehicle data contained in its computer system and data on the insured's total loss vehicle entered into it by INFINITY's adjusters through a computer interface. Among that data entered into the CCC system are the total loss vehicle's Vehicle Identification Number ("VIN"), which provides the vehicle make, model, configuration (e.g., number of doors, engine size, equipment and options), as well as the mileage and license plate number.

33. The CCC system starts by automatically calculating a "Base Value" for the total loss vehicle, as described below, which it adjusts based on the condition of the total loss vehicle. Specifically, INFINITY adjusters rate the condition of eleven components (four interior, four exterior, two mechanical and front and rear tires) of the total loss vehicle as "Rough," "Average Private," or "Dealer Retail" with the goal of adjusting the value of the total loss vehicle to the value of the same vehicle in "Average Private" condition. If a component is rated "Rough," it results in a downward adjustment to the vehicle's "Base Value." If a component is rated "Average Private," no adjustment is made. And, if a component is rated "Dealer Retail," it results in an upward adjustment to the total loss vehicle's "Base Vehicle Value." Effectively, then, the baseline condition used for total loss vehicles is "Average Private" condition. The result of taking the "Base Vehicle Value" and making these additional "total loss vehicle component condition adjustments" is called the "Adjusted Vehicle Value" or "Value before Deductible." From the "Adjusted Value"

or "Value before Deductible" the applicable deductible is subtracted, resulting in the "Settlement Value" or "Total." INFINITY pays the "Settlement Value" or "Total" to its total loss policyholders.

34.     The "Base Vehicle Value" is derived by searching the prices advertised by dealers on websites like Autotrader.com, Truecar and dealer websites for anywhere from two to twelve "comparable vehicles" located as close as possible to the insured's residence, adjusting the advertised prices up or down based on mileage, optional equipment and a "Uniform Condition Adjustment" (see below) and then calculating a weighted average of the adjusted prices. According to CCC, the weighting is based on four factors (i) "source of the data (such as inspected versus advertised), (ii) similarity (such as equipment, mileage, and year), (iii) proximity to the loss vehicle's primary garage location, and (iv) recency of information." Upon information and belief, the CCC system omits some of the highest priced comparable vehicles in the area in order to decrease the "Base Vehicle Value."

35.     The supposed purpose of the "Uniform Condition Adjustment" to the "Base Vehicle Value" is to adjust the comparable vehicles to the "Average Private" condition which is used as the baseline condition for the total loss vehicle. To do this, the CCC system assumes all of the "comparable vehicles" being offered for sale via a retail advertisement have an overall condition of "Dealer Retail," and it makes a uniform downward price adjustment to all of them to supposedly find their values if they were only in "Average Private" condition like the total loss vehicle after adjustments. This assumption that all of the "comparable vehicles" are in "Dealer Retail" condition is unwarranted, because CCC personnel, on average, do not inspect any or inspect only one of the "comparable vehicles" used in a valuation, so they have no actual knowledge of the conditions of virtually all of the "comparable vehicles."

36.     This systematic downward adjustment, which Sardinas terms the "Uniform Condition Adjustment," results in a flat and uniform value decrease for each of the "comparable vehicles," thereby lowering the average adjusted prices for the "comparable vehicles," and thereby lowering the total loss vehicle's "Base Vehicle Value."   The CCC system's application of downward adjustments of the exact same dollar amounts to "comparable vehicles" with advertised prices that differ by thousands of dollars could not possibly serve its stated purpose, because vehicles with such different advertised prices could not all be adjusted to "Average Private" condition from supposedly "Dealer Retail" condition by the exact same dollar amount reductions.

37.     Accordingly, INFINITY's use of "Uniform Condition Adjustments" to supposedly reduce "comparable vehicles" from an assumed "Dealer Retail" condition to an "Average Private" condition when creating the "Base Vehicle Value" is arbitrary and capricious and is not calculated to and does not result in the actual cost to purchase a comparable motor vehicle. Further, if CCC's assumption that **all** or even the majority of dealer cars have a condition of "Dealer Retail" is correct, such vehicles realistically constitute the comparable motor vehicles available to purchase by an insured at retail, and their "retail cost" should not be adjusted downward to the "Average Private" condition under the terms of Fla. Stat. § 626.9743(5)(a)(2) and the conformed Policy. Simply put, the use of "Uniform Condition Adjustments" by GEICO is illegitimate, in breach of the Policy and in violation of Florida law.

38.     The CCC system's methodology is different from that of the two most well-known sources of used car values that are generally recognized in the used motor vehicle industry, NADA and KBB.  The NADA and KBB databases use actual sales data, not "adjusted" advertised prices, from a multi-state region.  They each provide a "retail clean" or "dealer" value, which would be the appropriate value to use given that Fla. Stat. § 626.9743(5)(a)(2) requires actual cash value to

be based on the retail cost. Regardless of the reasons, in the vast majority of cases, the CCC methodology results in "Adjusted Values" that are lower than the NADA and KBB retail clean or dealer values. Indeed, upon information and belief, CCC presents marketing materials, workshops, and training to prospective, and current, insurance company clients stating that the average market value as determined by the CCC system will result in lower total loss valuations and indemnity savings. To be clear, Sardinas only pleads the CCC system's systematic undervaluation to illustrate that it violates Florida law and breaches the Policy because it does not calculate the retail cost of a replacement vehicle. At this time, Sardinas does not claim that the value that INFINITY paid him for his car (excluding the non-payment of title and license registration fees) was too low.

39.      The CCC system does not comply with Section 626.9743(5)(a)(2)(a), Florida Statutes and thus breaches the Policy for two major reasons. First, it is not "a generally recognized used motor vehicle industry source" for the "retail cost" of used motor vehicles. Indeed, the CCC system is not available to Sardinas and Class members as consumers, and it is not even marketed to the motor vehicle industry as whole. Rather, CCC only offers the CCC system as a subscription service to insurance companies, which are not part of the used motor vehicle industry. It is marketed to insurers to save them money on claims, not as an objective used motor vehicle industry source. Second, its selective exclusion of the "comparable vehicles" with the highest advertised prices and its use of systematic downward "Uniform Condition Adjustments" does not result in retail costs.

40.      While INFINITY may try to argue otherwise, the CCC system is also not designed to and does not comply with Section 626.9743(5)(a)(1), Florida Statutes. When that provision states that "the actual cost to purchase a comparable motor vehicle… may be derived from:…the **cost** of two or more such comparable vehicles available within the preceding 90 days" (if

"comparable motor vehicles are available in the local market area"), it means the **actual cost** of buying from private parties, which could only be determined by directly contacting those private parties and obtaining quotes for purchase.  This provision does not provide for use of an electronic database or system at all, much less one that does not use costs of purchase but rather mere advertised prices subject to automated deductions calculated to decrease the value of vehicles below actual cost.  Nor does it mean determining retail prices by getting quotes from dealers, because that is the option provided by Section 626.9743(5)(a)(3), Florida Statutes.

41.     Further, despite any INFINITY assertion to the contrary, the CCC system is not designed to and does not comply with Section 626.9743(5)(a)(3), Florida Statutes.  It does not obtain "quotes" from dealers—the actual prices for which they commit to sell the cars.  Rather, it uses advertised prices.

42.     The CCC system also does not comply with Section 626.9743(5)(c), Florida Statutes, for two reasons. *First*, the system and report are clearly attempting to fall under Section 626.9743(5)(a)(2)(a), and a failed attempt to do that cannot satisfy Section 626.9743(5)(c) as a "basis that varies from the methods described in paragraph (a) or paragraph (b)." *Second*, that section requires that "the determination of value must be supported by documentation," and INFINITY has no documentation to support the appropriateness of the amounts of the condition adjustments to the total loss vehicle, the mileage deductions to the comparable vehicles, and the illegitimate "Uniform Condition Adjustments" to all comparable vehicles.

43.     Finally, Sardinas and the other members of the Class did not agree on other method with INFINITY to value their total loss vehicles. Indeed, upon information and belief, INFINITY will not agree to value total loss vehicles by any method other than the CCC system. Thus, the CCC report is not designed to, and did not, comply with Section 626.9743(5)(d)., Florida Statutes.

**Failure to Pay Sales Tax,  Dealer Fees, and Title and License Plate Registration Fees**

44.     In Florida, the "actual cost to purchase a comparable vehicle" and its "retail cost" (as required by Section 626.9743(5)(a)(2)(a)) necessarily includes sales tax and numerous fees, including the mandatory title and license plate registration fees, because the State of Florida requires a dealer to collect those amounts in connection with the sale and registration of a used motor vehicle.

45.     While INFINITY may pay sales tax after a policyholder purchases a replacement vehicle and requests payment of the sales tax, Florida law requires sales tax be paid upfront as part of the "actual cost to purchase a comparable vehicle" and its "retail cost" (as required by Section 626.9743(5)(a)(2)(a)).  INFINITY however routinely and systematically does not and did not include sales tax in its upfront cash settlements paid to insureds, including Sardinas and the other Class members. Likewise, INFINITY routinely and systematically does not pay title and license plate registration fees in its cash settlements paid to its insureds, including Sardinas and the other Class members.

46.     Moreover, the "actual cost to purchase a comparable vehicle" also includes the "Dealer Preparation Fee and/or Document Fee" required to be disclosed under Sections 501.976(11) and 520.02(2), Florida Statutes, and charged by every used car dealer in Florida (the "Dealer Fees"), because no used car dealer in the State of Florida will sell a vehicle without charging such Dealer Fees.  INFINITY however routinely and systematically does not and did not include those fees in its cash settlements paid to its insureds, including Sardinas and the other Class members.

47.     Plainly, the Policy, as conformed to Section 626.9743(5), Florida Statutes, requires these fees and sales tax to be paid upfront as part of their cash settlements of total loss claims, which INFINITY should know from persuasive court rulings directly on point.

**FACTUAL ALLEGATIONS AS TO INFINITY'S TREATMENT OF SARDINAS**

48.     On or about September 14, 2018, Sardinas's vehicle ("Insured Auto"), a 2016 Scion IC Automatic, was involved in motor vehicle accident which rendered the vehicle a total loss. At that time, Sardinas was a contracting party and named insured under the Policy issued by INFINITY, which was in full force and effect.

49.     Thereafter, on September 19, 2018, Sardinas made a total loss claim with INFINITY for payment on his Insured Auto.

50.     On November 20, 2018, under a cover letter of that date, INFINITY advised Sardinas that his Insured Auto was a total loss under the Policy.  In that letter, it broke down his settlement, as follows, which shows its complete failure to include sales tax and mandatory fees in his actual cash value payment offer:

```
Your vehicle has been determined to be a total loss as it was damaged
beyond the economic cost to repair it.  Our offer of settlement for
the Actual Cash Value of your claim is as follows:

    Value                               $ 15048.28
    Sales Tax (if applicable)           $
    DMV Fees (if applicable)            $
    Less Salvage Value (if applicable)  $
    Less Salvage Tax (if applicable)    $
    Salvage Fees (if applicable)        $
    Less Deductible (if applicable)     $ 1000.00
    Miscellaneous                       $
    Net Payment:                        $ 14048.28
```

*See* **Exhibit B**.

51. This same letter stated that it would pay sales tax of $952.90 but only upon proof that the Insured Auto was replaced. Title/registration fees were not mentioned in the response other than the oblique reference to "DMV" fees above, with no amount listed. Nor were Dealer Fees mentioned.

52. The actual cash value that INFINITY offered Sardinas was calculated using the CCC system.  By separate cover, INFINITY provided a CCC Report to Sardinas, which the November 20, 2018 letter states represented its evaluation of the actual cash value.  *See* **Exhibit C**.

53. Urgently needing a new vehicle, Sardinas accepted initial payment from INFINITY of $14,048.28.  He did so without releasing or waiving any claims.

54. But Sardinas remained concerned about the legality of INFINITY'S adjustment of this claim. By letter dated February 27, 2019, Sardinas (through counsel) wrote INFINITY, explaining his concerns about its violations of Section 626.9743, Florida Statutes, in adjusting his claim and offering it an opportunity to cure those violations for him individually and for similarly situated policyholders. *See* **Exhibit D**.

55. In the cure letter, Sardinas's counsel explained the CCC system was not a generally recognized used motor vehicle industry source as Section 626.9743 requires, that INIFINITY must pay sales tax upfront when its settles a total loss claim, and that it must do the same for title/registration fees and Dealer Fees. *Id.*

56. INFINITY responded to the cure letter via correspondence, attached hereto as **Exhibit E**.  In it, INFINITY maintains that its use of the CCC system to calculate the actual cash value of his car met the requirements of Florida law and the Policy. *Id.* The correspondence mentions title and license registration fees but made no offer to pay them.  INFINITY additionally

maintained that it was not required to pay Sardinas any Dealer Fees. And INFINITY maintained that sales tax was only due when and it was incurred.

57.     In its response, INFINITY said it was treating the cure letter as claiming that Sardinas had purchased a replacement vehicle even though the letter said no such thing, and it enclosed a check for $952.90 in sales tax with the letter. *See* Ex. E. Sardinas deposited the check without conceding that INFINITY had not breached his Policy.

58.     At this time, Sardinas does not aver that the amount that INFINITY paid him for the actual cash value of his total loss vehicle claim was too low (excluding the failure to pay sales tax, title and license registration fees and Dealer Fees).

59.     Rather, Sardinas maintains that INFINITY's use of the CCC system to calculate the actual cash value of his car did not meet the requirements of Florida law and the Policy and that INFINITY had the obligation to pay him sales tax, Dealer Fees and title and license plate registration as part of its cash settlement of his total loss claim.

60.     Sardinas and the Class are in doubt as to their rights under Section 626.9743(5), Florida Statutes, and the Policy, and INFINITY's compliance with same.

61.     Sardinas is still insured by INFINITY, and he can reasonably expect that he may suffer total losses under the Policy in the future that INFINITY treat in the same manner as alleged above.

## CLASS REPRESENTATION ALLEGATIONS

62.     Sardinas brings this action under Florida Rules of Civil Procedure 1.220(a), and (b)(1), (b)(2) and (b)(3), individually, on behalf of all other individuals similarly situated—the "Class" or "Class Member" defined below.

63.   **Class Definition**.  The Class consists of and is defined as all Florida citizens including Sardinas who: (a) on or after April 30, 2014; (b) are or were covered by an INFINITY personal automobile insurance Policy issued in Florida; (c) made a claim under the Collision or Comprehensive coverage of that Policy for damage or loss to a covered vehicle that INFINITY accepted and treated as a total loss claim; and (d) INFINITY paid the claim on a cash settlement basis with the actual cash value derived from the CCC system. The class period will be from April 30, 2019, to the date of class certification (hereinafter the "Class Period").

64.   Sardinas reserves the right to amend the Class definition and/or add sub-class definitions as discovery proceeds and to conform to the evidence.

65.   Excluded from the Class are INIFINIIY, its agents, representatives, and employees; and any judge to whom this action is assigned and any member of that judge's staff and immediate family.

66.   **Numerosity (Rule 1.220(a)(1))**. While the exact number of Class Members is unknown at this time, Sardinas submits that based upon his counsel's representation of automobile accident victims in Florida, that there are at least one-hundred INFINITY policyholders spread throughout the State of Florida who are potential Class Members in this action.  His belief is bolstered by public information indicating INFINITY historically has primarily insured automobiles in four states (including Florida), and with approximately 10,600 independent agents garnering $1.4 billion in 2017 direct written premiums, it is one of the largest specialty auto insurers in the United States. Individual joinder of these Class Members is impracticable,

67.   Sardinas further alleges on information and belief that the members of the Class will be ascertainable through INFINITY's electronic records, data, and databases.

68.     **Commonality (Rule 1.220(a)(2))**.  There are common questions of law and/or fact shared by Sardinas and each member of the Class. These common questions of law and/or fact include the following:

a.  Whether INFINITY's use of the CCC system to adjust and settle first-party motor vehicle total loss claims violates Section 626.9743, Florida Statutes;

b.  Whether INFINITY's failure to pay insureds Dealer Fees, sales tax and title and license plate registration fees upfront when adjusting and settling first-party motor vehicle total loss claims violates Section 626.9743, Florida Statutes;

c.   Whether INFINITY's failure pay insureds sales tax upfront when adjusting and settling first-party motor vehicle total loss claims breaches the Policy as conformed to Florida law;

d.  Whether INFINITY's failure pay insureds title and license plate registration fees upfront when adjusting and settling first-party motor vehicle total loss claims breaches the Policy as conformed to Florida law;

e.  Whether Sardinas and the other Class Members are entitled to a declaration of their rights under the Policy and Florida law as to their past claims and/or in the event they suffer a total loss to a covered vehicle in the future;

f.  Whether Sardinas and the other Class Members have incurred money damages for INFINITYs breaches of the Policy; and,

g.  Whether Sardinas and the other Class Members are entitled to recover reasonable attorneys' fees and costs in connection with the successful

prosecution of their declaratory judgment and/or breach of contract causes of action.

69.     **Typicality (Rule 1.220(a)(3))**. Sardinas's claims are typical of the claims that would be asserted by other members of the Class in that, in proving his claims under the Policy and Florida law, he will simultaneously prove the claims of all Class Members. The rights afforded under Florida law and the Policy are the same for Sardinas and Class Members.  The Policy is a uniform instrument, containing substantially similar, relevant preprinted text for Sardinas and each Class Member.  INFINITY used the CCC system to adjust Sardinas's and each Class Member's total loss claim, and as with Sardinas, INFINITY failed to pay each Class Member Dealer Fees and title/registration fees when paying on each claim and failed to pay each upfront sales tax.

70.     **Adequacy (Rule 1.220(a)(4))**. Sardinas is a Class Member.  He is an adequate representative of the Class because his interests do not conflict with the interests of other Class Members and he will fairly and adequately protect the interests of the Class Members. Sardinas has taken action before filing this complaint, by hiring skilled and experienced counsel, and by offering INFINITY an opportunity to cure its conduct *vis-à-vis* him individually, and on behalf of Class Members, to protect the interests of the Class. Additionally, Sardinas is cognizant of his responsibility as a Class representative and has retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Each Class counsel has extensive experience in class and/or auto insurance claims.

71.     **Rule 1.220(b)(1)(A)**. Sardinas's and the Class's declaratory judgment and breach of contract causes of action may be maintained as a class action pursuant to Rule 1.220(b)(1)(A) because the prosecution of separate claims by individual Class members would create a risk of inconsistent or varying adjudications concerning individual members of the Class which would

establish incompatible standards of conduct for INFINITY.  For example, the court in one case might rule that INFINITY must pay Dealer Fees or title/registration fees while another might rule that it does not have to do so. INFINITY would be left in an untenable legal limbo in such an event because Florida law requires it to treat all insureds the same under similar circumstances.

72.     **Rule 1.220(b)(2)**. Sardinas's declaratory judgment cause of action may also be maintained as a class action pursuant to Rule 1.220(b)(2), because INFINITY has acted and refused to act on grounds generally applicable to all members of the Class, thereby making final declaratory relief concerning the Class as a whole appropriate.  Specifically, INIFINITY has in the past and will in the future adjust total loss claims the exact same way in breach of the Policy and in violation of Florida law, making declaratory relief for the Class as to its members' rights under the Policy and Florida law appropriate.

73.     **Predominance and Superiority (Rule 1.220(b)(3))**.  Sardinas's breach of contract cause of action may also be maintained as a class action pursuant to Rule 1.220(b)(3), because the questions of law or fact common to Sardinas and the Class predominate over any questions of law or fact affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As demonstrated above, all the questions necessary for resolution of INFINITIY's liability to Sardinas and the Class are common. The only individual issues are the amounts of damages, and they may be calculated on a mechanical, ministerial basis without the need for the trier of fact to decide them

74.     More specifically, a reasonable assumption for a cash settlement is that each Class member will necessarily incur a $75.25 transfer of title fee without lien, a $2.50 title transfer service fee, a $4.50 license plate transfer fee, and a $1.00 air pollution control fee, making all Class members entitled to recover the exact same $83.25 for INFINITY's refusal to pay title and license

registration fees, as a matter of law.  Also, sales tax rates for Class Members are publicly available and can be multiplied by the "Adjusted Vehicle Values" contained in each Class member's CCC Report on a mechanical and ministerial basis.   Those Class members who later received supplemental sales tax payments, as Sardinas did, can be determined from INFINITY's claims files and not be paid sales tax as part of any settlement or payment of judgment.

75.     A class action is superior because the amounts recoverable by individual Class Members are not sufficient to justify individual suits against a large corporation like INFINITY, now merged with Kemper Corporation, which can be expected to vigorously defend every such suit as a matter of precedent. For that reason, Class Members do not have a real interest in individually controlling their separate claims.   Further, the overwhelming majority of Class Members do not even know they have such claims to sue over.  This is demonstrated by the fact that there do not appear be any pending individual suits in Florida against INFINITY over these issues. Simply put, there are no alternatives to a class action to resolve this controversy.

76.     Even if individual suits were feasible and likely to be filed, it would be highly inefficient and a waste of the parties' and the court system's resources to repeatedly adjudicate the same factual and legal issues.  Plus, it could result in undesirable inconsistent adjudications as set forth above.  Thus, it is highly desirable to concentrate the litigation in this forum, which is well equipped to resolve the controversy for all Class Members and INFINITY.

77.     There are no unusual difficulties likely to be encountered in the management of this case as a class action.  Florida law applies to all Class Members' claims, and the legal issues are simple matters of statutory and contractual interpretation. All Class Members are readily ascertainable from INFINITY's records, including physical addresses and email addresses (in most

cases), making the provision of notice routine.  And, as previously explained, damages are easily and readily calculable for each Class Member on a mechanical, ministerial basis.

## COUNT I
## DECLARATORY JUDGEMENT AND SUPPLEMENTAL RELIEF

78.    Sardinas re-alleges and incorporates by reference paragraphs 1-77 above, as if fully set forth herein.

79.    Count I is an action for declaratory judgment and supplemental relief pursuant to Chapter 86, Florida Statutes.  Plaintiff will not seek monetary relief in Count I.  He brings Count I individually and for the Class defined above.

80.    In Count I, individually, and on behalf of Class Members defined above, Sardinas seeks a declaration regarding past conduct as well future conduct.

81.    A controversy presently exists between Sardinas and the Class on one hand and INFINITY on the other, as to whether INFINITY used a vehicle valuation method that complied with Florida law and Sardinas's Policy's Collison coverage, as well as whether Sardinas's Policy's Collison coverage requires upfront payment of sales tax, upfront payment of Dealer Fees and upfront payment of license plate registration and title transfer fees.

82.    INFINITY's use of the CCC system and failure to pay sales tax, Dealer Fees and license plate registration and title transfer fees upfront are all ongoing.

83.    Sardinas is in doubt concerning his rights and those of Class Members under the Policy's Collison Coverage, and bona fide present controversies currently exist between Sardinas and the Class on one hand and INFINITY on the other, concerning the proper interpretation and the express terms of the insurance Policy issued by INFINITY, and other applicable law, and the parties' respective rights and obligations thereunder. In addition, because Sardinas and many other

Class Members are still insured by INFINITY and could reasonably anticipate suffering another total loss in the future, and they are further in doubt about their rights under the Policy.

84.     The rights, status, or other equitable or legal relations of the parties are affected by the express terms of the Policy and applicable law. Accordingly, pursuant to Chapter 86, Florida Statutes, Sardinas and the other Class Members may obtain a declaration of rights, status, or other equitable or legal relations thereunder

85.     Section 86.011, Florida Statutes, states that this Court has "jurisdiction...to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

86.     Section 86.111, Florida Statutes, states, "The existence of another adequate remedy does not preclude a judgment for declaratory relief." Thus, regardless of whether damages are available to Sardinas or Class Members, this Court still has jurisdiction to determine the parties' respective rights, status, and other equitable or legal relations under the insurance policy and applicable law.

87.     Section 86.011(2), Florida Statutes, states that "[t]he court may render declaratory judgments on the existence, or non-existence...Of any fact upon which the existence or nonexistence of such immunity, power, privilege, or right does or may depend, whether such immunity, power, privilege, or right now exists or will arise in the future." Thus, the Court still has jurisdiction to determine whether INFINITY's past conduct has been unlawful in order to prevent the same unlawful conduct in the future.

88.     Section 86.021, Florida Statutes states, "Any person claiming to be interested or who may be in doubt about his or her rights under a ... contract, ... or whose rights, status, or other equitable or legal relations are affected by a statute ... may have determined any question of

construction or validity arising under such statute, … contract, … or any part thereof, and obtain a declaration of rights, status, or other equitable or legal relations thereunder." Thus, the Court has jurisdiction to determine the rights of "any person" (such as Sardinas or each Class Member) who is in doubt about his or her rights under the Policy and any applicable laws.

89.     Section 86.031, Florida Statutes states, "A contract may be construed either before or after there has been a breach of it." Under this statute, the Court has jurisdiction to determine whether INFINITY has violated the terms of the Policy and applicable law and whether its conduct will violate the Policy and applicable law in the future.

90.     Section 86.051, Florida Statutes states, "Any declaratory judgment rendered pursuant to this chapter may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to arise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." This statute confirms that the Court has jurisdiction to determine the legality of INFINITY's past conduct in order to gauge its anticipated future conduct and to prevent unlawful conduct in the future.

91.     Section 86.071, Florida Statutes states, in pertinent part, provides that when a declaratory action "concerns the determination of an issue of fact, the issue may be tried as issues of fact are tried in other civil actions in the court in which the proceeding is pending. To settle questions of fact necessary to be determined before judgment can be rendered, the court may direct their submission to a jury." Thus, the existence of disputed fact issues does not prevent the Court from providing declaratory relief under Chapter 86.

92.     Section 86.061, Florida Statutes provides, in pertinent part, the Court may grant further or supplemental relief based on a declaratory judgment.

93.     A determination of the rights of Sardinas and Class Members under the Policy and law regarding the Policy's Collision coverage for the underlying total loss claim will *terminate* the controversies specified in the previous paragraphs.

94.     Individually, and on behalf of Class Members defined above, Sardinas now petitions this Court for a declaration that INFINITY's use of the CCC system is an invalid method of valuing vehicles under Section 626.9743(5), Florida Statutes, and the Policy. He also seeks further or supplemental relief in the form of an order that INFINITY must recalculate Sardinas's and each Class Member's total losses, using a method that complies with Section 626.9743(5), Florida Statutes, and make them new offers based upon the lawful method, if the recalculated amounts exceed the amounts paid based on the CCC system.

95.     Individually, and on behalf of Class Members defined above, Sardinas additionally petitions this Court for a declaration that Section 626.9743(5), Florida Statutes, and the Policy require payment of Dealer Fees and title/license fees as part of a total loss settlement. He also seeks further or supplemental relief in the form of an order requiring INFINITY to offer Sardinas and the Class Dealer Fees and requiring INFINITY to pay $83.25 to Plaintiff and each Class Member for title/license plate registration fees.

96.     Individually, and on behalf of Class Members defined above, Sardinas additionally petitions this Court for a declaration that Section 626.9743(5), Florida Statutes, and the Policy require the upfront payment of sales tax as part of a total loss settlement. He also seeks further or supplemental relief in the form of an order requiring INFINITY to pay sales tax to all Class members to whom it has not paid that tax.

97.      Sardinas has retained the undersigned counsel to prosecute this action and he is entitled to recover his reasonable attorneys' fees and costs for pursuing this cause of action pursuant to Section 627.428, Florida Statutes.

**COUNT II**
**BREACH OF COPNTRACT FOR TITLE/LICENSE FEES**

98.      Sardinas re-alleges and incorporates by reference paragraphs 1-77 above, as if fully set forth herein.

99.      Count II is an action for breach of contract for underpaid Collision insurance coverage benefits in the form of title and license plate registration fees.

100.      Section 626.9743(5), Florida Statutes, and the Policy (which is conformed to this statute) require upfront payment of the title and license plate registration fees that INFINITY could reasonably anticipate Sardinas's and each Class Member's incurring, in the Florida statutory minimum of $83.25, as part of their total loss claims.  By refusing to pay the title and license plate registration fees upfront or ever, INFINITY breached the Policy and proximately caused Sardinas and each Class Member damages in the amount of $83.25.

101.      Sardinas has retained the undersigned counsel to prosecute this action and is entitled to recover his reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statues.

**COUNT III**
**BREACH OF CONTRACT FOR SALES TAX**

102.      Sardinas re-alleges and incorporates by reference paragraphs 1-77 above, as if fully set forth herein.

103.      Count III is an action for breach of contract for underpaid Collision insurance coverage benefits in the form of sales tax.

104.     Section 626.9743(5), Florida Statutes, and the Policy (which is conformed to this statute) require upfront payment of sales tax that INFINITY could reasonably anticipate Sardinas and each Class Members incurring, as part of their total loss claims. By refusing to pay sales tax upfront or ever, and by failing to pay sales tax in the proper amount, INFINITY breached the Policy and proximately caused Sardinas and each Class Member damages in the amount of the sales tax not paid.

105.     Sardinas has retained the undersigned counsel to prosecute this action and is entitled to recover her reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statues.

<strong><u>REQUEST FOR RELIEF</u></strong>

**WHEREFORE,** Plaintiff Jorge Sardinas and the Class respectfully request this Honorable Court to award the following relief against INFINITY:

1.     Issue an order certifying that this action is properly maintainable as a class action under Rule 1.220(b)(1)(a), (2) and/or (3) and appointing Mack to represent the Class defined herein;

2.     Issue an order appointing the undersigned law firms as class counsel;

3.     Regarding Count I,

   a. Issue a declaratory judgment declaring that use of the CCC system is an invalid method of valuing vehicles under Section 626.9743(5), Florida Statutes, and the Policy, and award as further or supplemental relief that INFINITY must recalculate Sardinas's and each Class Member's total loss using a method that complies with Section 626.9743(5), Florida Statutes, and make them new offers based upon the

lawful method if the recalculated amounts exceed the amounts paid based on the CCC system;

b.  Issue a declaratory judgment declaring that Section 626.9743(5), Florida Statutes, and the Policy require payment of Dealer Fees and title/license fees as part of a total loss settlement and awarding further or supplemental relief in the form of an order requiring INFINITY to offer Sardinas and the Class Dealer Fees and requiring INFINITY to pay $83.25 to Plaintiff and each Class Member for title/license plate registration fees;

c.  Issue a declaratory judgment declaring that Section 626.9743(5), Florida Statutes, and the Policy provide for upfront payment of sales tax as part of a total loss settlement and awarding further or supplemental relief ordering INFINITY to pay sales tax in the correct amounts to all Class members to whom it has not previously been paid.; and

d.  Issue a judgment awarding Sardinas and the Class their reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statutes, against INFINITY and granting such other relief as this Honorable Court deems equitable and just.

4.      Regarding Count II,

a.  Enter a judgment against INFINITY awarding $83.35 in title/license fees each to Sardinas and all the other members of the Class; and,

b.  Enter a judgment against Infinity awarding Sardinas and the Class their reasonable attorney's fees and costs pursuant to Section 627.428, Florida Statutes, prejudgment and post-judgment interest at the maximum rates permissible at law or in equity and granting such other relief as this Honorable Court deems equitable and

just.

5.       Regarding Count III,

     a.    Enter a judgment against INFINITY in the amount of the unpaid sales tax to all

        Class members to whom it was not paid.

     b.    Enter a judgment awarding Sardinas and the Class their reasonable attorney's fees

        and costs pursuant to Section 627.428, Florida Statutes, pre-judgment and post-

        judgment interest at the maximum rates permissible at law or in equity and granting

        such other relief as this Honorable Court deems equitable and just.

## Demand for Jury Trial

Sardinas hereby demands a trial by jury on all the issues so triable.

Dated:  April 30, 2019                                Respectfully submitted,

By: *s/Edward H. Zebersky*
    Edward H. Zebersky, Esq. (FBN: 0908370)
    Mark S. Fistos, Esq. (FBN: 909191)
    ZEBERSKY PAYNE SHAW LEWENZ, LLP
    110 S.E. 6th Street, Suite 2150
    Ft. Lauderdale, FL  33301
    Tel.:  (954) 989-6333
    Fax:  (954) 989-7781
    Emails:  ezebersky@zpllp.com;
    mfistos@zpllp.com; ndiaz@zpllp.com

    and

    Alec Schultz, Esq. (FBN: 35022)
    Carly A. Kligler, Esq. (FBN: 83980)
    LEÓN COSGROVE, LLP
    255 Alhambra Circle, Suite 800
    Coral Gables, FL  33134
    Tel.:  (305) 740-1975
    Fax:  (305) 437-8158
    Emails:  aschultz@leoncosgrove.com;
    ckligler@leoncosgrove.com;
    eperez@leoncosgrove.com;
    cmanzano@leoncosgrove.com

and

Scott R. Jeeves, Esq. (FBN: 0905630)
THE JEEVES LAW GROUP, P.A.
954 First Avenue North
St. Petersburg, FL 33705
Telephone: (727) 894-2929
Emails: sjeeves@jeeveslawgroup.com;
khill@jeeveslawgroup.com;
rmandel@jeevesmandellawgroup.com

and

Craig E. Rothburd, Esq. (FBN: 49182)
CRAIG E. ROTHBURD, P.A.
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
Telephone: (813) 251-8800
Email: crothburd@e-rlaw.com

and

Casim Adam Neff, Esq. (FBN: 94030)
NEFF INSURANCE LAW, PLLC
P.O. Box 15063
St. Petersburg, FL 33733-5063
Telephone: (727) 342-0617
Email: cneff@neffinsurancelaw.com


***Attorneys for Plaintiff***

Exhibit A

 **INFINITY.**
Auto Insurance

**Infinity Auto Insurance Company**
2201 4th Avenue North
Birmingham, AL 35203

Customer Service: (800) 782-1020

### PERSONAL AUTO DECLARATION

Claims Service: (800)334-1661

POLICY NUMBER: REDACTED 8001

POLICY PERIOD: 05/09/2018 TO 05/09/2019

**SARDINAS, JORGE**
REDACTED

This policy incepts on the date and time on which the application is executed and shall expire at 12:01 a.m. standard time on the last day of the policy period.

Coverages only apply where a premium is shown. Coverages are defined in the policy and are subject to the terms and conditions contained in the policy, including amendments and endorsements. No changes will be effective prior to the time changes are requested.

| # | Yr | Make - Model | | Serial Number | Comp/Coll | # | Driver Name | Status | Filing |
|---|------|-------|-----------|----------|-----------|---|------------------|--------|--------|
| 1 | 2005 | PONT | GRAND PRIX | REDACTED | N/A / N/A | 1 | Jorge Sardinas | Active | No |
| 2 | 2000 | CHEV | 1500 | REDACTED | N/A / N/A | 2 | ENRIQUE SARDINAS | Active | No |
| 3 | 2016 | TOYO | SCION | REDACTED | 1000/1000 | 3 | Yailin Gonzalez | Active | No |
| 4 | 2017 | TOYO | COROLLA | REDACTED | 1000/1000 | | | | |

| COVERAGES - LIMITS OF LIABILITY | | | PREMIUMS FOR VEHICLES | | | |
|---|---|---|---|---|---|---|
| THE COVERAGE IS APPLICABLE ONLY IF A PREMIUM IS INDICATED | | | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
| Property Damage Liability | | $10,000 each accident | 312 | 344 | 431 | 345 |
| Uninsured Motorist | ****REJECTED**** | ****REJECTED**** | No Cov | No Cov | No Cov | No Cov |
| Personal Injury Protection | Refer to Schedule | Work Loss Excluded | 436 | 226 | 417 | 646 |
| Collision | | | No Cov | No Cov | 912 | 738 |
| Comprehensive | | | No Cov | No Cov | 135 | 100 |
| Rental/Additional Payments | $20 per day | $600 per occurrence | No Cov | No Cov | INCL | INCL |
| **PREMIUM BY VEHICLE:** | | | 748 | 570 | 1895 | 1829 |

| | |
|---|---|
| TOTAL VEHICLE PREMIUM | $5,042.00 |
| POLICY FEES | $0.00 |
| FIGA RECOUPMENT FEE | $0.00 |
| TOTAL POLICY PREMIUM | $5,042.00 |

### SEE REVERSE FOR ADDITIONAL INFORMATION

ENDORSEMENTS MADE A PART OF THIS POLICY:
10950AE801; 10950AE501; 10950AE101; 10950PVA02;
10950RDR01; 109TNDE01; 10950U1E01

By _____
**Duly Authorized Representative**

AMEND DATE: 05/09/2018
ENDORSEMENT: 6-1

10950DEC04

Additional Information:

**Agency Information:**
UNIVISTA INSURANCE _JIJ
8476 SW 40TH ST, STE 201
STE 201
MIAMI, FL 33155

**Please mail all inquiries to:**

**Infinity Insurance**
**PO Box 830189**
**Birmingham, AL 35283-0189**

**Please fax all inquiries to:**
**(800)782-2218**

---

ANY LOSS UNDER PART E IS PAYABLE TO NAMED INSURED AND LOSS PAYEE:

| LOSS PAYEE | | | ADDITIONAL INTEREST | | |
|---|---|---|---|---|---|
| Veh Addl | Name | | Veh Addl | Name | |
| # | Int # | | # | Int # | |
| 4 | 1 | WORLD OMNI FINANCIAL CORP | | | |
| | | PO BOX9249          Mobile AL 36691 | | | |

---

FOR COMPANY USE ONLY

**Version Factors**
R.S.V.P. Direct Repair Endorsement
Deluxe
Multiple Driver Factor - 3 plus Drivers
Work Loss Excl - Named Insured and Resident Relative
Advance Quote

**Driver Factors**
Market Factor
Multi-Car

**Vehicle Factors**
Anti-Lock Brakes
Air Bag
Anti-Theft Device Passive

PAY PLAN:     12-PayEFT8
RATE REVISION:     1
PREV. POLICY:

RATING CRITERIA

| VEH # | DRV # | DRV CLS | DRV AGE | DRV PTS | VEH TERR | VEH SYMB |
|---|---|---|---|---|---|---|
| 1 | 3 | P | 35 | 0 | 70 | 8 |
| 2 | | | | | 70 | 13 |
| 3 | 1 | P | 44 | 0 | 70 | 13 |
| 4 | 2 | P | 68 | 0 | 70 | 7 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

10950DEC04

## SCHEDULE

| Personal Injury Protection Benefits | Limit Per Person |
|---|---|
| Total Limit for All Medical Expenses, Work Loss and Replacement Services | $10,000 |
| (Medical Expense Limited to $2500 for Non-Emergency) | |
| Accidental Death | $5,000 |

**Personal Injury Protection Benefits Coverage Deductible**

Subject to the deductible of $1,000, all expenses and losses are applicable to:

_____   The Named Insured

__X__   The Named Insured and Dependent Resident Relatives

**Exclusion of Work Loss**

_____   Work Loss will not be provided for the named insured only

__X__   Work Loss will not be provided for the named insured and dependent resident relatives

10950DEC04


**Auto Insurance**

**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                                          Claims Service: (800)334-1661

## YOUR FLORIDA VALUE ADDED PERSONAL AUTO POLICY
## OUTLINE OF COVERAGE

| Copy To: | Policy Number | Expiration Date |
| --- | --- | --- |
| **JORGE SARDINAS** REDACTED | REDACTED 3001 | 05/09/2019 12:01 a.m. |
| | Name of Insured | |
| | SARDINAS, JORGE | |
| | This endorsement is attached to and forms part of the listed policy. | |

The following outline of coverage is for informational purposes only. Florida law prohibits this outline from changing any of the provisions of the insurance contract which is the subject of this outline. Florida law also makes this outline inadmissible in any civil action and prevents this outline from creating a cause of action. Any endorsement regarding changes in types of coverage, exclusions, limitations, reductions, deductibles, coinsurance, renewal provisions, cancellation provisions, surcharges, or credits will be sent separately.

Your Declarations Page shows information that applies specifically to you, such as:

    Your name and address              The premium for these coverages
    Your vehicle(s)                       Your policy number
    Your policy term                     The name of your loss payee, if any
    Your chosen coverage and limits of liability    Your chosen deductible amounts, if any

### A.  BENEFITS AND COVERAGES

### MANDATORY AUTO COVERAGES

The State of Florida requires the owners of all motor vehicles with at least four wheels to purchase two types of automobile insurance: Personal Injury Protection (PIP) and Property Damage Liability (PD).

**PIP (PERSONAL INJURY PROTECTION):** PIP covers bodily injuries suffered by you and relatives who reside in your household. Drivers who operate your vehicle with your permission and passengers in your vehicle are also covered by your PIP coverage, unless they have their own PIP coverage. Pedestrians, bicyclists and bystanders are also covered if they are not required by law to have their own PIP, and they are residents of Florida.

You will receive PIP benefits for accidents outside Florida which occur in the United States, its territories or Canada if you are in your own car. Relatives living in your household are also covered when they are passengers in your car unless they have their own PIP coverage.

The purpose of PIP is to provide benefits WITHOUT REGARD TO FAULT. PIP pays 80 percent of reasonable medical expenses and 60 percent of lost income or earnings, up to a combined total of $10,000; and up to $5,000 for funeral expenses.

**PD (PROPERTY DAMAGE LIABILITY):** PD coverage protects you against financial loss resulting from property damage you cause to others and for which you are legally liable. Florida requires you to purchase a minimum limit of $10,000 PD coverage. The limit you purchase is the maximum we will pay for damage arising out of the accident.

**PROOF OF PIP AND PD:** When you buy car registration tags or renewal decals, you must show proof of insurance. Proof may be an insurance policy, binder, certificate of insurance or a uniform identification (ID) card. We provide an ID card when you purchase insurance, or when you change your address, vehicle, or coverage. If there have been no changes, a new ID card is issued at least once every twelve months.

PIP and PD coverages do not pay for damage to your automobile or to some types of injuries you may cause to others.

---

10950OUT04

**OPTIONAL AUTO COVERAGES**

The basic optional auto insurance coverages include:

| | |
|---|---|
| BI | BODILY INJURY LIABILITY |
| MED PAY | MEDICAL PAYMENTS COVERAGE |
| UM | UNINSURED MOTORIST PROTECTION |
| COLL | COLLISION COVERAGE |
| COMP | COMPREHENSIVE COVERAGE |
| RENTAL | RENTAL REIMBURSEMENT |

**BI (BODILY INJURY LIABILITY):** Florida law prevents most lawsuits which otherwise would arise from auto accidents. However, you may still sue or be sued under certain conditions. If you are at fault in an accident, the injured person may sue you for expenses over the full PIP benefits or for serious and permanent injury. Bodily Injury Liability insurance protects you against financial loss resulting from bodily injury you cause to others and for which you are legally liable.

BI coverage is sold with split limits. An example of split limits coverage is the so-called 10/20 liability policy. Such a policy would protect you for injuries you cause to ONE person in an accident up to $10,000; for injuries to ALL persons in an accident up to $20,000. If you carry liability insurance and are sued, your policy will pay all sums for which you may be legally liable up to your policy limits arising out of the ownership, use and maintenance of your motor vehicle. We will settle or defend any claim or suit asking for auto accident damages. However, the defense duty of your policy ends when the limit in any one accident has been exhausted.

**MED PAY (MEDICAL PAYMENTS COVERAGE):** MED PAY coverage will pick up the 20 percent of medical expenses not covered under PIP up to limits purchased.

**UM (UNINSURED MOTORIST PROTECTION):** UM coverage pays for injuries to you and the passengers in your car above PIP coverage limits if you are in an accident caused by an uninsured or underinsured driver. UM coverage does not duplicate the medical benefits you receive from your PIP coverage. Your UM coverage begins once the at-fault driver has compensated you to the limits of his/her ability to do so.

UM is similar to bodily injury liability in that both pay for physical injuries. But while the bodily injury portion of your liability coverage is intended to cover injuries you cause to others, UM covers injuries suffered by you or your passengers when another driver is at fault. You may select either of two coverage forms, know as "stacked" and "non-stacked". The lower cost non-stacked form modifies the manner in which your policy limits apply.

**COLLISION COVERAGE:** Collision coverage pays for repairs to your car regardless of who is at fault when it is damaged in an accident with another vehicle or object, or as a result of turning over. Collision coverage is usually sold with a deductible, an amount you must pay from your own pocket before your policy pays. Generally, the higher the deductible, the lower your premium will be.

Some people decide not to carry collision coverage on an older model car that is fully paid for and has no lien against it. You might wish to discuss this cost-cutting measure with your insurance agent or company. But remember, if your car is damaged in an accident caused by you or an uninsured driver and you do not carry collision insurance, you will be responsible for the repair of your car.

**COMPREHENSIVE COVERAGE:** Comprehensive coverage pays for repairs to your car from incidents other than a collision. Examples would be fire, theft, windstorm, vandalism, accidental glass breakage and collision with an animal. Comprehensive coverage is sold with a deductible. Both comprehensive and collision coverages may be required by the lending institution which finances your vehicle.

**RENTAL REIMBURSEMENT:** Rental Reimbursement covers some expenses to rent a car while your insured auto is being repaired for a covered accident. Rental Reimbursement does not cover damages to a car you rent while you are traveling.

**B. EXCLUSIONS AND LIMITATIONS**

Coverage does not apply for: commercial use; intentional acts; nuclear losses; war losses; employees; or for losses you pay without our knowledge. There are some special types of auto equipment that are not covered.

Coverage does not apply for specified individuals you elect to exclude from coverage under your policy. A surcharge applies to the policy if this election has been made.

**C. RENEWAL AND CANCELLATION**

If an offer to renew is made, the renewal will be honored if the premium is paid by the due date.

Failure to pay installment premium on time will result in a cancellation of your policy for "non-payment of premium".

**D. CREDIT AND SURCHARGE PLANS**

A MULTI-CAR discount applies if more than one car is insured under the same policy number. The discount applies to each car and coverage on each car need not match.

A HOMEOWNER'S discount applies if the named insured owns, occupies, and insures his/her home, condominium, or mobile home.

A PAID IN FULL discount applies if the entire policy premium is paid at the time of application.

A GROUP ASSOCIATION discount may apply if you are a qualified member of an approved association, such as AAA.

An ANTI THEFT DEVICE discount applies to each vehicle equipped with an approved factory installed anti-theft device or vehicle recovery system.

A discount applies to each vehicle identified and equipped with ANTI-LOCK BRAKES.

A discount applies to each vehicle identified and equipped with AIR BAGS.

Insureds over age 55 who hold a valid operator's license and have completed an approved MOTOR VEHICLE ACCIDENT PREVENTION COURSE may qualify for a MVAP discount.

A BUSINESS USE surcharge applies to vehicles used for any business or commercial use.

### E. ENDORSEMENTS

**CUSTOM OR ADDITIONAL EQUIPMENT COVERAGE:** Custom or Additional Equipment Coverage extends coverage to custom parts and equipment permanently attached and forming part of your insured car.

**LESSOR LIABILITY ENDORSEMENT:** The Lessor Liability Endorsement is available for leased vehicles classified as your insured auto. The vehicle lessor is provided Bodily Injury limits of $100/$300 and Property Damage limits of $50,000.

**NAMED DRIVER NON-OWNER COVERAGE:** Named Driver Non-Owner coverage is personal automobile insurance for those who do not own a vehicle.

**R.S.V.P. DIRECT REPAIR ENDORSEMENT:** The R.S.V.P. Direct Repair Endorsement allows you to save on your insurance premium by choosing our network of preferred automobile repair facilities to perform repairs covered by the policy.

**TOWING AND LABOR COVERAGE:** Towing and labor covers some expenses for towing and/or labor when the insured auto is disabled.

**INFINITY**

# Your
# Florida
# Value - Added
# Personal
# Auto
# Policy

**WARNING**

**Florida Law provides that any person who, with intent to defraud or knowing that he or she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.**

**Material misrepresentations may prevent recovery of benefits under this policy. Misrepresentations could include failure to disclose on the application operators of the vehicle, or accurate driving records of the drivers.**

**Customer Service:** (800) 782-1020
**24 Hour Claim Reporting:** (800) 334-1661

**Underwritten by:**
**Infinity Auto Insurance Company**
**Administrative Office:**
3700 Colonnade Parkway, Suite 600
Birmingham, AL 35243

**MEMBER OF**
**INFINITY PROPERTY & CASUALTY CORPORATION**

10950PVA02

# TABLE OF CONTENTS

**POLICY AGREEMENT** (pages 2-4)
Your Duties in Case of Accident or Loss
Definitions Used Throughout This Policy

**PART A - LIABILITY COVERAGE** (pages 4-7)
Insuring Agreement
Additional Definitions Used In Part A Only
Additional Benefits - Part A Only
Exclusions - Part A Only
Limits of Liability - Part A Only
Federal Tort Claims Act Exclusion
Conformity With State Financial Responsibility Laws
Out of State Insurance
Other Insurance - Part A Only

**PART B - PERSONAL INJURY PROTECTION COVERAGE**
(pages 7-9)
Insuring Agreement
Additional Definitions Used In Part B Only
Exclusions - Part B Only
Limits of Liability - Part B Only
Policy Period, Territory
Conditions
Modification of Policy Coverages
Provisional Premium

**PART C - MEDICAL PAYMENTS COVERAGE**
(pages 9-10)
Insuring Agreement
Additional Definitions Used In Part C Only
Exclusions - Part C Only
Limits of Liability - Part C Only
Other Insurance - Part C Only

**PART D - UNINSURED/UNDERINSURED MOTORISTS COVERAGE** (pages 10-12)
Insuring Agreement
Additional Definitions Used in Part D Only
Exclusions - Part D Only
Limits of Liability - Part D Only
Other Insurance - Part D Only
Additional Duty - Part D Only

**PART E - COVERAGE FOR DAMAGE TO THE INSURED AUTO** (pages 12-16)
Insuring Agreement
Additional Definitions Used In Part E Only
Exclusions - Part E Only
Limits of Liability - Part E Only
Appraisal - Part E Only
Payment of Loss - Part E Only
Proof of Loss
Other Insurance - Part E Only
No Benefit to Bailee
Additional Payments
Car Storage Coverage
Towing and Labor Coverage
Custom or Additional Equipment Coverage
Rental Reimbursement Coverage

**PART F - GENERAL PROVISIONS** (pages 16-19)
Policy Period and Territory
Premium Changes
Coverage Changes
Premium Payment
Cancellation and Nonrenewal
Limitations on Agent Authority
Mediation of Claims
Arbitration
Two or More Auto Policies
Suits Against Us
Transfer of Your Interest in This Policy
Bankruptcy
Our Recovery Rights
Loss Payable Clause
Punitive or Exemplary Damages
Terms of Policy Conformed to Statutes
Fraud and Misrepresentation
Pollution Exclusion
Rescission

**NAMED DRIVER EXCLUSION AGREEMENT**

**FLORIDA NON-CANCELABLE POLICY ENDORSEMENT**

**LESSOR LIABILITY ENDORSEMENT**

**NAMED DRIVER NON-OWNER COVERAGE**

**R.S.V.P. DIRECT REPAIR ENDORSEMENT**

## POLICY AGREEMENT

This Personal Auto Policy is a binding contract between **you** and **us**. The contract includes the **Declarations Page**, endorsements, the **application**, the Personal Auto Policy, and all attachments. If **your premium payment** is paid, **we** will insure **you** subject to the terms of this policy. The **Declarations Page** shows a premium for each type of coverage purchased. The selected coverages in this policy apply only to occurrences while the policy is in force.

## YOUR DUTIES IN CASE OF ACCIDENT OR LOSS

In the event of an **auto accident** or **loss**, **you** or any person claiming coverage under this policy must:

1. Notify **us** promptly. **You** or someone on **your** behalf must notify **us** within thirty (30) days, or as soon as practicable, by calling **our** claims office during business hours or **our** Claims Hotline, available 24 hours a day, seven days a week. The notice must give the time, place, and circumstances of the **accident** or **loss**, the license plate numbers of the **vehicles** involved, and the names and addresses of injured persons and witnesses. FAILURE TO PROMPTLY REPORT A LOSS OR **ACCIDENT** TO **US** MAY JEOPARDIZE **YOUR** COVERAGE UNDER THIS POLICY.

2. Cooperate with **us** in any matter concerning a claim or suit.

3. Provide **us** access, as **we** may reasonably require, to the recorded data contained within the **insured auto's** event data recorder (EDR), global positioning system (GPS) or similar device, in connection with any matter concerning an **accident**, claim or suit.

4. Submit to physical examination at **our** expense, by doctors **we** select, as often as **we** may reasonably require, and authorize **us** to obtain medical and other records.

5. Provide any written proof of loss under oath that **we** require.

6. Neither admit fault, assume any obligation, nor agree to incur any expense in connection with any claim or **accident**.

7. Attend hearings and trials as **we** or a court may require.

8. Send **us** promptly any legal papers received to any claim or suit.

9. Submit to statements or examinations under oath and subscribe to the same as **we** may reasonably require.

10. Allow **us** to take signed or recorded statements when and as often as **we** may reasonably require.

**We** may examine any insured person under oath, while not in the presence of any other insured person, about any matter relating to this insurance or the claim, including an insured person's books and records. In the event of the examination, an insured person's answers must be signed.

A person claiming uninsured or underinsured motorists coverage, or someone on his behalf, must contact the police within forty-eight (48) hours, or as soon as practicable, after the **accident** if a hit-and-run driver is involved, and must promptly send **us** copies of any legal papers if suit is brought.

If coverage is claimed for **property damage** or loss or damage to the **insured auto**, the person claiming coverage must take reasonable steps after the **accident** to protect the property from further loss or damage. **We** will pay reasonable expenses incurred in providing that protection. In the event of any theft or vandalism of the **insured auto**, **you** must promptly file a written report with the appropriate law enforcement agency. **You** must also allow **us** to inspect and appraise the damaged property before its repair or disposal.

FAILURE TO COMPLY WITH ANY OR ALL OF THE CONDITIONS ABOVE MAY RESULT IN **OUR** REFUSAL TO EXTEND TO **YOU** ANY PROTECTION UNDER THIS POLICY FOR THE **ACCIDENT** OR LOSS.

## DEFINITIONS USED THROUGHOUT THIS POLICY

Unless defined differently elsewhere in this policy, the words and phrases listed below shall have the following meanings and shall appear in bold print:

1. **"Accident"** means a sudden, unexpected, and unintended event causing **bodily injury** or **property damage**, arising out of the ownership, maintenance, or use of an **auto**. Coverage under this policy shall not apply if the **accident** or its consequences were either intended by the insured, or could have reasonably been expected from the viewpoint of the insured.

   All **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **accident**.

2. **"Actual cash value"** means market value at the time of the **loss** based upon **vehicle** mileage, age, condition, original optional equipment, and comparable **vehicles** available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment.

3. **"Additional auto"** means an auto that **you** become the **owner** of, and that **you** acquire or purchase during the policy period, and under this policy **we** insure all autos **you** own or lease for a term of at least six months.

   To qualify as an **additional auto** under this policy, any newly acquired **auto** must be an acceptable risk to **us** under **our** underwriting guidelines.

4. **"Application"** means the form entitled Application for Insurance that contains statements, coverage options, and agreements that form a part of this policy.

5. **"Auto"** means a licensed and registered motorized four-wheel land **vehicle** of the private passenger type intended for use on public roads. **Auto** includes a pickup, van, or sport utility vehicle, with a load capacity of 1,500 lbs. or less, that is not used in any **business** other than farming or ranching. **Auto** does not include motorcycles, midget cars, golf carts, tractors, farm machinery, any **vehicle** operated on rails or crawler treads, or any **vehicle** used as a residence or premises.

6. **"Auto business"** means the business of selling, leasing, repairing, servicing, delivering, testing, road testing, towing, storing, or parking **vehicles** or **trailers**.

7. **"Bodily injury"** means injury to the body, including sickness or disease, resulting in impairment of physical condition, including death resulting therefrom, which is caused solely by an **accident** covered under this policy and occurring while the policy is in force.

8. **"Business"** means trade, profession, occupation, course of employment, job, or commercial use of any kind, and shall not include the use of the **insured auto** to carry tools and supplies between **your** home and job site.

9. **"Crime"** means any felony and includes any attempt to elude law enforcement personnel.

10. **"Declarations Page"** means the document **you** receive from **us** listing the types of coverage **you** have selected, the limit for each coverage, the cost for each coverage, the specified **autos** covered by this policy, the types of coverage for each such **auto**, and other information applicable to this policy.

11. **"Minimum Statutory Limits"** means the minimum policy limits for **vehicle** liability coverage required by the law of the State of Florida.

12. **"Non-owned auto"** means any **auto** used by **you** with the express or implied permission of the **owner** and not **owned** by, furnished, or available for the regular use of **you**, a **relative**, or a **resident**. **Non-owned auto** does not include a **substitute auto**.

13. **"Occupying"** means in, upon, entering into, or exiting from.

14. **"Owned"** means to hold actual legal title to the **vehicle**, to have legal possession of the **vehicle** that is subject to a conditional sale agreement or mortgage, or to have legal possession of the **vehicle** that was leased to that person.

15. **"Owner"** means any person who, with respect to a **vehicle**, holds legal title to the **vehicle**, has legal possession of the **vehicle** that is subject to a conditional sale agreement or mortgage, or has legal possession of the **vehicle** that is leased to that person.

16. **"Premium payment"** means the actual receipt of cash funds by **us**.

17. **"Property damage"** means physical damage to tangible property, including destruction or loss of its use, which is caused solely by an **accident** covered under this policy and occurring while the policy is in force.

18. **"Racing"** means participating in any race, speed, demolition, stunt, or timed contest or activity, whether organized or not. **Racing** includes preparation for the contest or activity.

19. **"Relative"** means any person related to **you** by blood, marriage, or adoption, including a ward or foster child, who lives in **your** household, whether or not temporarily living elsewhere. **Relative** includes a minor under **your** guardianship who lives in **your** household.

20. **"Rental vehicle"** means an **auto you** rent or hire for a term of 14 days or less in one 30-day period while such **auto** is in **your** custody or is being operated by **you** or a **relative**. An **auto you** rent or hire for more than 14 days in one 30-day period is a **vehicle** regularly available to **you**. **Rental vehicles** may be rented or hired only from an entity licensed to conduct such business under applicable state law.

21. **"Replacement auto"** means an **auto** that **you** become the **owner** of and that **you** acquire or purchase during the policy period to take the place of an **auto** described on the **Declarations Page** because of:
    a. termination of **your** ownership interest in an **auto** described on the **Declarations Page**; or
    b. mechanical breakdown, theft, deterioration, or total loss of an **auto** described on the **Declarations Page**, rendering it permanently inoperable.

    To qualify as a **replacement auto** under this policy, any newly acquired **auto** must be an acceptable risk to **us** under **our** underwriting guidelines.

22. **"Resident"** means a person living in **your** household, other than **you** or a **relative**. Any **resident** must be listed on the **application** or endorsed on the policy prior to a loss. **You** have fourteen calendar days to report any new **resident**.

23. **"State"** means the District of Columbia and any state of the United States of America.

24. **"Substitute auto"** means an **auto you** use temporarily while an **auto** described on the **Declarations Page** is not available for use. Use of the **substitute auto** must result directly from servicing, repair, theft, destruction, or malfunction of the **auto** described on the **Declarations Page**. **Substitute auto** does not include any **vehicle** that is **owned** by **you**, a **resident** or a **relative**, or that is regularly available to **you**, a **resident** or a **relative**.

25. **"The insured auto"** means:
    a. Any **auto** described on the **Declarations Page**.
    b. Any **trailer you** own while it is attached to the **insured auto**. For coverage to be provided under Part E - Coverage for Damage to the Insured Auto of this policy, the **trailer** must be listed on the **Declarations Page** and a premium must be paid.
    c. A **replacement auto**. **You** must notify **us** within 30 days of **your** acquisition of the **replacement auto** for it to be considered the **insured auto**. The **replacement auto** will have the broadest coverage, except for Part E - Coverage for Damage to the Insured Auto, we now provide for the **auto** being replaced only if **you** notify **us** within the 30-day period following the acquisition of the **replacement auto**. If the **auto** being replaced has coverage under Part E - Coverage for Damage to the Insured Auto **you** must notify **us** within 5 days of the date **you** either become **owner** of the **replacement auto** or **you** take physical possession of the **replacement auto**, whichever comes first, to continue this coverage for the **replacement auto**. If the **auto** being replaced does not have coverage under Part E, we will add this coverage for the **replacement auto** effective after **you** ask **us** to do so. All insurance for the **auto** being replaced ends when **you** take delivery of the **replacement auto**.

d. An **additional auto**. **You** must notify **us** within 7 days of **your** acquisition of the **additional auto** for it to be considered the **insured auto**. These provisions apply only if on the date **you** acquire the **additional auto**, **we** insure all vehicles **you** own and **you** ask **us** to insure the **additional auto** within 7 days of the date **you** acquire it. The **additional auto** will have the broadest coverage, except for Part E – Coverage for Damage to the Insured Auto, **we** now provide on **your** policy only if **you** notify **us** within the 7-day period following the acquisition of the **additional auto**. If any **auto** listed on the **Declarations Page** has coverage under Part E – Coverage for Damage to the Insured Auto **you** must notify **us** within 4 days of the date **you** either become owner of the **additional auto** or **you** take physical possession of the **additional auto**, whichever comes first, to continue coverage under Part E for the **additional auto**. If no **auto** listed on the **Declarations Page** has coverage under Part E, **we** will add this coverage for the **additional auto** effective after **you** ask **us** to do so.

e. A **substitute auto**. A **substitute auto** is provided the same coverage as the **auto** which it temporarily replaces.

For purposes of this policy any **auto** leased by **you** under a written agreement for a continuous period of at least six (6) months shall be deemed to be **owned** by **you**.

26. "**Trailer**" means a device or **vehicle** which is not self-propelled and is designed to be towed by an **auto**, including a farm wagon or farm implement, and while being towed by an **auto**. A mobile home, travel trailer, or any **vehicle** that can be lived in or is self-propelled, is not a **trailer**.

27. "**Vehicle**" means a surface transportation device used for conveying goods, passengers, or equipment.

28. "**We**," "**us**," and "**our**" mean the company shown on the **Declarations Page**.

29. "**You**" and "**your**" mean the named insured shown on the **Declarations Page** and include **your** spouse, if living in the same household.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

If the **Declarations Page** shows a premium charged for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** is legally liable because of an **accident** up to the policy limits stated on the **Declarations Page**. **We** will not cover punitive or exemplary damages.

**We** will settle or defend, as **we** consider appropriate, any claim or action which is covered under the policy. **Our** duty to settle or defend ends when **our** limit of liability for this coverage has been exhausted by payment of judgment or settlement. **We** have no duty to settle or defend any claim or action that is not covered under the policy.

### ADDITIONAL DEFINITIONS USED IN PART A ONLY

As used in this part, "**insured person**" means:

1. **You**, a **relative** or a **resident**; or

2. A person using the **insured auto** with **your** express or implied permission and within the scope of **your** permission.

As used in this Part "**insured person**" means with respect to a **non-owned auto** or a rental vehicle, **you**, a **relative** or a **resident**.

### ADDITIONAL BENEFITS – PART A ONLY

When **we** defend an **insured person** under this Part, **we** will provide the following benefits:

1. **We** will pay costs **we** incur to investigate the **accident**.

2. **We** will pay costs **we** incur to arrange for the settlement of any claim or action.

3. As **we** deem appropriate, **we** will defend the **insured person**, hire and pay a lawyer, and pay all defense costs. **We** have no duty to defend any claim or action not covered under this policy.

4. As **we** deem appropriate, **we** will pay costs **we** incur to investigate and settle any claim or action.

5. **We** will pay the interest that accrues after judgment is entered against an **insured person** and before **we** have offered to pay or deposited into court sums that are not more than **our** limit of liability, on damages awarded in a suit **we** defend.

6. **We** will pay premiums on appeal and attachment bonds if required in an action **we** defend. **We** will neither apply for nor obtain bonds, nor pay the premium on any bond that exceeds **our** limit of liability.

7. **We** will pay up to $250 for the cost of all bail bonds for an **insured person** resulting from any one **accident**. **We** will not apply for nor obtain any bail bond.

8. **We** will reimburse an **insured person** for lost wages, up to $50 a day, but not other income, when **we** ask that **insured person** to help **us** investigate or defend any claim or action.

9. **We** will reimburse any other reasonable costs an **insured person** incurs at **our** request.

To receive an additional benefit under this section, **you** must submit a claim and provide proof of entitlement thereto.

### EXCLUSIONS – PART A ONLY

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

**We** do not cover:

1. **Bodily injury** or **property damage** that results from nuclear reactions, radiation, or fallout.

2. **Bodily injury** or **property damage** covered by a nuclear energy liability policy, even if the limits of that policy are exhausted.

3. **Bodily injury** or **property damage** caused intentionally by or at the direction of an **insured person**. Coverage under this Part shall not apply if the **accident** or its consequences were either intended by the insured, or could have reasonably been expected from the viewpoint of the insured.

4. **Bodily injury** or **property damage** that results from the maintenance or use of a **vehicle** without the **owner's** express or implied permission.

5. **Bodily injury** or **property damage** that results from the maintenance or use of a **vehicle** outside the scope of the **owner's** express or implied permission.

6. Liability for any **bodily injury** or **property damage** assumed by or imposed on an **insured person** under any agreement, contract or bailment.

7. **Bodily injury** to an **insured person's** employee which arises in the course of employment.

Unless coverage is required under workers' compensation, disability benefits, or similar laws, **we will** provide coverage for an **insured person's** domestic employee injured in an **accident** in the course of employment.

8. **Bodily injury** to an **insured person's** co-worker occurring in the course of employment if such injury arises out of the **insured person's** use of a **vehicle** in **business.**

9. **Bodily injury** occurring during the course of employment if benefits are payable or available under a workers' compensation law or similar law.

10. **Bodily injury** or **property damage** that results from the ownership, maintenance, or use of a **vehicle** while used to transport persons or property for a fee or compensation. This exclusion does not apply to shared-expense car pools.

11. **Bodily injury** to **you**, a **relative**, or an **insured person** while driving the **insured auto.**

12. **Bodily injury** to **you**, a **resident** or a **relative** arising out of the ownership, maintenance, or use of the **insured auto.**

13. **Property damage** to property **owned** or being transported by an **insured person.**

14. **Bodily injury** or **property damage** arising out of the operation of equipment or machinery not listed on the **Declarations Page.**

15. Damage to property an **insured person** rents, uses, or has charge of, except a residence or private garage, including loss of its use.

16. **Bodily injury** or **property damage** resulting from the ownership, maintenance, or use of any **vehicle** other than the **insured auto**, which is **owned** by, furnished or available for the regular use of **you**, a **relative**, or a **resident.**

17. **Bodily injury** or **property damage** resulting from the ownership, maintenance or use of the **insured auto** by any person who is a regular user of **the insured auto**, but is not listed on the **Declarations Page** prior to the loss.

This exclusion applies to amounts of coverage above the **minimum statutory limits.**

18. **Bodily injury** or **property damage** arising out of an **insured person's** ownership, maintenance, or use of any **vehicle** with less than four wheels.

19. **Bodily injury** or **property damage** arising out of an **insured person's** ownership, maintenance, or use of any **vehicle** designed mainly for use off public roads.

20. **Bodily injury** or **property damage** resulting from the ownership, maintenance, or use of a **vehicle** in any **racing** event.

21. **Bodily injury** or **property damage** incurred while the **insured auto** is being leased or rented to others.

22. **Bodily injury** or **property damage** resulting from the use of a **vehicle** for snow removal.

23. **Bodily injury** or **property damage** caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, or riot.

24. **Bodily injury** or **property damage** sustained by an **insured person** while occupying any **vehicle** located for use or being used as a residence or premises.

25. **Bodily injury** or **property damage** resulting from the ownership, maintenance, or use of a **vehicle** or **trailer** by a person while in the course and scope of employment, or engaged in any **business.** This exclusion includes use of a **vehicle** for delivery of goods or services arising out of any **business.** This exclusion does not apply if **business use of the insured auto** has been declared and an additional premium has been paid.

26. **Bodily injury** or **property damage** resulting from an **auto business.** However, this exclusion does not apply to **you** when the **bodily injury** or **property damage** arises out of **auto business** operations conducted by someone other than **you**, a **relative** or **resident.**

27. **Bodily injury** or **property damage** incurred while any **vehicle** is used for towing a trailer not designed for use with that **vehicle**, and which is **owned** by an **insured person**, and not listed on the **Declarations Page.**

28. **Bodily injury** resulting from the use of any **vehicle** by a person or persons specifically excluded by endorsement. **Property damage** exceeding the **state** required minimum and resulting from the use of any **vehicle** by a person or persons specifically excluded by endorsement.

29. **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of any haulaway, tank truck, or tank trailer when used with a **vehicle** that is not listed on the **Declarations Page**, and which is **owned**, hired or held for sale by the **insured person.**

30. **Bodily injury** or **property damage** benefits payable under the "No Fault Laws" of the following **states**: Arkansas, Delaware, Washington DC, Florida, Hawaii, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, New York, North Dakota, Oregon, Texas, Utah, and Washington.

31. **Bodily injury** to the **owner** of a **non-owned auto** when being used by or driven by an **insured person**.

32. Coverage under this Part does not extend to:
    a. any **auto** or **trailer** that is rented for any **business** purposes; or
    b. any **auto** or **trailer** that is rented for a period in excess of 14 consecutive days.

## LIMITS OF LIABILITY - PART A ONLY

As to any **insured person**, the limits of liability shown on the **Declarations Page** shall apply. **We** will pay these limits of liability as follows:

1. The **bodily injury** limit for "each person" is the most **we** will pay for all damages, including damages for derivative claims, resulting from **bodily injury** sustained by one person in one **accident**. Derivative claims include claims for care, loss of services, and loss of consortium. Damages for derivative claims will be payable only under the same "each person" limit of liability as the **bodily injury** from which they are derived.

2. The **bodily injury** limit for "each accident" is the most **we** will pay for all damages resulting from **bodily injury** sustained by more than one person in one **accident**. It includes all damages for care, medical expenses, loss of services, loss of society, comfort, companionship, loss of consortium, and any other damages in any way arising out of, or deriving from such **bodily injury**.

3. The **property damage** limit for "each accident" is the most **we** will pay for all damages to property, including loss of its use, in one **accident**.

**We** will not pay **bodily injury** or **property damage** for any amount in excess of the minimum statutory limits of the **state** where the **accident** occurs and arising out of the use of the **insured auto** or any other **vehicle** while the **insured person** is in the commission of a crime.

Regardless of the limits of liability shown on the **Declarations Page** or elsewhere in this policy, the limits for **bodily injury** and **property damage** liability afforded by this policy to an **insured person** other than:

1. **you**; or
2. a **relative** or a resident of **your** household,

shall not exceed those amounts necessary to satisfy the minimum statutory limits of the financial responsibility law of the **state** in which the **bodily injury** or **property damage** policy was written.

This is the most **we** will pay regardless of the number of premiums or **autos** listed on the **Declarations Page**, **insured persons**, claims, claimants, policies, or **vehicles** involved in the **accident**. Any amount paid or payable under this coverage to or for an **insured person** will be reduced by any payment made to that person under Part B - Personal Injury Protection, Part C - Medical Payments Coverage or Part D - Uninsured/Underinsured Motorists Coverage of this policy.

An **auto** and attached **trailer** are considered one **auto**. Therefore, **our** limits of liability will not be increased for any **accident** involving an **auto** which has an attached **trailer**.

## FEDERAL TORT CLAIMS ACT EXCLUSION

The following are not **insured person(s)** under Part A of the policy:

1. The United States of America or any federal agency.

2. Any person for **bodily injury** or **property damage** resulting from a person acting in the scope of employment for the United States of America or any federal agency when the provisions of the Federal Tort Claims Act apply.

As used herein, "federal agency" means federal agency as defined in the Federal Tort Claims Act.

## CONFORMITY WITH STATE FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof under a state Financial Responsibility law, it will comply with that law to the extent of the coverage and limits of liability required by that law.

If **we** make a payment that **we** would not be required to make except for the provisions of this section of the policy, **you** agree to reimburse **us** for any such payment.

## OUT OF STATE INSURANCE

If this policy provides **bodily injury** liability insurance and if an **insured person** is operating an **auto** in a **state** which requires minimum Financial Responsibility limits for nonresidents, **we** will increase the policy limits to the required minimum limits of that **state**. **We** will not provide any coverage under the no-fault law or any other similar law of any other **state**. No person shall be entitled to duplicate payments for the same element of loss.

If this policy provides only **property damage** liability insurance under Part A - Liability Coverage and if an **insured person** is operating an **auto** in a **state** which has compulsory motor vehicle insurance requirements, **we** will not provide the required **bodily injury** liability insurance.

## OTHER INSURANCE - PART A ONLY

Coverage for a **vehicle** not listed on the **Declarations Page** shall be excess insurance over any other valid and collectible insurance. If other applicable liability insurance exists, **we** will pay **our** proportionate share of damages and reasonable and necessary attorney fees and costs as **our** limit of liability bears to the total of all applicable liability limits. Coverage for newly acquired **autos** does not apply where there is other valid and collectible insurance.

However, with respect to a person other than **you**, a **relative** or a **resident**, using the **insured auto** with **your** express or implied permission and within the scope of that permission, this coverage shall be excess over any other valid and collectible insurance available to the user of the **insured auto**. Coverage shall be excess insurance regardless of any provision of any policy available to the user which makes the other available insurance excess to any **vehicle** the user does not own.

If **you**, a **relative** or a **resident** has other insurance against an **accident** covered by this Part, **we** will not pay a greater proportion of the damages than the applicable limit of liability stated on the **Declarations Page** bears to the total applicable limits of liability of all valid and collectible insurance against any such **accident**.

## PART B - PERSONAL INJURY PROTECTION COVERAGE

### INSURING AGREEMENT

**We** will pay in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the injured person:

1. 80% of medical expenses;

2. 60% of work loss;

3. replacement services expenses; and

4. an automobile-related accidental death benefit of $5,000;

incurred as a result of **bodily injury**, caused by an **accident**.

**We** will pay benefits for **bodily injury** sustained by:

1. **you** or a **relative** while **occupying** a **motor vehicle**, or while a **pedestrian** through being struck by a **motor vehicle**; or

2. any other person while **occupying** the **insured motor vehicle**, or while a **pedestrian** through being struck by the **insured motor vehicle**.

### ADDITIONAL DEFINITIONS USED IN PART B ONLY

As used in this Part:

1. "**Deductible**" is that sum which is shown on the **Declarations Page** and will be deducted from the loss.

2. "**Insured motor vehicle**" means a:
   a. **motor vehicle**:
      i. which **you** own; and
      ii. with respect to which security is required to be maintained under the Florida Motor Vehicle No-Fault Law; and
      iii. for which a premium is charged as shown on the **Declarations Page**; or
   b. **trailer**, other than a mobile home, designed for use with a **motor vehicle**. This includes a **trailer** designed for use with a pickup truck, panel truck, or van if not used for **business** purposes.

3. "**Medical expenses**" means usual and customary charges incurred for reasonable and **medically necessary** services rendered to or on behalf of an insured person for: medical, surgical, x-ray, and dental services when performed by a licensed medical professional; pharmaceuticals; prosthetic devices; eye glasses; necessary ambulance, hospital, and professional nursing and rehabilitative services when prescribed by a licensed medical professional. Such treatment shall include necessary remedial treatment and services recognized and permitted under the laws of the **state** for an injured person who relies upon spiritual means through prayer alone for healing in accordance with his religious beliefs.

4. "**Medically necessary**" refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:
   a. in accordance with generally accepted standards of medical practice;
   b. clinically appropriate in terms of type, frequency, extent, site and duration;
   c. not primarily for the convenience of the patient, physician, or other health care provider.

5. "**Motor vehicle**" means any self-propelled **vehicle** with four or more wheels which is of a type both designed and required to be licensed for use on the highways of Florida and any **trailer** or semi-trailer designed for use with such **vehicle**.

   However, a **motor vehicle** does not include:
   a. any **motor vehicle** which is used in mass transit, other than public school transportation, and designed to transport more than five passengers exclusive of the operator of the **motor vehicle** and which is **owned** by a municipality, a transit authority, or a political subdivision of the **state**; or
   b. a mobile home.

6. "**Owner**" means a person or organization who holds the legal title to a **motor vehicle** and also includes:
   a. a debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement; and
   b. a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and
   c. a lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

7. "**Pedestrian**" means a person while not an occupant of any self-propelled **vehicle**.

8. "**Replacement services expenses**" means all expenses reasonably incurred in obtaining from others ordinary and necessary services during the period of disability of the injured person. These services must be those that the injured person would have performed without income for the benefit of his or her household had the injury not occurred. However, **replacement services expense** does not include any loss after the death of an injured person.

9. "**Work loss**" means any loss of income and earning capacity during the period of disability of the injured person. This must result from an inability to work proximately caused by the injury sustained by the injured person. However, **work loss** does not include any loss after the death of an injured person.

10. "**You**" and "**your**" means the person named and identified on the **Declarations Page** as the operator insured. If an individual, "**you**" and "**your**" shall include the spouse if a resident of the same household.

## EXCLUSIONS - PART B ONLY

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

This insurance does not apply:

1. To **you** or a **relative** while **occupying** a **motor vehicle** owned by **you** and which is not an **insured motor vehicle** under this policy;

2. To any person while operating the **insured motor vehicle** without **your** express or implied consent; or using any **motor vehicle** without the reasonable belief that that person is entitled to do so;

3. To any person, if that person's conduct contributed to the **bodily injury** of that person under any of the following circumstances:
   a. causing **bodily injury** to that person's own self intentionally; or
   b. while committing a felony;

4. To **you** or a dependent **relative** for **work loss** if the **Declarations Page** indicates such coverage does not apply;

5. To any **pedestrian**, other than **you** or a **relative** not a legal resident of the State of Florida;

6. To any person, other than **you**, if the person is the **owner** of a **motor vehicle** with respect to which security is required under the Florida Motor Vehicle No-Fault Law, as amended;

7. To any person, other than **you** or a **relative** who is entitled to personal injury protection benefits from the **owner** of a **motor vehicle** which is not an **insured motor vehicle** under this insurance or from the **owner's** insurer;

8. To a person who sustains **bodily injury** while **occupying** a **motor vehicle** located for use as a residence or premises.

## LIMITS OF LIABILITY - PART B ONLY

The total limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law for any one person who sustains **bodily injury** in any one **accident** shall be $10,000. However, payment for death benefits included in the foregoing shall in no event exceed $5,000 or be reduced by a **deductible**. This is the maximum amount available from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person. This is the most we will pay regardless of the number of covered persons, policies or bonds applicable, **vehicles** involved or claims made.

Any amount payable under this coverage shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workmen's compensation laws of any **state** or the Federal Government or the Medicaid Program.

If two or more insurers are liable to pay personal injury protection benefits for the same injury to any one person, the maximum payable shall be $10,000, and any insurer paying benefits shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim. **We** shall

not be required to make duplicate payments under this coverage for the benefit of the injured person for whom benefits have already been paid by another insurer or self-insurer under the Florida Motor Vehicle No-Fault Law.

The amount of any **deductible** stated on the **Declarations Page** shall be deducted from the total amount of all loss and expense incurred by or on behalf of each person to whom the **deductible** applies and who sustains **bodily injury** as the result of any one **accident**. If the total amount of such loss and expense exceeds such **deductible**, the total limit of benefits **we** are obligated to pay shall then be based on the difference between such **deductible** amount and the total amount of all loss and expense incurred, subject to the $10,000 limit of benefits. Such **deductible** shall not apply to death benefits.

## POLICY PERIOD, TERRITORY

The insurance under this Section applies only to **accidents** which occur during the policy period:

1. in the State of Florida; and

2. as respects **you** or a **relative** while **occupying** the **insured motor vehicle** outside the State of Florida but within the United States of America, its territories or possessions or Canada.

All Personal Injury Protection benefits will be payable in accordance with Florida Statute S627.736.

## CONDITIONS

1. Notice.
   In the event of an **accident**, written notice of the loss must be given to **us** or any of **our** authorized agents as soon as practicable. If any injured person or his legal representative shall institute legal action to recover damages for **bodily injury** against a third party, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded as soon as practicable to **us** by such injured person or his legal representative.

2. Action Against the Company.
   No action shall lie against **us** unless there has been full compliance with all terms of this insurance, nor until 30 days after the required notice of **accident** and reasonable proof of claim has been filed with **us**.

3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.
   As soon as practicable, the person making a claim shall give to **us** written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist **us** in determining the amount due and payable. Such person shall submit to mental or physical examinations at **our** expense when and as often as **we** may reasonably require and a copy of the medical report shall be forwarded to such person if requested. If that person unreasonably refuses to submit to an examination **we** will not be liable for subsequent personal injury protection benefits. Whenever a person making a claim is charged with committing a felony, **we** shall withhold benefits until at the trial level the prosecution makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed or the person is acquitted.

4. Reimbursement and Subrogation.
   In the event of payment to or for the benefit of any injured person under this insurance:
   a. **We** are subrogated to the rights of the person to whom or for whose benefit such payments were made to the extent of such payments. Such person shall execute and deliver the instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights.
   b. **We** as the company providing personal injury protection benefits on a private passenger **motor vehicle** as defined in the Florida Motor Vehicle No-Fault Law, shall be entitled to reimbursement to the extent of the payment of personal injury protection benefits from the **owner** or insurer of the **owner** of a commercial **motor vehicle**, as defined in the Florida Motor Vehicle No-Fault Law, if such injured person sustained the injury while **occupying**, or while a **pedestrian** through being struck by, such commercial **motor vehicle**.

5. Special Provision for Rented or Leased Vehicles.
   Notwithstanding any provision of this coverage to the contrary, if a person is injured while **occupying**, on or through being struck by a **motor vehicle** rented or leased under a rental or lease agreement which does not specify otherwise in at least 10 point type on the face of such agreement, the personal injury protection coverage afforded under the lessor's policy shall be primary.

## MODIFICATION OF POLICY COVERAGES

Any **auto** medical payments insurance, any uninsured motorist coverage or any underinsured motorist coverage afforded by this policy shall be excess over any personal injury protection benefits paid or payable or which would be available but for the application of a **deductible**.

If medical payments coverage is afforded by this policy, such medical payments coverage shall pay the portion of any claim for personal injury protection medical benefits which are otherwise covered but not payable due to the coinsurance provision contained in Part B. However, the benefits shall not be payable for the amount of the **deductible** selected. This provision applies regardless of whether the full amount of personal injury protection benefits has been exhausted.

## PROVISIONAL PREMIUM

If any provision of the Florida Motor Vehicle No-Fault Law is found to be unconstitutional, resulting in a change in the rules, rates, rating plan, premiums or minimum premium applicable to this coverage, the premium stated on the **Declarations Page** is provisional and subject to recomputation. This applies to the premium shown for any bodily injury liability, property damage liability, medical payments and uninsured/underinsured motorist coverages. If this policy is a renewal policy, such recomputation shall also include a determination of the amount of any return premium previously credited or refunded to **you** pursuant to the Florida Motor Vehicle No-Fault Law with respect to insurance afforded under a previous policy.

If the final premium thus recomputed exceeds the premium stated on the **Declarations Page**, **you** shall pay **us** the excess as well as the amount of any return premium previously credited or refunded.

## PART C - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

If the **Declarations Page** shows a premium charged for this coverage, we will pay **medical expenses** not exceeding the limits shown on the **Declarations Page**, incurred as a result of **bodily injury** caused by an **accident** and sustained by an **insured person**. Coverage under this Part shall not apply if the **accident** or its consequences were either intended by the insured, or could have reasonably been expected from the viewpoint of the insured.

**We** will pay only for those expenses incurred for services rendered within one year from the date of the **accident**.

### ADDITIONAL DEFINITIONS USED IN PART C ONLY

As used in this Part:

1. **"Accident"** as used in this Part, shall also mean an occurrence involving an **insured person** and must involve the actual physical impact of the **vehicle** or the **insured person** with another object in order for coverage under this Part to apply. Accidental physical impact with the roadway or ground is included as actual physical impact with another object.

2. **"Insured person"** means:
   a. **you**, any **relative**, or any **resident** who sustains **bodily injury** caused by an **accident**:
      i. while **occupying** any auto; or
      ii. when struck as a **pedestrian** by a motor vehicle.
   b. any person other than **you**, any **relative**, or any **resident** who sustains **bodily injury** caused by an **accident**:
      i. while **occupying the insured auto** as a guest passenger; or
      ii. while operating or using **the insured auto** with **your** express or implied permission and within the scope of permission granted.

3. **"Medical expenses"** means usual and customary charges incurred for reasonable and necessary services rendered to or on behalf of an **insured person** within one year from the date of the **accident** for: medical, surgical, x-ray, and dental services when performed by a licensed medical professional; pharmaceuticals; prosthetic devices; eye glasses; necessary ambulance, hospital, and professional nursing services when prescribed by a licensed medical professional; and funeral services.

Reasonable **medical expenses** do not include expenses:
a. for treatment, services, products or procedures that are:
   i. experimental in nature, for research, or not primarily designed to serve a medical purpose; or
   ii. not commonly and customarily recognized throughout the medical profession and within the United States as appropriate for the treatment of the **bodily injury**; or
b. incurred for:
   i. the use of acupuncture or other related procedures of a similar nature;
   ii. the purchase or rental of equipment not primarily designed to serve a medical purpose.

## EXCLUSIONS - PART C ONLY

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

We do not cover **bodily injury**:

1. That results from a nuclear reaction, radiation, or fallout.

2. Covered by a nuclear energy liability policy, even if the limits of that policy are exhausted.

3. That results from the maintenance or use of any **vehicle** without the express or implied permission of the **owner** or outside the scope of that express or implied permission.

4. To an **insured person's** employee which arises in the course of employment.

   Unless coverage is required under workers' compensation, disability benefits, or similar laws, **we** will provide coverage for an **insured person's** domestic employee injured in an **accident** in the course of employment.

5. To an **insured person's** co-worker occurring in the course of employment if such injury arises out of the **insured person's** use of a **vehicle** or **trailer** in any **business**.

6. That results from the ownership, maintenance, or use of a **vehicle** while used to transport persons or property for a fee or compensation. This exclusion does not apply to shared-expense car pools.

7. Arising out of the operation of equipment or machinery not listed on the **Declarations Page**.

8. Resulting from the ownership, maintenance, or use of any **vehicle** other than the **insured auto**, which is **owned** by, furnished or available for the regular use of **you**, a **relative**, a **resident**, or a nonresident spouse.

9. Arising out of the ownership, maintenance, or use of any **vehicle** with less than four wheels.

10. Resulting from the ownership, maintenance, or use of a **vehicle** in any racing event.

11. Resulting from any **auto business**.

12. Resulting from the ownership, maintenance, or use of a **vehicle** by a person employed or engaged in any **business** other than an **auto business**. This exclusion does not apply if **business** use of the **insured auto** has been declared and an additional premium has been paid.

13. Incurred while the **insured auto** is being leased or rented to others.

14. Resulting from the use of a **vehicle** for snow removal.

15. Sustained while occupying any **vehicle** located for use or being used as a residence or premises.

16. Sustained by **you**, a **relative**, or a **resident** while the **insured auto** is being operated by any **resident** or **relative** not listed by **you** on the **application** or otherwise disclosed to **us** and listed on the **Declarations Page** before the **accident**.

17. Sustained as a result of the use of a **vehicle** by a person or persons specifically excluded by endorsement.

18. Sustained from any source other than an **accident**.

19. Sustained by **you** or a regular or frequent driver while the **insured auto** is being operated by such regular or frequent driver not listed by **you** on the **application** or otherwise disclosed to **us** and listed on the **Declarations Page** before the **accident**. However, **you** have fourteen days to report any new **relative** or **resident** to **us**.

20. Caused by war (declared or undeclared), civil war, insurrection, rebellion, revolution, or riot.

21. Sustained by any person while occupying **the insured auto** without **your** express permission or beyond the scope of **your** permission.

22. Occurring during the course of employment if benefits are payable or available under a workers' compensation law or similar law.

23. While in the commission of a crime (felony).

## LIMITS OF LIABILITY - PART C ONLY

**We** will pay no more than the limit of liability shown for this coverage on the **Declarations Page** to or for each **insured person** as the result of any one **accident**, regardless of the number of premiums or **vehicles** listed on the **Declarations Page**, **insured persons**, claims, claimants, policies, or **vehicles** involved in the **accident**. In no event will an **insured person** be entitled to receive duplicate payments for the same element of loss.

## OTHER INSURANCE - PART C ONLY

If there is other applicable auto medical payments coverage, **we** will pay only **our** share. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **vehicle you** do not own shall be excess over any other collectible insurance.

## PART D - UNINSURED / UNDERINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

In exchange for **your** premium payment, **we** will pay damages other than punitive or exemplary damages not exceeding the limits shown on the **Declarations Page**, which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** caused by an **accident** and sustained by such **insured person**. The **bodily injury** must be caused by an **accident** and must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

If suit is brought to determine legal liability or damages without **our** written consent, **we** are not bound by any resulting judgment.

## ADDITIONAL DEFINITIONS USED IN PART D ONLY

As used in this Part:

1. "**Insured person**" means **you**, a **relative**, any **resident**, or any other person **occupying** the **insured auto** with **your** express or implied permission.

2. "**Uninsured motor vehicle,**" means a land vehicle or trailer of any type which is:
   a. Not insured by a liability bond or policy at the time of the **accident**.
   b. Insured by a **bodily injury** or liability bond or policy at the time of the **accident**, but the **bodily injury** liability limit is less than the minimum limit for liability required by the Financial Responsibility Law of Florida.
   c. A hit-and-run or phantom **vehicle** whose operator or **owner** cannot be identified and which hits or causes an **accident** without hitting:
      i. **you**, any **relative** or any **resident**;
      ii. an **auto** which **you**, any **relative**, or any **resident** are **occupying**; or
      iii. the **insured auto**.

   If there is no physical contact with the hit-and-run or phantom **vehicle**, the existence of such unknown motorist must be established by corroborating evidence given by an independent and disinterested eyewitness who is not making a claim under this or any similar coverage. **Accidents** caused by a hit-and-run or phantom **vehicle** must be reported to the police within forty-eight (48) hours of their occurrence to be covered under this Part.
   d. Insured by a **bodily injury** liability bond or policy at the time of the **accident**, but such policy excludes liability coverage for **bodily injury** sustained by **you**, a **relative**, or any **resident** while **occupying** the **insured auto** operated by a person other than **you**, a **relative**, or any **resident**.
   e. An **underinsured motor vehicle**. "**Underinsured motor vehicle**" means a land **vehicle** or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident** but its limit for **bodily injury** liability is less than the applicable damages the **insured person** is legally entitled to recover.
   f. Insured by a **bodily injury** liability bond or policy at the time of the **accident**, but the insurer denies coverage or is or becomes insolvent.

   **Uninsured motor vehicle** does <u>not</u> include any **vehicle** or equipment:
   a. owned by or furnished or available for the regular use of **you**, a **resident** or a **relative**, except as provided in item 2.d. above;
   b. operated on rails or crawler treads;
   c. designed mainly for use off public roads;
   d. while located for use or being used as a residence or premises;
   e. owned by any governmental unit or agency and used in an authorized manner;
   f. not required to be registered with the Department of Motor Vehicles, including but not limited to, mopeds, scooters, golf-carts, go-carts, and all terrain vehicles; or
   g. which is an **owned** motorcycle.

3. "**Use**" of an **uninsured motor vehicle** or an **underinsured motor vehicle** means that such **vehicle** must be the main cause of the **bodily injury**. The

**bodily injury** must not merely occur while the **uninsured motor vehicle** or **underinsured motor vehicle** is being used or operated. There must be an actual and causal connection between the use or operation of the **uninsured motor vehicle** or **underinsured motor vehicle** and the **bodily injury**.

## EXCLUSIONS - PART D ONLY

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

**We** do not provide uninsured motorists coverage or underinsured motorists coverage for **bodily injury** sustained by any person:

1. If that person or his legal representative settles the **bodily injury** claim without **our** consent. This exclusion does not apply to a settlement made with an insurer of an **underinsured motor vehicle**, if **we** fail to respond within 30 days to **your** request for authority to settle with the at-fault party. **Your** request must be sent to **us** by certified or registered mail.

2. While **occupying** the **insured auto** when it is being used to carry persons or property for a charge or consideration, including magazines, newspapers, food or any other product. The exclusion described in this paragraph does not apply to shared-expense car pools.

3. While using a **vehicle** without the **owner's** express or implied permission.

4. So as to apply directly or indirectly to the benefit of any insurer or self-insurer under any worker's compensation law, disability law, or any similar law.

5. Resulting from the use of any **vehicle** for **racing**.

6. Who does not report the **accident** to the police within forty-eight (48) hours if a phantom **vehicle** or hit-and-run **vehicle** is involved.

7. Who is a regular and frequent user of the **insured auto** but is not disclosed to **us** prior to the **accident**, and listed on the **Declarations Page**.

8. For **bodily injury** resulting from the ownership, maintenance, or use of any **vehicle** designed mainly for use off public roads, except in a medical emergency.

9. For punitive or exemplary damages awarded as a punishment or deterrent.

10. For any loss sustained while a **vehicle** is used to transport nursery or school children, migrant workers, or hotel/motel guests during the course of the regular operation of the **business** of an **insured person**. This exclusion does not apply to **your** children or children engaged in a car pool arrangement with **you**.

11. While the **insured auto** is used in, or in preparation for, any race, speed or performance contest, or while the **insured auto** is located inside a facility designed for such events.

12. For damages for pain, suffering, mental anguish and inconvenience unless the **bodily injury** sustained is described in section 627.737(2) of the Florida statutes.

## LIMITS OF LIABILITY - PART D ONLY

The limits of liability shown on the **Declarations Page** apply subject to the following:

1. The total of the uninsured motorist coverage limits provided for each **vehicle** identified on the **Declarations Page** as "per person" is the maximum we will pay as damages for **bodily injury**, including damages for derivative claims, to any one person in any one **accident**.

2. The total of the Uninsured Motorist Coverage limits provided for each **vehicle** identified on the **Declarations Page** as "per accident" is the maximum **we** will pay as damages for **bodily injury**, including damages for derivative claims, to two or more persons in any one **accident**.

**We** will pay no more than these maximum amounts regardless of the number of:

1. **vehicles** or premiums shown on the **Declarations Page**;

2. insureds;

3. claims;

4. claimants;

5. policies; or

6. **vehicles** involved in the **accident**.

In no event will an **insured person** be entitled to receive duplicate payment for the same element of a loss.

Any amounts otherwise payable for damages under this coverage shall be excess over benefits available to an **insured person**:

1. under any worker's compensation law;

2. under any personal injury protection benefits coverage;

3. under any disability benefits law or similar law;

4. under any **auto** medical payments coverage;

5. under any motor vehicle liability insurance coverages;

6. from the **owner** or operator of the **uninsured motor vehicle**; or

7. from any person or organization jointly or severally liable for the **accident** together with such **owner** or operator of the **uninsured motor vehicle**.

Any payment under this coverage shall reduce any amount an **insured person** is entitled to recover under Part A - Liability Coverage of this policy.

## OTHER INSURANCE - PART D ONLY

If there is other similar applicable uninsured motorist insurance that covers a loss, **we** will pay **our** proportionate share of that loss, subject to all limitations on coverage set forth in the Limits of Liability - Part D Only above. **Our** share is the proportion **our** limits of liability bear to the total of all applicable limits. However, any insurance **we** provide with respect to a **vehicle you** do not own shall be excess over any other valid and collectible insurance.

Coverage for newly acquired **autos** does not apply where there is other similar valid and collectible insurance.

## ADDITIONAL DUTY - PART D ONLY

An **insured person** seeking coverage under this policy because of an **underinsured motor vehicle** must promptly:
1. Send **us** copies of the legal papers if a suit is brought; and

2. Notify **us** in writing by certified or registered mail of a tentative settlement between the insured and the insurer of the **underinsured motor vehicle** and allow **us** 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve **our** rights against the insurer, **owner** or operator of such **underinsured motor vehicle**.

## PART E - COVERAGE FOR DAMAGE TO THE INSURED AUTO

### INSURING AGREEMENT

If the **Declarations Page** shows a premium charged for **comprehensive** coverage, **we** will pay for direct and accidental **comprehensive loss** to the **insured auto**, including its factory-installed equipment, less any applicable deductible for each separate **loss**.

The **comprehensive** deductible amount shall not apply to **loss** or damage to the windshield of the **insured auto**.

If the **Declarations Page** shows a premium charged for **collision** coverage, **we** will pay for direct and accidental **loss** to the **insured auto**, including its factory-installed equipment caused by **collision**, less any applicable deductible for each separate **loss**.

### ADDITIONAL DEFINITIONS USED IN PART E ONLY

1. **"Actual cash value"** means market value at the time of the **loss** based upon vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less **depreciation** and/or **betterment**.

2. **"Aftermarket parts"** means replacement **auto** parts not made by the original manufacturer of the motor vehicle or by a manufacturer authorized by the original manufacturer to use its name or trademark.

3. **"Betterment"** means a deduction for making an item better or adding value thereto.

4. **"Collision"** means **loss** caused by the **insured auto's** upset or overturn, or sudden impact with another object.

5. **"Comprehensive"** means **loss** to the **insured auto** caused by an event other than **collision**. **Comprehensive loss** includes, but is not limited to, **loss** caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, volcanic activity, windstorm, hail, water, flood, malicious mischief or vandalism, riot or civil commotion, contact with a bird or animal, or breakage of glass. If breakage of glass results from **collision, you** may elect to have it treated as **loss** caused by **collision**.

6. **"Custom or additional equipment"** means any equipment which was not installed at the factory or added as original equipment when the **vehicle** was purchased new.

7. **"Deductible"** is that sum which is shown on the **Declarations Page** and will be deducted from the **loss**.

8. **"Depreciation"** means the loss of value caused by physical, technological, social, and/or location deterioration.

9. **"Diminution of value"** means the difference in the **actual cash value** of the **insured auto** immediately before and after a **loss**.

10. **"Loss"** means sudden, direct, and accidental damage to, or theft of, **the insured auto**, including its original optional equipment, which is permanently installed at the factory by the vehicle manufacturer or authorized dealer. Custom or additional equipment over the maximum limit of $500 under this Part is covered only if it is declared before the **loss** and an additional premium is paid. Equipment installed or alterations made by conversion facilities to an **auto** or camper are not considered standard or original optional equipment.

11. **"The insured auto"** shall also mean an **auto** or trailer not owned by or furnished or available for the regular use of **you**, a **relative** or a **resident** while being used with the express permission of the **owner**. However, coverage under this Part does not apply:
    a. to any **auto** or trailer which is rented for any **business** purposes; or
    b. to any **auto** or trailer which is rented for a period in excess of 14 consecutive calendar days.

## EXCLUSIONS - PART E ONLY

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

**We** do not cover **loss:**

1. That results from nuclear reactions, radiation, or fallout.

2. Covered by a nuclear energy liability policy, even if the limits of that policy are exhausted.

3. That results from the ownership, maintenance, or use of the **insured auto** while used to transport persons or property for a fee or compensation. This exclusion does not apply to shared-expense car pools.

4. To the **insured auto** while it is rented or leased to others.

5. To clothes, tools, or other personal effects.

6. To property the insured person rents, uses, or has charge of, including loss of its use. This does not apply to a **rental vehicle** subject to the definition of **insured auto** as used in this Part.

7. To any **vehicle** with less than four wheels.

8. Resulting from the use of any **vehicle** in any **racing** event or off-road recreational activity.

9. To any **vehicle** or **trailer** resulting from **your** employment by, or ownership of, any **auto business**.

10. Resulting from the ownership, maintenance, or use of a **vehicle** or **trailer** while a person is engaged in any **business** activity other than **auto business** activities. This exclusion includes use of a **vehicle** for delivery of goods or services arising out of any **business**. This exclusion does not apply if **business** use of **the insured auto** has been declared and an additional premium has been paid.

11. Resulting from the use of **the insured auto** for snow removal.

12. Caused by war (declared or undeclared), civil war, insurrection, rebellion, or revolution.

13. Caused to a camper body, pickup shell, box cover, or **trailer owned** by **you** and not described on the **Declarations Page**. However, coverage does apply to **loss** to a camper body, pickup shell, box cover, or **trailer** which **you** acquire during the policy period if **you** ask **us** to insure it within 14 days after **you** acquire it and pay any required premium when due.

14. Resulting from prior **loss** or damage; manufacturers' defects; wear and tear; freezing; mechanical or electrical breakdown or failure; or road damage to tires. However, coverage does apply if the **loss** is the result of other **loss** covered by this policy.

15. To any modified suspension equipment, modified engines, modified carburetor systems, or modified equipment, including but not limited to:
    a. aluminum, magnesium, chrome or alloy wheels;
    b. special wide-tread tires or slicks.

    This exclusion does not apply to special equipment as outlined under **custom or additional equipment** coverage.

16. To winches, utility boxes, or tool boxes.

17. To tapes, compact discs, records, cassettes, or similar recording or recorded media used with sound equipment, including any cases or other containers used in storing or carrying such items.

18. To custom paint, murals, decals or graphics; special carpeting or furnishings; sun roofs, moon roofs, t-bar roofs or height extending roofs; bubble domes or similar windows; refrigeration or cooking equipment and any equipment used for sleeping.

19. To any electronic equipment, antennas, and other devices used exclusively or primarily to send or receive audio, visual, or data signals, or to play back recorded media, if such equipment or device is not permanently installed in the dash or console opening of the **insured auto** by the vehicle manufacturer or dealer and specified as original equipment by the vehicle manufacturer.

20. To sound receiving or transmitting equipment designed for use as citizen band radios, two-way mobile radios, televisions not permanently installed in **the insured auto** by the vehicle manufacturer or dealer and specified as original equipment by the vehicle manufacturer, VCRs, telephones not originally installed by the original make and model vehicle manufacturer or

dealer, home high fidelity equipment, scanning monitor receivers, radar or laser detectors, or any other detection equipment for speed-measuring devices, or any accessories or antennas to any of these types of equipment.

21. To TV antennas, awnings, cabanas, or equipment designed to provide additional living facilities.

22. To damage caused by, due to or in any way resulting from the alteration, modification, or customizing of the vehicle which alters or affects the drivability, road worthiness, handling or safety of the insured auto.

23. To the insured auto while in the care, custody, or control of any person for the purpose of selling the insured auto.

24. Caused intentionally by, or at the direction of you, a relative, a resident, or anyone using the insured auto with your express or implied permission and within the scope of such permission.

25. To the insured auto caused by or resulting from your acquiring an auto from the seller without legal titles available to you.

26. To the insured auto while being operated by a person or persons specifically excluded by endorsement.

27. To any vehicle that is subject to bailment lease, conditional sale or consignment agreement not specifically declared and described in this policy.

28. Caused to the insured auto when it is driven, operated or used by any person who resides in your household or has regular use of the insured auto and such person is not listed or endorsed on the policy prior to loss.

29. Arising out of or due to the use of the vehicle for transportation of any explosive substance, flammable liquid, or similarly hazardous materials, except transportation incidental to your ordinary household activities.

30. Due to confiscation or destruction by governmental or civil authorities.

31. To paint or discoloration of paint resulting from acid rain, smoke, smog, chemicals, salt, tree sap, or animal or bird droppings unless such loss is a direct result of collision or vandalism.

32. While the insured auto is being used in the commission of a crime. This exclusion applies only while the insured auto is being used by you, a relative, a resident, or anyone with your express or implied permission.

33. To the insured auto, non-owned auto or trailer for diminution of value.

34. Caused by the theft or conversion of the insured auto by a person to whom you have voluntarily entrusted the insured auto. This exclusion does not apply when the insured auto is stolen from the person to whom you loaned the auto, if the theft is reported to the police within 24 hours of the loss.

35. To any non-dealer or non-factory installed equipment that mechanically or structurally changes the insured auto and results in an increase in performance or a change in appearance.

36. To, or for loss of use of, a rental vehicle rented by you, a relative or a resident if a rental vehicle company is precluded from recovering such loss or loss of use, from you, a relative or a resident pursuant to the provisions of any applicable rental agreement or state law.

37. To any non-owned auto, rental vehicle or substitute auto when used by you, a relative or a resident without the owner's express or implied permission or outside the scope of the owner's permission.

## LIMITS OF LIABILITY - PART E ONLY

Our limits of liability for loss shall not exceed the lesser of:

1. the actual cash value of the stolen or damaged property, at the time of loss, which may include an adjustment for depreciation and/or betterment; or

2. the amount necessary to repair or replace the property to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer or parts from other sources including, but not limited to, aftermarket parts, as specified in Payment of Loss - Part E Only; or

3. the amount necessary to repair or replace a trailer not owned by you, a relative or a resident subject to a maximum of $500.

Non-excluded custom or additional equipment is covered subject to a maximum limit of $500 unless the value has been reported to us prior to the loss and a premium has been paid for the custom or additional equipment coverage as shown on the Declarations Page. Our limit of liability for this equipment shall be the lesser of:

1. the actual cash value of the stolen or damaged property, at the time of loss, which may include an adjustment for depreciation and/or betterment or;

2. the declared value.

All claims submitted under this Part shall be subject to the applicable deductibles shown on the Declarations Page. Any applicable deductible amount and salvage value, if you retain the salvage, is subtracted from all loss payments.

If we, at our option elect to pay for the cost to repair or replace the property or part, our liability does not include any decrease in the property's value, however measured, resulting from the loss and/or repair or replacement. If repair or replacement results in the betterment of the property or part, we will not pay for the betterment.

In the event that the coverage applies to a vehicle you do not own, our liability is limited to the highest actual cash value of the auto described on the Declarations Page for which coverage under this Part has been purchased.

If more than one auto shown on the Declarations Page is insured under this Part of the policy, then our limit of liability shall not exceed the actual cash value of the highest-valued auto shown on the Declarations Page.

If **loss** to **the insured auto** is also payable under the Liability coverage of another policy issued by **us**, we will pay for such damage or loss only once, either under this policy or under the Liability section of the other policy.

Sound reproducing equipment and component parts shall be subject to a maximum limit of $1,000 in the aggregate when permanently installed by a factory or dealer as original equipment in the dash or console opening of **the insured auto**.

## APPRAISAL - PART E ONLY

**You** or **we** may demand appraisal of the **loss**. Both parties will be bound by the results of the appraisal. Each party will appoint and pay a competent disinterested appraiser and will equally share other appraisal expenses. Each appraiser will state separately the **actual cash value** and the amount of **loss**. If the appraisers fail to agree, they will select an umpire and submit their differences to the umpire. If the appraisers cannot agree on an umpire, either may request that a judge of a court having jurisdiction make selection. An award in writing by any two of these three will determine the amount payable, subject to the terms of this policy. Attorney fees shall not be regarded as appraisal expenses. **We** do not waive any rights by agreeing to an appraisal.

## PAYMENT OF LOSS - PART E ONLY

**We** may pay for the **loss** in money, or repair or replace the damaged or stolen property. If **the insured auto** is older than two model years from the date of **loss**, **we** may repair the **insured auto** using either **aftermarket parts** or recycled used parts, whichever is deemed to be less expensive by **us**, and with a deduction for **depreciation** and/or **betterment**. **We** may, at any time before the **loss** is paid or the property is replaced, return at our expense any property either to **you** or to the address shown on the **Declarations Page**, with payment for any resulting damage. **We** may keep all or part of the property at the agreed or appraised value. **You** do not have the right to abandon salvage to **us**. **We** may settle any claim for **loss** either with **you**, or with the **owner** of the property. Payment for **loss** is required only if **you** have fully complied with the terms of this policy.

## PROOF OF LOSS

**You** must file written proof of **loss** within 60 days from the date **we** request it or there will be no coverage under this Part.

## OTHER INSURANCE - PART E ONLY

If other insurance applies to a **loss** covered under this Part, **we** will pay only our share of the **loss**. Our share is the prorated amount of **our** limit of liability compared to all available limits of liability.

Insurance afforded under this Part of the policy for an **auto you** do not own will be excess over any other applicable coverage or insurance.

## NO BENEFIT TO BAILEE

This coverage shall not directly or indirectly benefit any person, organization, group, or other bailee caring for or handling property for a fee or compensation.

## ADDITIONAL PAYMENTS

If there is a theft of **the insured auto**, **we** will pay up to the limits shown on the **Declarations Page**, for the cost of transportation incurred by **you**. This coverage begins 48 hours after **you** notify the police of the theft. The coverage period ends when the auto is returned to use or when **we** pay for the **loss**. **We** will not pay for the cost of transportation incurred by an insured person if there is a theft only of a trailer.

## CAR STORAGE COVERAGE

**We** will pay up to a reasonable and customary daily rate for the cost of storage of the **insured auto** in the event of a **loss** to the **insured auto** for which coverage is provided under this Part. **We** will pay no more than $400 total for the cost of storage of **the insured auto** under this section.

## TOWING AND LABOR COVERAGE

If the **Declarations Page** shows a specific premium charged for towing and labor coverage, **we** will pay up to the limits shown on the **Declarations Page** for towing and labor costs incurred each time the **insured auto** is disabled, which does not include its running out of gas. **We** will cover labor, not including emergency locksmith repair, only if performed at the place of disablement. **You** agree to provide us with proof in the form of verifiable receipts of towing and labor charges incurred.

## CUSTOM OR ADDITIONAL EQUIPMENT COVERAGE

If the **Declarations Page** shows a specific premium charged for **custom or additional equipment** coverage, **we** will pay for direct and accidental **loss** to additional equipment, which **you** have identified to us before the **loss**, if such equipment is permanently attached to the **insured auto**. **Our** limit of liability for **loss** to additional equipment shall not exceed the lesser of:

1. the **actual cash value** of the stolen or damaged property at the time of **loss** which may include an adjustment for **depreciation** and/or **betterment**;

2. the amount necessary to repair or replace the property as specified in Payment of Loss - Part E Only; or

3. the declared value of the identified equipment as shown on the **Declarations Page**.

The amount referenced above will be reduced by the applicable **deductible** as listed on the **Declarations Page**.

**Our** limit of liability for **custom or additional equipment** coverage under this Part shall not exceed the limit shown on the **Declarations Page**.

**We** do not cover **loss** to any of the following types of equipment unless declared, approved, and an additional premium is charged for **custom or additional equipment** coverage:

1. awnings, cabanas, campers, custom enclosures, or any other equipment designed to provide additional living facilities;

2. any equipment or alteration not permanently installed at the factory by the original make and model vehicle manufacturer or authorized dealer and considered standard or original optional equipment for such

vehicle. Equipment installed or alterations made at a conversion facility to an auto or camper is not considered standard or original optional equipment installed by the vehicle manufacturer;

3. nonstandard chrome, alloy, aluminum, or magnesium wheels;

4. custom wide-tread tires and racing slicks;

5. custom chroming or gold plating, two-tone or custom paint work, or custom interior work;

6. captains or swivel chairs or tables;

7. sun roof, moon roof, T-bar roof, or landau roof, if not permanently installed by the original make and model vehicle manufacturer or the authorized representative of the vehicle manufacturer;

8. bubble dome, bubble window, or any deluxe roof treatment;

9. satellite navigational devices if not permanently installed by the original make and model vehicle manufacturer or the authorized representative of the vehicle manufacturer;

10. any "ground effects" package or "continental kit"; or

11. telephones permanently installed by the original make and model vehicle manufacturer.

## RENTAL REIMBURSEMENT COVERAGE

If the **Declarations Page** shows a specific premium charged for rental reimbursement coverage, **we** agree to pay **you** for any reasonable and necessary transportation expense incurred, but not more than the limit shown on the **Declarations Page**, payable for a maximum of thirty (30) days, for the loss of use of the **insured auto** because of damage covered under Part E to the **insured auto**.

1. This endorsement does not apply to theft of the **insured auto** since additional payments coverage is provided under Part E - Coverage for Damage to the **Insured Auto**.

2. The **insured auto** means the vehicle described on the **Declarations Page** and for which specific premium is charged for this coverage.

3. The **insured auto** must be continuously withdrawn from normal use for more than twenty-four (24) hours.

4. **We** will reimburse **you** for rental only for the length of time required to repair or replace the **insured auto** as quickly and reasonably as possible.

This endorsement is subject to such exclusions, conditions, and other terms of the policy which are applicable to Part E for damage to the **insured auto**.

## PART F - GENERAL PROVISIONS

### POLICY PERIOD & TERRITORY

This policy shall become effective on the date and time shown on the **Declarations Page** at the address shown on the **Declarations Page**. The policy will expire on the date and time specified on the **Declarations Page** at the address shown on the **Declarations Page**, unless terminated sooner.

This policy applies only to **accidents** and losses that occur during the policy period shown on the **Declarations Page** and within the United States of America or Canada.

If **you** owe **us** any premium on **your** expired or expiring policy, these funds must be paid before **your** policy will be renewed by **you**. Any payment sent by **you** will first be used to pay any balance owed on the expired or expiring policy, and any remainder of such payment will be applied to the renewal premium.

### PREMIUM CHANGES

The premium for this policy is based on information **we** have received from **you** and other sources.

**You** agree:

1. that if **you** provide incorrect or incomplete information, or if any information material to calculating the policy premium changes, **we** may adjust the premium accordingly during the policy period;

2. to cooperate with **us** in determining if this information is correct and complete, and to advise **us** of changes in this information within 14 days of the change; and

3. that the return premium will be calculated on the basis of the correct premium, if this policy is canceled.

Any adjustment of **your** premium will be made using the rules in effect at the time of the change.

Premium adjustment may be made as the result of a change in:

1. any **auto** insured by the policy including changes in use;

2. drivers, driver's age, or driver's marital status;

3. coverages or coverage limits;

4. rating territory;

5. eligibility for discounts or other premium credits; and

6. any other rating criteria permitted by law.

### COVERAGE CHANGES

**We** may revise **your** policy coverages to provide more protection without additional premium charge. If **we** do this and **you** have the coverage, which **we** change, **your** policy will automatically provide the additional coverage as of the date the revision is effective in **your** state. Otherwise, this policy, the **application**, the endorsements, the **Declarations Page** and all attachments contain all of the coverage agreements between **you** and **us**. Its terms may not be changed or waived except by an endorsement issued by **us**.

### PREMIUM PAYMENT

**Premium payment** means the actual receipt of cash funds by **us**. **We** provide coverage for each policy term only on condition that the initial **premium payment** and subsequent installment payments for that policy term are paid. **You** have not paid the initial premium or any installment payment if **you** give **us** a check or a credit card or an electronic funds transfer that is not honored at first presentation by the financial institution upon which it is drawn.

You have not paid the initial down payment premium if **you** give **us** a check or a credit card or an electronic funds transfer that is not honored at first presentation by the financial institution upon which it is drawn; this policy shall be void from the inception of the policy term and no coverage will exist, regardless of whether the policy has been issued.

If **you** receive a cancellation notice from **us**, referencing either a regular installment payment or a renewal down payment, and informing **you** that **your premium payment** to **us** was returned unpaid, **you** must provide a replacement payment to **us** by means of either a cashier's check or money order. If payment is timely made in such a fashion by the due date noted on the cancellation notice, then **your** policy will remain active and in force.

## CANCELLATION AND NONRENEWAL

**We** will not cancel, non-renew or discontinue **your** policy solely because of the age, race, color, religion, sex, national origin or ancestry of anyone who is an insured.

During the first 60 days **you** may only cancel this policy by:

1. notifying **us** upon the total destruction of the **insured auto**.

2. notifying **us** upon the transfer of ownership of the **insured auto**.

3. notifying **us** of the purchase of another policy covering the **vehicle** being cancelled.

After the first 60 days, **you** may cancel this policy by returning it to **us** or an authorized agent or by advising **us** in writing at a future date as to when the cancellation is to be effective.

**We** may cancel this policy during the first 60 days for the following reasons:

1. In the event **we** determine that **you** have been charged an incorrect premium for coverage requested in **your application** for insurance, **we** shall immediately mail **you** notice of any additional premium due **us**. If within 10 days of the notice of additional premium due (or a longer time period if specified in the notice), **you** fail to either:
   a. pay the additional premium and maintain this policy in full force under its original terms; or
   b. cancel this policy and demand a refund of any unearned premium,

   then this policy shall be cancelled effective 14 days from the date of the notice (or a longer time period as specified in the notice).

2. For nonpayment of premium if **you** have given **us** a check that is not honored at first presentation by the financial institution upon which it is drawn.

3. If the policy was obtained through a material misrepresentation or fraud.

4. Any other reason allowed by Florida law.

If this policy has been in effect sixty (60) days or more or is a continuation or renewal policy, **we** may cancel only:

1. for nonpayment of premium, in which event **we** will give **you** at least ten (10) days notice;

2. for fraud or material misrepresentation; or

3. for suspension or revocation of **your** driver's license or motor vehicle registration or that of any driver who lives with **you** or any driver who customarily uses the **insured auto**, if the driver's license or motor vehicle registration has been suspended or revoked during the policy period or the 180 days immediately preceding its effective date, or if the policy is a renewal policy during its policy period.

**We** may cancel by mail using registered or certified mail or United States Postal Service proof of mailing to **you** at the address shown on the **Declarations Page**:

1. not less than 10 days' notice of cancellation in the case of non-payment of premium;

2. not less than 45 days' notice of cancellation in all other cases; or

3. not less than 14 days' notice of cancellation in the case of non-payment of additional premium.

Proof of mailing is proof of notice. Mailing is equivalent to delivery.

**We** will mail to **you** at the address shown on the **Declarations Page** or deliver to **you** notice of nonrenewal not less than forty-five (45) days before the end of the policy period, if **we** decide not to renew or continue this policy.

Upon cancellation **you** may be entitled to a premium refund. If so, **we** will send it to **you** but our offer of a refund is not a condition of cancellation. If **you** cancel, the refund will be computed in accordance with our customary cancellation procedure. If **we** cancel, the refund will be computed on a pro-rata basis. The effective date of cancellation stated in a notice is the end of the policy period.

This policy will automatically terminate at the end of the current policy period if **you** or **your** representative do not accept our offer to renew or continue it. **Your** failure to pay the required continuation or renewal premium when due means that **you** have declined our offer.

## LIMITATIONS ON AGENT AUTHORITY

The authorized agent who obtained this policy for **you** has limited authority to act in transacting business with **you** on this policy. Any statement or assurance made by this authorized agent to **you** concerning **your** policy is governed by our guidelines and rules, as well as applicable laws and regulations.

The authorized agent who obtained this policy for **you** does not possess any apparent, implied, or actual authority to act on our behalf after the expiration, cancellation, or nonrenewal of **your** policy with **us**. Any representations made by the authorized agent after a notice of termination has been initiated, by either **you** or **us**, will apply only if **we** provide prior written approval.

## MEDIATION OF CLAIMS

In the event that **you** or **we** have any dispute for any reason under this policy, the dispute may be settled by mediation if the damages from **bodily injury** are for $10,000 or less, from **property damage** in any amount, or if there is a **loss** to the **insured auto** or any **non-owned auto**.

**You** or **we** may demand mediation of a claim by filing a written request with the Florida Department of Financial Services on a form which may be obtained from the Department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator. The mediator will notify the parties of the date, time and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation conference will be conducted informally and may be held by telephone, if feasible.

Participants must have authority to make a binding decision and mediate in good faith. Costs of the mediation will be shared equally by each party unless the mediator determines a party has not mediated in good faith.

## ARBITRATION

If **we** and an insured person do not agree whether that insured person is legally entitled to recover damages, or if either party disagrees as to the amount of damages that are recoverable by the insured under Part B - Personal Injury Protection, Part C - Medical Payments Coverage or Part D - Uninsured/Underinsured Motorists Coverage then the matter may be arbitrated. As a part of our claims handling procedures, **we** may use software that is designed to evaluate **bodily injury** under Part D - Uninsured/Underinsured Motorists Coverage.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third arbitrator. If they cannot agree on a third arbitrator within 30 days, either may appear in a court of jurisdiction to request that the judge appoint a third arbitrator.

Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally. Unless both parties agree otherwise, the arbitration is to take place in the county in which the insured resides.

Either party may dispute the arbitration award by demanding the right to a trial. A demand for trial must be made within 60 days of the decision by the board of arbitrators. If the demand for trial is not made within the time period, the amount of damages agreed to by the arbitrators would be binding, subject to the limits shown on the **Declarations Page**. The arbitrators shall have no authority to determine coverage under the policy.

## TWO OR MORE AUTO POLICIES

If this policy and any other **auto** insurance policy issued to **you** by **us** apply to the same **accident**, the maximum limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy, even though separate premiums have been paid. This provision may not apply to Uninsured/Underinsured Motorists Coverage. However, no one will be entitled to receive duplicate payments for the same element of loss.

## SUITS AGAINST US

**We** may not be sued unless there is full compliance with all terms of this policy. **We** may not be sued under Part A of this policy until the obligation of an insured to pay is finally determined either by judgment against the insured or by written agreement of the insured, the claimant, and **us**. No one shall have any right to make **us** a party to a suit to determine the liability of an insured.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Interest in this policy may not be assigned or transferred without **our** written consent. However, if **you** die, coverage will be provided until the end of the policy period for:

1. any person specifically named as an operator on the **Declarations Page**; and

2. the legal representative of the deceased person while acting within the scope of his or her duties as a legal representative.

If the **insured auto** is sold, coverage will terminate as to that auto when the buyer takes possession of the auto and will not transfer to the new **owner**.

## BANKRUPTCY

An insured person's bankruptcy or insolvency will not relieve **us** of any obligation under this policy.

## OUR RECOVERY RIGHTS

If **we** make a payment under this policy and the person receiving payment is entitled to recover from another, **we** are entitled to those same rights of recovery to the extent of **our** payment. **You** and anyone **we** cover must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise **our** rights, and do nothing after a loss to harm **our** rights.

When a person has been paid by **us** under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their loss.

If an insured person or organization receives recovery from a responsible party without **our** written consent, the insured person or organization's right to payment under any affected coverages of this policy will no longer exist.

## LOSS PAYABLE CLAUSE

**We** will pay loss or damage due under this policy according to **your** interest and that of the loss payee if one is shown on the **Declarations Page**. **We** may make separate payments according to those interests.

**We** will pay the loss payee for a loss under this policy even though **you** have violated the terms of the policy by something **you** have done or failed to do. However, **we** will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by **you** or anyone acting on **your** behalf.

**We** may cancel this policy according to its terms.

If **you** fail to give proof of loss within the time allowed, the loss payee may protect its interest by filing a proof of loss within thirty (30) days after that time.

The loss payee must notify **us** of any known change of ownership or increase in the risk. If it does not, it will not be entitled to any payment under this protection.

If **we** pay the loss payee under the terms of this protection for a loss not covered under the policy, **we** are subrogated to its rights against **you**. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign **us** its interest and transfer to **us** all supporting documents if **we** pay the balance due to the loss payee on the **vehicle**.

The deductible amount applicable to losses payable to the loss payee under Part E - Coverage for Damage to the Insured Auto shall be the deductible amount shown on the **Declarations Page** for this coverage.

## PUNITIVE OR EXEMPLARY DAMAGES

This insurance shall not apply to punitive or exemplary damages. **We** will not provide any defense, or pay for any claim, settlement, judgment, or other award of punitive or exemplary damages under any Part of this policy.

## TERMS OF POLICY CONFORMED TO STATUTES

Terms of this policy that conflict with the statutes of the **state** in which **we** issue this policy are hereby amended to conform to such statutes.

## FRAUD AND MISREPRESENTATION

The statements made by **you** in the **application** are deemed to be representations. If any representation contained in the **application** is false, misleading, or materially affects the acceptance or rating of the risk by **us**, by either direct misrepresentation, omission, concealment of facts, or incorrect statements, this policy will be void from its inception.

If any representation contained in any notification of change is false, misleading, or materially affects the acceptance or rating of the risk by **us**, by either direct misrepresentation, omission, concealment of facts, or incorrect statement, this policy will be void from the effective date of the change.

This provision shall also apply to misstatements of use and omissions of fact. **We** do not provide coverage for any insured person who has made fraudulent statements or engaged in fraudulent conduct in connection with any **accident** or loss for which coverage is sought under this policy.

**We** may void this policy or deny coverage for fraud or misrepresentation even after the occurrence of an **accident** or loss. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

## POLLUTION EXCLUSION

As used in this Exclusion, **"Pollutants"** include but are not limited to any solid, liquid, gaseous, or thermal substance, irritant, or contaminant including but not limited to smoke, vapor, soot, fumes, acids, alkalis, toxic chemicals, and waste. Waste includes but is not limited to materials that may be recycled, reconditioned, or reclaimed, whether or not known to contain **pollutants** or result in environmental damage.

It is agreed that this insurance does not provide coverage for **bodily injury** or **property damage** arising out of, or resulting from, the intentional or unintentional, actual, alleged, or threatened discharge, release, dispersal, seepage, or escape of **pollutants** contained in any property:

1. transported by, towed by, loaded into, or unloaded from **the insured auto**;

2. otherwise in the course of transit;

3. stored, disposed of, treated, or processed in or upon **the insured auto**. This exclusion does not apply if:
   a. the **pollutants** are emitted directly from an **auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants**;
   b. the **bodily injury** or **property damage** does not arise out of the operation of any equipment or device mounted on an **auto** chassis or used to raise or lower workers; and
   c. the **bodily injury** or **property damage** does not arise out of the operation of any air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, or well servicing equipment.

4. containing the **pollutants** before or after the **pollutants** are moved from the place of acceptance, delivery, disposal, or abandonment, for movement into, onto, or from **the insured auto**. This exclusion does not apply if:
   a. the **pollutants** or any property in which they are contained are upset, overturned, or damaged as a result of the maintenance or use of the **insured auto**; or
   b. the discharge, dispersal, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

It is agreed that this insurance does not provide coverage for any loss, cost, liability, or expense arising out of any judicial, administrative, or other governmental order, direction, or request that **you** test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants** or environmental damage.

## RESCISSION

**We** retain the right to void this policy from its beginning if **we** receive a down payment that is returned unpaid for any reason. Coverage under this policy is contingent upon **us** receiving full, final and complete payment of the down payment of the premium, and **we** will not cover **losses** of any kind that occur after the inception of the policy if **your** down payment is returned unpaid.

**We** reserve the right to void this policy from its beginning if **we** determine that **you** have provided incomplete, inaccurate or false information in **your application**.

This policy is signed on behalf of Infinity Auto Insurance Company by **our** President and Secretary, and is countersigned on the **Declarations Page**, if necessary, by **our** authorized representative.

President                                    Secretary

---

**The following endorsement applies only if Form Number 10950PDE03 appears on your Declarations Page**

## NAMED DRIVER EXCLUSION AGREEMENT (Optional)

This exclusion does not apply to Personal Injury Protection (PIP). This exclusion applies to Property Damage (PD) coverage in excess of the state required minimum.

In consideration of **your premium payment**, it is agreed that, with respect to the insurance afforded under this policy, or any continuation, renewal or replacement of the policy by **you**, or the reinstatement of this policy or any lapse thereof, **we** shall not be liable for loss, damage, and/or liability caused while **the insured auto** or any other automobile to which the terms of this policy are extended is being driven or operated by the person named by **you** as an excluded driver on **your** original application for coverage under this policy, or as named by **you** as an excluded driver on a subsequent policy endorsement.

It is further agreed that in the event **we** shall, because of any interest, become obligated to pay any sum or sums of money because of loss for which there would be no coverage because of this agreement, **you** will reimburse **us** for any and all sums, costs, and expenses paid or incurred by **us**.

---

**The following endorsement applies only if Form Number 10950NCE01 appears on your Declarations Page**

## FLORIDA NON-CANCELABLE POLICY ENDORSEMENT

This policy meets the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security.

The following special provisions apply to this policy and supersede any contrary provisions in the policy.

The following non-cancelable provisions are effective when **our** underwriting is completed or thirty (30) days from the effective date of the policy, whichever comes first:

1. The policy may not be cancelled for any reason.

2. No refund of premium will be allowed.

3. This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk **vehicle**, adding **vehicles**, adding new drivers or moving to a different rating territory.

4. If there is a material change in the policy, **you** must obtain a new non-cancelable policy. However, if a new non-cancelable policy is purchased from **us**, **you** will receive a credit towards such purchase for any premium paid on **your** original policy.

---

**The following endorsement applies only if Form Number 10950LLE01 appears on your Declarations Page**

## LESSOR LIABILITY ENDORSEMENT (Optional)

In exchange for **your** increased premium, this endorsement has been added to **your** insurance policy.

The provisions in this endorsement are effective only while **the insured auto** is leased by **you**, for a period of at least six (6) months, as documented by a standard form lease agreement with expressly stated insurance coverage requirements.

During the term of this policy, the limits of coverage for damages **you** become legally obligated to pay, as defined by **your** policy, shall be those limits listed on **your Declarations Page**.

The endorsement provides the following additional liability coverage for **your** lessor:

**Bodily Injury:**       $100,000 per person
                         $300,000 per accident
**Property Damage:** $50,000 per accident

This additional coverage will apply to damages **your** lessor becomes legally obligated to pay that arise from and are legally related to a loss covered under **your** policy.

The coverage provided by this endorsement is in addition to that listed on **your Declarations Page** and is available only to indemnify **your** lessor pursuant to the terms listed herein.

The provision of the coverages in this endorsement shall in no event increase **our** limits of liability for any damages **you** become legally obligated to pay, pursuant to the terms of **your** policy.

If **we** terminate this policy, notice will also be mailed to the lessor.

The lessor is not responsible for payment of premiums.

10950PVA02                                   Page 20

---

> **The following endorsement applies only if Form
> Number 10950NOE01 appears on your
> Declarations Page**

## NAMED DRIVER NON-OWNER COVERAGE
### (Optional)

---

### INSURING AGREEMENT

If you purchase a Named Driver Non-owner policy, it is agreed that the policy is amended as follows.

---

### AMENDMENT 1

The Liability Coverage Insuring Agreement used in Part A - Liability Coverage is deleted in its entirety and replaced by the following:

**We** will pay damages except for punitive or exemplary damages, for which an **insured person** is legally liable because of **bodily injury** or **property damage** resulting from the use of **your insured auto**. The **bodily injury** or **property damage** must not be expected nor intended from the standpoint of the **insured person**.

**We** will defend any suit or settle any claim for damages, as **we** think appropriate. **We** will not defend or settle after **our** limit of liability has been paid. **We** have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

---

### AMENDMENT 2

The following definitions replace those found in the section titled Definitions Used Throughout this Policy:

**"You"** and **"your"** mean only the individual person named as the insured on the **Declarations Page**.

**"Your insured auto"** means any **non-owned auto** or **trailer** provided that **you** have the express permission of the **owner** to use the **auto** or **trailer**. No coverage shall apply for **you** while operating an **auto** owned by **you**, a resident, or a **relative** of the household in which **you** reside.

---

### AMENDMENT 3

As used throughout this policy, **"insured person"** means **you**. No person shall be considered an **insured person** if that person uses an **auto** without having the express permission of the **owner**.

---

### AMENDMENT 4

The Other Insurance provision in Part A - Liability Coverage is deleted in its entirety and replaced by the following:

### OTHER INSURANCE

The insurance provided by this Part is excess over any other collectible auto liability insurance.

---

### AMENDMENT 5

No coverage applies under Part E - Coverage for Damage to the Insured Auto of this policy.

---

### AMENDMENT 6

Exclusion number 16 in Part A - Liability Coverage is deleted in its entirety.

---

### AMENDMENT 7

The terms and conditions of this endorsement and state statutes also apply to Part D - Uninsured Motorists Coverage of this policy.

---

> **The following endorsement applies only if Form
> Number 10950RDR01 appears on your
> Declarations Page**

## R.S.V.P. DIRECT REPAIR ENDORSEMENT
### (Optional)

---

In consideration of the reduced premium charged for Part E of this policy, it is agreed that any covered repairs will be completed at an RSVP repair facility.

If it is determined that the damaged property is to be repaired and **you** choose to utilize a repair facility which is not an RSVP. Shop, **we** will remove the discount from **your** policy effective as of the date of inception. If there is not a designated RSVP repair facility within a thirty (30) mile radius from the address listed on **your Declarations Page** **you** may choose any repair facility without penalty.

---



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## FLORIDA AMENDATORY ENDORSEMENT
## PERSONAL INJURY PROTECTION COVERAGE

| Copy To | Policy Number | Expiration Date |
|---|---|---|
| JORGE SARDINAS REDACTED | REDACTED 3001 | 05/09/2019 12:01 a.m. |
| | Named Insured | |
| | SARDINAS, JORGE | |
| | This endorsement is attached to and forms a part of the policy. The following endorsement applies only if Form Number 10950AE801 appears on your Declarations Page. | |

**This endorsement amends the policy as follows. Please read it carefully.**

**Your** Florida Personal Auto Policy is amended as follows:

In **PART B - PERSONAL INJURY PROTECTION COVERAGE** of **your** policy, the following changes have been made.

A.  The **INSURING AGREEMENT** is replaced in its entirety with the following:

**We** will pay, in accordance with the Florida Motor Vehicle No-Fault Law, personal injury protection benefits to or for the benefit of an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an accident arising

Subject to the limits shown on the Personal Injury Protection Benefits Schedule attached to the **Declarations Page**, personal injury protection benefits consist of the following:

1.  80% of **medical expenses**;

2.  60% of **work loss**;

3.  **Replacement services expenses**; and

4.  An accidental death benefit of $5,000 if an **insured** dies because of **bodily injury** covered under Part B. Death benefits are in addition to **medical expenses**, **work loss** and **replacement service** benefits provided under this policy. **We** may pay death benefits to the executor or administrator of the deceased, to any of the deceased's **relatives**; or to any person that is entitled to such benefits.

B.  **ADDITIONAL DEFINITIONS USED IN PART B ONLY:**

The definition of "**Medical expenses**" is deleted in its entirety and replaced with the following:

3.  "**Medical expenses**" means reasonable expenses for **medically necessary** medical, surgical, x-ray, dental, and rehabilitative services, including prosthetic devices and **medically necessary** ambulance, hospital and nursing services if the **insured** receives initial services and care within 14 days after the **motor vehicle** accident.

(a)  Reimbursement for **medical expenses** shall be limited to and shall not exceed 80% of the schedule of maximum charges set forth in Section 627.736(5)(a)(1) Florida Statutes as follows:

1.  For emergency transport and treatment by providers licensed under chapter 401, Florida Statutes, 200 percent of Medicare;

2.  For emergency services and care provided by a hospital licensed under chapter 395, Florida Statutes, 75 percent of the hospital's usual and customary charges;

Print Date: 05/07/2018

10950AE801                         Page 1 of 4

3. For emergency services and care as defined by Section 395.002, Florida Statutes, provided in a facility licensed under chapter 395, Florida Statutes, rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist, the usual and customary charges in the community;

4. For hospital inpatient services, other than emergency services and care, 200 percent of the Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services;

5. For hospital outpatient services, other than emergency services and care, 200 percent of the Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services; and

6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
   i.  The participating physicians fee schedule of Medicare Part B, except as provided in ii. and iii.;
   ii. Medicare Part B, in the case of services, supplies and care provided by ambulatory surgical centers and clinical laboratories.
   iii. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment.

However, if such services, supplies or care are not reimbursable under Medicare Part B, we will limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under Section 440.13 of the Florida Statutes, and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided. Services, supplies, or care that are not reimbursable under Medicare or workers' compensation are not required to be reimbursed by us.

We will pay medical expenses according to the applicable fee schedule or payment limitation under Medicare which is in effect on March 1 of the year in which the services, supplies, and care is rendered and for the area in which such services, supplies, or care is rendered. The applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the allowable amount under the applicable schedule of Medicare Part B for 2007 for medical services, supplies, and care subject to Medicare Part B.

We may use the Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies, or care.

(b) **Medical expense** benefits provide reimbursement only for initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III of chapter 401 which provides emergency transportation and treatment.

(c) Upon referral by a provider described in (b) above, for follow up services and care consistent with the underlying medical diagnosis rendered pursuant to paragraph (b) which may be provided, supervised, ordered or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician, osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464.

(d) Follow up services and care may also be provided by any of the following persons or entities:

1. A hospital or ambulatory surgical center licensed under chapter 395.

2. An entity wholly owned by one or more physicians licensed under chapter 458 or chapter 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

3. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

4. A physical therapist licensed under chapter 486, based upon a referral by a provider described in paragraph (b) under **medical expense**.

5. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc., or:
   i.  ~~Is a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .~~
   ii. Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and
   iii. Provides at least four of the following medical specialties:
        a. General medicine;
        b. Radiography;
        c. Orthopedic medicine;
        d. Physical medicine;
        e. Physical therapy;
        f. Physical rehabilitation;
        g. Prescribing or dispensing outpatient prescription medication; or
        h. Laboratory services.

The following new definitions now apply to Part B only:

"**Emergency medical condition**" means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health.

2. Serious impairment to bodily functions.

3. Serious dysfunction of any bodily organ or part.

"**Insured**" means:

1. **You** and **your** spouse while **occupying** a motor vehicle or while a **pedestrian** being struck by a motor vehicle.

2. Any **relative** while **occupying** a motor vehicle or while a **pedestrian** being struck by a **motor vehicle**.

3. Any other person while **occupying** an insured **motor vehicle**.

4. A **pedestrian** struck by an **insured motor vehicle**.

"**Bodily injury**" means bodily harm, including sickness, disease or death resulting therefrom.

## C. LIMITS OF LIABILITY - PART B ONLY

The **LIMITS OF LIABILITY - PART B ONLY** is replaced in its entirety with the following:

The total limit of personal injury protection benefits available under the Florida Motor Vehicle No-Fault Law for any one person who sustains **bodily injury** in any one accident shall be $10,000 for **medical expenses**, **work loss** and **replacement services** and $5,000 for death benefits. This is the most **we** will pay regardless of the number of covered persons, policies or bonds applicable, vehicles involved or claims made.

Subject to the provisions of **Limits of Liability - Part B Only**, **our** total limit of liability available for reimbursement for **medical expenses** is:

1. Reimbursement for services and care provided in paragraphs (b),(c),(d) of the definition of **medical expenses** up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or chapter 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the **insured** had an **emergency medical condition**.

2. Reimbursement for services and care provided in paragraphs (b),(c),(d) of the definition of **medical expenses** is limited to $2,500 if any provider listed in paragraphs (b),(c),(d) of the definition of **medical expenses** has determined that the **insured** did not have an **emergency medical condition**.

The amount of any **deductible** stated on the **Declarations Page** shall be deducted from the total amount of all loss and expense incurred by or on behalf of each person to whom the **deductible** applies and who sustains **bodily injury** as the result of any one **accident**. If the total amount of such loss and expense exceeds such **deductible**, the total limit of benefits **we** are obligated to pay shall then be based on the difference between such **deductible** amount and the total amount of all loss and expense incurred, subject to the $10,000 limit of benefits. Such **deductible** shall not apply to death benefits.

Medical benefits do not include massage or acupuncture regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for medical benefits.

Any amount payable under this coverage shall be reduced by the amount of benefits an injured person has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any

If two or more insurers are liable to pay personal injury protection benefits for the same injury to any one person, the maximum payable shall be $10,000, and any insurer paying benefits shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim. **We** shall not be required to make duplicate payments under this coverage for the benefit of the injured person for whom benefits have already been paid by another insurer or self-insurer under the Florida Motor Vehicle No-Fault Law.

## D. CONDITIONS

Condition 2., Action Against the Company, is deleted in its entirety and replaced by:

2. No action shall lie against us until the injured person provides written notice of intent to initiate litigation. Such notice may not be sent until the claim is overdue and must comply with the requirements set forth in the Florida Motor Vehicle No-Fault Law.

The following is added to 3. Proof of Claim; Medical Reports and Examinations; Payment of Claim Withheld.

If we pay only a portion of a claim or reject a claim due to an alleged error in the claim, we, at the time of the partial payment or rejection, shall provide an itemized specification or explanation of benefits due to the specified error. Upon receiving the specification or explanation, the person making the claim, at the person's option and without waiving any other legal remedy for payment has 15 days to submit a revised claim, which shall be considered a timely submission of written notice of a claim.

If we have a reasonable belief that a fraudulent insurance act, for the purposes of Section 626.989 or Section 817.234, Florida Statutes has been committed, we shall notify the claimant, in writing, within 30 days after submission of the claim that the claim is being investigated for suspected fraud. No later than 90 days after the submission of the claim, we will deny or pay the claim with simple interest. Interest shall be assessed from the ____ was ____ day the ____ is ____ Claims ____ Insurance acts shall be reported to the Division of Insurance Fraud.

We shall create and maintain for each insured a log of personal injury protection benefits paid by us on behalf of the insured. If litigation is commenced, we shall provide to the insured a copy of the log within 30 days after receiving a request for the log from the insured.

An insured making a claim for personal injury protection benefits must submit as often as we reasonably request and at our expense to mental and physical examinations by doctors that we select. We will pay for these examinations. If requested, we will provide a copy of the medical report to the person examined. If the insured fails to appear at an examination, we will not be liable for subsequent personal injury protection benefits. An insured's refusal to submit to or failure to appear at two examinations raises a rebuttable presumption that the insured's refusal or failure was unreasonable.

The following is added to 4. Reimbursement and Subrogation, paragraph b:

Our right of reimbursement does not apply to the owner or registrant of a motor vehicle used as a taxicab.

The following are added to this section, **Conditions:**

**Dispute Between You and Us**
In a dispute between you and us, or between your assignee and us, upon request, we must notify you or your assignee that your personal injury protection policy limits have been reached within 15 days after the limits have been reached.

**Examination Under Oath**
As a condition precedent to receiving personal injury protection benefits under the policy, any insured making a claim for personal injury protection benefits must submit as often as we require to examinations under oath outside the presence of anyone other than that person's attorney and, if a minor, the legal guardian of the minor may also be present. The scope of questioning during the examination is limited to relevant information or information that could reasonably be expected to lead to relevant information.

All other terms, limits, and provisions of the policy remain unchanged.



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## FLORIDA AMENDATORY ENDORSEMENT

| Copy to: | Policy Number | Expiration Date |
|---|---|---|
| **JORGE SARDINAS** REDACTED | REDACTED 8001 | 05/09/2019 12:01 a.m. |
| | Named Insured | |
| | SARDINAS, JORGE | |
| | This endorsement is attached to and forms a part of the policy. The following endorsement applies only if Form Number 10950AE501 appears on your Declarations Page. | |

**Your** policy has been amended as follows:

A.  Definitions Used Throughout the Policy

1.  Definition Number 19. **Relative** is deleted from **your** policy. Please replace with the following definition: "19. "**Relative**" means any person related to **you** by blood, marriage, or adoption, including ward or foster child, who lives in **your** household, whether or not temporarily living elsewhere. **Relative** includes a minor under **your** guardianship who lives in **your** household."

2.  Definition Number 22. **Resident** is deleted from **your** policy. Please replace with the following definition: "22. "**Resident**" means a person living in **your** household other than **you** or a **relative**."

B.  Part A - Liability Coverage

Please delete the "Additional Definitions Used in Part A Only" section. Replace with the following:

As used in this Part, "**insured person**" means:

1.  **You**;

2.  A **relative** or **resident**. For a **relative** or **resident** to be considered an **insured person**, they must be listed on the **application** or endorsed on the policy prior to the loss. **You** have fourteen (14) days to report any new **relative** or **resident**;

3.  A person using the **insured auto** with **your** express or implied permission.

   As used in this Part "**insured person**" means with respect to a **non-owned auto** or a **rental vehicle**, **you**, a **relative** or a **resident** as described above."

C.  Part F - General Provisions

Please delete the "Fraud and Misrepresentation" section. Replace with the following:

"**FRAUD AND MISREPRESENTATION**

**Fraud or Misrepresentation in the Application or Notification of Change**

---

Print Date: 05/07/2018

10950AE501

The statements made by **you** in the **application** are deemed to be representations. If any representation contained in the **application** is false, misleading, or materially affects the acceptance or rating of the risk by **us**, by either direct misrepresentation, omission, concealment of facts, or incorrect statements, **we** may void this policy or deny coverage for fraud or misrepresentation even after the occurrence of an **accident** or loss. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

If any representation contained in any notification of change is false, misleading, or materially affects the acceptance or rating of the risk by **us**, by either direct misrepresentation, omission, concealment of facts, or incorrect statement, this policy will be terminated from the effective date of the change.

**Fraud or Misrepresentation in the Presentation of a Claim**

The statements made by **you** or any other seeking coverage under this policy are deemed to be representations. In connection with any **accident** or loss, **we** do not provide coverage for anyone who has engaged in fraudulent conduct or made statements or representations that contain fraudulent, false, misleading or deceptive statements, direct misrepresentations, omissions or concealment of fact, or incorrect statements. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

**We** may void this policy or deny coverage for fraud or misrepresentation even after the occurrence of an **accident** or loss. This means that **we** will not be liable for any claims or damages that would otherwise be covered."

All other terms, limits, and provisions of the policy remain unchanged.

10950AE501                               Page 2 of 2



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## FLORIDA AMENDATORY ENDORSEMENT

| Copy To | Policy ID Number | Expiration Date |
|---|---|---|
| JORGE SARDINAS | REDACTED3001 | 05/09/2019 12:01 a.m. |
| REDACTED | SARDINAS, JORGE | |
| | This endorsement is attached to and forms a part of the policy. | |

**Delete PART F - GENERAL PROVISIONS - LOSS PAYABLE CLAUSE and replace with the following.**

**LOSS PAYABLE CLAUSE**

At **our** discretion **we** may pay loss or damage due under this policy according to **your** interest and that of the loss payee if one is shown on the **Declarations Page** at time of loss. **We** may make separate payments according to those interests.

**We** will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by **you** or anyone acting on **your** behalf. In addition, **we** will not pay a lienholder, loss payee, lender, or additional insured for any loss where fraud, misrepresentation, omission, concealment or intentional damage has been committed by or at the direction of an insured, **resident** or **relative**.

The loss payee must notify **us** of any known change of ownership or increase in the risk. If it does not, it will not be entitled to any payment under this clause.

If **we** pay the loss payee under the terms of this clause for a loss not covered under the policy, **we** are subrogated to its rights against **you**. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign **us** its interest and transfer to **us** all supporting documents if **we** pay the balance due to the loss payee on the **vehicle**.

Coverage and payments to the loss payee shall be made in accordance with all terms, conditions, limitations and exclusions contained in this policy. In no event shall the loss payee be entitled to coverage and benefits greater than those applicable to **you** or any insured.

The deductible amount applicable to losses payable to the loss payee under Part E - Coverage for Damage to the Insured Auto shall be the deductible amount shown on the **Declarations Page** for this coverage.

**All other terms, conditions, and provisions of the policy remain unchanged.**

Print Date: 05/07/2018

10950AE101



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## TRANSPORTATION NETWORK COMPANY DRIVER
## COVERAGE AMENDATORY ENDORSEMENT

| | | |
|---|---|---|
| REDACTED 3001 | 05/09/2019 12:01 a.m. | |
| SARDINAS, JORGE | | |

**JORGE SARDINAS**
REDACTED

The following endorsement applies only if Form Number 109TNDE01 appears on your Declarations Page.

---

### This endorsement amends the policy as follows. Please read it carefully.

#### A. DEFINITIONS USED THROUGHOUT THIS POLICY

The following definitions are added to Definitions Used Throughout This Policy:

1. "**Digital network**" means any online-enabled technology application service, website, or system offered or used by a **transportation network company** which enables the prearrangement of rides with **transportation network company drivers.**

2. "**Prearranged ride**" means the provision of transportation by a **TNC driver** to a **rider**, beginning when a **TNC driver** accepts a ride requested by a **rider** through a **digital network** controlled by a **transportation network company**. It continues while the **TNC driver** transports the **rider**, and ends when the last **rider** exits from and is no longer occupying the **TNC vehicle**. The term does not include a taxicab, for-hire vehicle, **street hail** service, or any other type of service in which the driver receives a fee that does not exceed the driver's cost to provide the ride such as shared-expense ridesharing or car pools.

3. "**Rider**" means an individual who uses a **digital network** to connect with a **TNC driver** in order to obtain a **prearranged ride** in the **TNC driver's TNC vehicle** between points chosen by the **rider**. A person may use a **digital network** to request a **prearranged ride** on behalf of a **rider**.

4. "**Street hail**" means an immediate arrangement on a street with a driver by a person using any method other than a **digital network** to seek immediate transportation.

5. "**Transportation network company or TNC**" means an entity using a **digital network** to connect a **rider** to a **TNC driver**, who provides **prearranged rides**. A **TNC** is not deemed to own, control, operate, direct, or manage the **TNC vehicles** or **TNC drivers** that connect to its **digital network**, except where agreed to by written contract, and is not a taxicab association or for-hire vehicle owner. An individual, corporation, partnership, sole proprietorship, or other entity that arranges medical transportation for individuals qualifying for Medicaid or Medicare pursuant to a contract with the state or a managed care organization is not a **TNC**.

6. "**Transportation network company driver or TNC driver**" means an individual who:

   a. Receives connections to potential **riders** and related services from a **transportation network company**; and

Print Date: 05/07/2018

    b.  In return for compensation, uses a **TNC vehicle** to offer or provide a **prearranged ride** to a **rider** upon connection through a **digital network**.

7.  "**Transportation network company vehicle** or **TNC vehicle**" means a vehicle that is not a taxicab, jitney, limousine, or for-hire vehicle and that is:

    a.  Used by the **TNC driver** to offer or provide a **prearranged ride**; and
    b.  **Owned**, leased, or otherwise authorized to be used by the **TNC driver**.

## B.  EXCLUSIONS - PART A ONLY

The following exclusion is added to Part A - Liability Coverage:

No coverage of any kind applies under this policy for any **accident**, loss, **bodily injury**, **property damage**, or other damage that occurs while any **insured person** is logged on to a **transportation network company's digital network** or while any **insured person** is engaged in a **prearranged ride**.

However, if the **Declarations Page** shows a premium charged for Transportation Network Company Driver Coverage for **the insured auto**:

1.  This exclusion does not apply with respect to **the insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**; and

2.  Coverage under this endorsement will extend with respect to **the insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**.

3.  Part A - Liability Coverage under this endorsement will be excess to any other collectible insurance coverage including but not limited to any liability coverage provided by any **transportation network company** and in no event exceed the combined single limit of liability of $10,000. This is the maximum **we** will pay for all damages because of **bodily injury** or **property damage** sustained as the result of any one (1) **accident**, including but not limited to damages for care and loss of services, loss of companionship, loss of society, loss of consortium, and wrongful death to any one (1) or more persons resulting from any one (1) **accident**.

## C.  EXCLUSIONS - PART B ONLY

The following exclusion is added to Part B - Personal Injury Protection:

No coverage of any kind applies under this policy for any **accident**, loss, **bodily injury**, **property damage**, or other damage that occurs while any **insured** is logged on to a **transportation network company's digital network** or while any **insured** is engaged in a **prearranged ride**.

## D.  EXCLUSIONS - PART C ONLY

The following exclusion is added to Part C - Medical Payments Coverage:

No coverage of any kind applies under this policy for any **accident**, loss, **bodily injury**, **property damage**, or other damage that occurs while any **insured person** is logged on to a **transportation network company's digital network** or while any **insured person** is engaged in a **prearranged ride**.

## E.  EXCLUSIONS - PART D ONLY

The following exclusion is added to Part D - Uninsured/Underinsured Motorists Coverage:

No coverage of any kind applies under this policy for any **accident**, loss, **bodily injury**, **property damage**, or other damage that occurs while any **insured person** is logged on to a **transportation network company's digital network** or while any **insured person** is engaged in a **prearranged ride**.

However, if the **Declarations Page** shows a premium charged for Transportation Network Company Driver Coverage for **the insured auto**:

1.  This exclusion does not apply with respect to the **insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**; and

2.  Coverage under this endorsement will extend with respect to the **insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**.

## F. EXCLUSIONS - PART E ONLY

The following exclusion is added to Part E - Coverage for Damage to the Insured Auto:

**We do not cover loss:**

That results from the ownership, maintenance, or use of any vehicle by a **transportation network company driver** who is logged on to a **transportation network company's digital network** as a driver or who is engaged in a **prearranged ride**.

However, if the **Declarations Page** shows a premium charged for Transportation Network Company Driver Coverage for the **insured auto**:

1.  This exclusion does not apply with respect to the **insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**; and

2.  Coverage under this endorsement will extend with respect to the **insured auto** during the time when an **insured person** is logged on to the **transportation network company's digital network**, but has not yet accepted a **prearranged ride**.

3.  Coverage under Part E - Coverage for Damage to the Insured Auto of this endorsement will be excess over any other collectible insurance coverage.

## G. PART F - GENERAL PROVISIONS

The following is added to Part F – General Provisions:

**DUTY TO REPORT**

**You** must promptly notify **us** if any insured person is a **transportation network company driver**. In addition, **you** must notify **us** if an **accident** or loss occurs while any insured person is operating a **vehicle** while engaged in a **prearranged ride** or while logged on to a **transportation network company's digital network** as a driver. Any person or entity seeking coverage or payment of benefits must cooperate with **us** to ensure **we** are provided with pertinent data regarding the loss, including the precise dates and times:

1.  The insured person logged on and off the **transportation network company's digital network**; and

2.  When a passenger or delivery assignment was accepted through such **digital network**.

**You** must cooperate with **us** by executing an authorization to obtain the pertinent data and records regarding the loss if such authorization is necessary for release of the data or record.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## AUTOMATIC WITHDRAWAL SCHEDULE

| Copy To: | Policy ID Number | Expiration Date |
|---|---|---|
| SARDINAS, JORGE REDACTED | REDACTED3001 | 05/09/2019 12:01 a.m. |
| | Named Insured | |
| | SARDINAS, JORGE | |

Listed below is your new automatic withdrawal schedule. **If any automatic withdrawal from your designated account will be greater than $1.00 from the prior withdrawal, we will notify you at least 10 calendar days in advance of the new amount.** Funds need to be available in your account one (1) business day before the withdrawal date.

If you wish to cancel an automatic withdrawal, we must receive notification at least five (5) business days prior to the withdrawal date. If you change accounts, contact your agent. In order to process an account change, Infinity must receive notification at least five (5) business days prior to the monthly withdrawal date.

**If you cancel a withdrawal, you are still responsible for sending us the amount due by the indicated withdrawal date. If funds are not available in your account on the withdrawal date, your policy will be set up for cancellation until you arrange for payment of replacement funds.**

### ERROR RESOLUTION NOTICE

In case of errors or questions about your automatic withdrawal, telephone Customer Service at the toll free number at the top of this page, or write us at the address listed at the top of this page. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.

1. Tell us your name and policy number.
2. Describe the error or transfer you are unsure about.
3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

| Installment | Premium | Credits | Fees | Withdrawal Amount | Withdrawal Date* | Autopay Number** |
|---|---|---|---|---|---|---|
| 1 | $420.09 | $0.00 | $10.00 | $430.09 | 06/09/2018 | XXXXX2791 |
| 2 | $420.09 | $0.00 | $10.00 | $430.09 | 07/09/2018 | XXXXX2791 |
| 3 | $420.09 | $0.00 | $10.00 | $430.09 | 08/09/2018 | XXXXX2791 |
| 4 | $420.09 | $0.00 | $10.00 | $430.09 | 09/09/2018 | XXXXX2791 |
| 5 | $420.09 | $0.00 | $10.00 | $430.09 | 10/09/2018 | XXXXX2791 |
| 6 | $420.09 | $0.00 | $10.00 | $430.09 | 11/09/2018 | XXXXX2791 |
| 7 | $420.09 | $0.00 | $10.00 | $430.09 | 12/09/2018 | XXXXX2791 |
| 8 | $420.09 | $0.00 | $10.00 | $430.09 | 01/09/2019 | XXXXX2791 |
| 9 | $420.09 | $0.00 | $10.00 | $430.09 | 02/09/2019 | XXXXX2791 |
| 10 | $420.09 | $0.00 | $10.00 | $430.09 | 03/09/2019 | XXXXX2791 |
| 11 | $420.09 | $0.00 | $10.00 | $430.09 | 04/09/2019 | XXXXX2791 |

* If a withdrawal date falls on a weekend or bank holiday, funds will be withdrawn on the next business day.
** To ensure your privacy, we have concealed all but the last four digits of your autopay number.

Print Date: 05/07/2018

000APWS01


**Auto Insurance**

**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                                   Claims Service: (800)334-1661

## Notice of Underwriting Decision and Information Practices
### Notice of Adverse Action

In connection with your insurance transaction with us and based on the consent statement you signed on your application, we have collected consumer reports, such as driving history, claim reports, and credit reports or personal or privileged information from the following consumer reporting agencies:

**Driving History Report and Credit Report:**
**LexisNexis National Consumer Disclosure Center**
**PO Box 105108**
**Atlanta, GA 30348-5108**
**800-456-6004**

The information contained in these reports was used to underwrite your insurance policy application or renewal policy. You did not qualify for our lowest rates due to information contained in these reports. Any rate increase or other adverse underwriting decision was, in part, attributable to this information. See below for the credit explanations provided to us by the consumer reporting agency regarding your credit history.

Please be advised that no consumer reporting agency made any decision to take any adverse action with respect to your insurance policy and will not be able to provide the specific reasons why any such action was taken.

You have the right to obtain a copy of your report from the reporting agency. You may obtain a free copy within sixty (60) days after receiving this notice. You also have the right to dispute the accuracy or completeness of the information contained in these reports with the agency. To exercise these rights, simply call the appropriate consumer reporting agency identified above. If the information in your report is            you            our                                   for a                    rate the report has been corrected by the consumer reporting agency.

In certain circumstances, the information contained in consumer reports, and other personal or privileged information subsequently collected by us, may be legally disclosed to third parties without your consent, but it is not our practice to do so.

You will need to provide the following reference number to the consumer reporting agency shown above in order to expedite the process.

**Reference#** 13099211810930

**Reasons:**

Print Date: 05/07/2018

000AANT01



**INFINITY INSURANCE COMPANIES**
**PRIVACY NOTICE**
**AND**
**NOTICE OF INFORMATION PRACTICES**

Infinity Assurance Insurance Company
Infinity Auto Insurance Company
Infinity Casualty Insurance Company
Infinity County Mutual Insurance Company
Infinity Indemnity Insurance Company
Infinity Insurance Company

Infinity Preferred Insurance Company
Infinity Select Insurance Company
Infinity Reserve Insurance Company
Infinity Safeguard Insurance Company
Infinity Standard Insurance Company
Hillstar Insurance Company

The members of Infinity Insurance Companies listed on this Notice ("Infinity") respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you. We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy. Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Infinity primarily for personal, family or household purposes, and certain group insurance plans. We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Infinity, but does not in any way imply or affect insurance coverage.

Because Infinity does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice. If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

**1. WHAT KIND OF INFORMATION IS COLLECTED ABOUT YOU?**

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us. While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us. In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application. There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies. We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice. Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Infinity may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you. When you visit our web site, our web server sends a cookie to your computer. A cookie is an electronically transmitted file that holds small pieces of information. When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer. This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

CMNPIN05

Session cookies exist only during an online session with Infinity. Session cookies allow you to conduct transactions or requests on our web site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

## 2. WHAT DO WE DO WITH INFORMATION ABOUT YOU?

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

- your insurance representative,
- persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,
- adjusters, appraisers, auditors, investigators and attorneys,
- persons or organizations who need the information to perform a business, professional or insurance function for us,
- other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,
- medical professionals to inform you of a medical condition of which you may not be aware,
- persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,
- persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,
- our affiliated companies,
- to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

Except as permitted or required by law, unless we obtain your written consent, we will not use or share any personally identifiable health information about you for any purpose other than underwriting or administration of your insurance policy, claim or account, or in a manner as previously disclosed to you by us when we collected such information.

When your nonpublic personal financial or health information is disclosed by us to third parties for certain purposes described above, we will require them to use your information only for its intended purpose.

## 3. WHO HAS ACCESS TO YOUR INFORMATION?

Infinity currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

## 4. HOW CAN YOU REVIEW RECORDED INFORMATION ABOUT YOU?

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents. You have the further right to request that we correct any of this information. To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification. If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error. Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

## 5. HOW CAN YOU CONTACT US?

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

**INFINITY INSURANCE COMPANIES**
**PRIVACY OFFICER - LEGAL COMPLIANCE DEPT.**
**P.O. Box 830807**
**Birmingham, AL 35283-0807**

CMNPIN05



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## NOTIFICATION OF AVAILABILITY OF UNINSURED MOTORIST COVERAGE

| Policy No. | Policy ID Number | Expiration Date |
|---|---|---|
| **JORGE SARDINAS** REDACTED | REDACTED 8001 | 05/09/2019 12:01 a.m. |
| | Named Insured | |
| | SARDINAS, JORGE | |

We are required by Florida law to notify you of all options available to you regarding Uninsured Motorist Coverage.

They are:

1.  You have the right to purchase Uninsured Motorist Coverage in an amount equal to your limits for Bodily Injury Liability Coverage.

2.  You may reject Uninsured Motorist Coverage or elect limits as low as $10,000 each person, $20,000 each accident.

3.  You may select either of two coverage forms, known as "stacked" and "non-stacked." The lower cost non-stacked form modifies the manner in which your policy limits apply to your own vehicles and in those owned by others.

If you wish to revise the coverages you presently have, please contact your agent to discuss all alternatives.

Print Date: 05/07/2018

10950RNU01                    Page 1 of 1



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020                    Claims Service: (800)334-1661

## FLORIDA PERSONAL INJURY PROTECTION (NO-FAULT) COVERAGE SUMMARY

| Company | Policy Number | Expiration Date |
|---|---|---|
| JORGE SARDINAS<br>REDACTED | REDACTED 8001 | 05/09/2019 12:01 a.m. |
| | Named Insured | |
| | SARDINAS, JORGE | |

This is a summary of Personal Injury Protection coverage (PIP) options. No coverage is provided by this summary, nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

The following explanatory material refers to "you" as defined in the policy.

**Personal Injury Protection Coverage**

PIP pays 80% of reasonable and necessary medical expenses and 60% of any loss of gross income and loss of earning capacity incurred as a result of an auto accident. PIP also pays for replacement services expenses incurred as a result of an auto accident and pays a death benefit. PIP applies to you and your dependent resident relatives. It also applies to any other person occupying your auto or struck, as a pedestrian, by your auto. The maximum amount that you may recover under PIP coverage is $10,000 and up to $5,000 for funeral expenses.

For personal injury protection insurance, the named insured may elect a deductible and to exclude coverage for loss of gross income and loss of earning capacity ("lost wages"). These elections apply to the named insured alone, or to the named insured and all dependent resident relatives. A premium reduction will result from these elections. The named insured is hereby advised not to elect the lost wages exclusion if the named insured or dependent resident relatives are employed, since lost wages will not be payable in the event of an accident.

**Deductibles**

To reduce the cost of PIP coverage, you may choose to have a deductible apply. The deductible amount is the amount that you will pay before you are entitled to any recovery from us under PIP coverage.

You may choose a $250, $500, or $1,000 deductible to apply to PIP benefits. The higher your deductible, the greater your premium savings will be.

You can have the deductible apply to:

1. Only you and your spouse; or

2. You, your spouse and dependent relatives residing in your household.

The deductible applies separately to each person. The deductible does not apply to the death benefit.

Print Date: 05/07/2018

## Rejection of Work Loss Benefits

You may choose to have work loss coverage excluded from your PIP coverage. You may want to reject work loss if, for example, you are unemployed or retired. In this situation you would not incur any lost wages as a result of an auto accident and, therefore, would not benefit from this coverage.

You may reject work loss benefits for:

1. Only you and your spouse; or

2. You, your spouse and dependent relatives residing in your household.

If you wish to revise the coverages you presently have, please contact your agent to discuss all alternatives.



**Infinity Value Added**
2201 4th Avenue North
Birmingham, AL 35203

Underwritten by: Infinity Auto Insurance Company

Customer Service: (800) 782-1020

Claims Service: (800)334-1661

## POLICY ENDORSEMENT NOTICE

| Copy To: | | Policy Number | Expiration Date |
|---|---|---|---|
| **JORGE SARDINAS** REDACTED REDACTED | | REDACTED 5001 | 05/09/2019 12:01 a.m. |
| | | Named Insured | |
| | | SARDINAS, JORGE | |
| | | These endorsements apply if their form number, as indicated, appears on your policy Declarations Page. | |

---

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950PDE03 APPEARS ON THE POLICY DECLARATION.**

### NAMED DRIVER EXCLUSION AGREEMENT (Optional)

In consideration of **your** premium payment it is agreed that,  with respect to insurance afforded under this policy, or any continuation, renewal or replacement of the policy by **you**, or the reinstatement of this policy or any lapse thereof, **we** shall not be liable for loss, damage, and/or liability caused while **the insured auto** or any other automobile to which the terms of this policy are extended is being driven or operated by the person named by **you** as an excluded driver on **your** original application for coverage under this policy, or as named by **you** as an excluded driver on a subsequent policy endorsement.

1. **We** will not provide coverage for any claim under Part A - Liability Coverage for bodily injury, Part C - Medical Payments Coverage or Part E - Coverage for ~~~~~~~~~~. The Insured Auto resulting from the use of ~~~~ vehicle by a person or persons specifically  excluded  by  endorsement.

2. **We** will not provide coverage for any claim under Part A - Liability Coverage for property damage exceeding the state required minimum and resulting from the use of any vehicle by any person or persons specifically excluded by endorsement.

3. Coverage under Part B - Personal Injury Protection Coverage is not changed by this endorsement. The named driver exclusion agreement does not apply to Personal Injury Protection Coverage.

4. If **you** have purchased Coverage under Part D - Uninsured/Underinsured Motorist Coverage of your policy and not otherwise rejected this coverage, this endorsement does not apply to **you**, a **relative**, or any other person occupying **the insured auto**. **We** will not provide coverage for any person, other than **you**, a **relative**, or any other person occupying **the insured auto**, under Part D - Uninsured/Underinsured Motorist Coverage arising from an **accident** or loss involving a vehicle being operated by an excluded driver.

It is further agreed that in the event **we** shall, because of any interest, become obligated to pay any sum or sums of money because of loss for which there would be no coverage because of this agreement, **you** will reimburse **us** for any and all sums, costs, and expenses  paid or incurred by **us**.

If this policy is used as evidence of financial responsibility, Bodily Injury liability will be provided.

---

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950LLE01 APPEARS ON THE POLICY DECLARATION.**

### LESSOR LIABILITY ENDORSEMENT (Optional)

In exchange for **your** increased premium, this endorsement has been added to **your** insurance policy.

The provisions in this endorsement are effective only while **the insured auto** is leased by you, for a period of at least six (6) months, as documented by a standard form lease agreement with expressly stated insurance coverage requirements.

During the term of this policy, the limits of coverage for damages **you** became legally obligated to pay, as defined by **your** policy, shall be those limits listed on **your Declarations Page**.

---

Print Date: 05/07/2018

The endorsement provides the following additional Liability Coverage for **your** lessor:

**Bodily Injury:**        $100,000 per person
                                   $300,000 per accident
**Property Damage:**   $50,000 per accident

This additional coverage will apply to damages **your** lessor becomes legally obligated to pay that arise from and are legally related to a loss covered under **your** policy.

The coverage provided by this endorsement is in addition to that listed on **your Declarations Page** and is available only to indemnify **your** lessor pursuant to the terms listed herein.

The provision of the coverages in this endorsement shall in no event increase **our** limits of liability for any damages **you** become legally obligated to pay, pursuant to the terms of **your** policy.

If **we** terminate this policy, notice will also be mailed to the lessor.

The lessor is not responsible for payment of premiums.

THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950NOE01 APPEARS ON THE POLICY DECLARATION.

**NAMED DRIVER NON-OWNER COVERAGE (Optional)**

**INSURING AGREEMENT**

If **you** purchase a Named Driver Non-owner policy, it is agreed that the policy is amended as follows.

---

**AMENDMENT 1**

The Liability Coverage Insuring Agreement used in Part A - Liability Coverage is deleted in its entirety and replaced by the following:

**We** will pay damages except for punitive or exemplary damages, for which an **insured person** is legally liable because of **bodily injury** or **property damage** resulting from the use of **your insured auto**. The **bodily injury** or **property damage** must not be expected nor intended from the standpoint of the **insured person**.

**We** will defend any suit or settle any claim for damages, as **we** think appropriate. **We** will not defend or settle after **our** limit of liability ~~- - - - - - - -~~. **We** have no duty to defend any suit or settle any claim for **bodily** ~~- - - - - - ~~ or **property damage** not covered under this policy.

---

**AMENDMENT 2**

The following definitions replace those found in the section titled Definitions Used Throughout this Policy:

**"You"** and **"your"** mean only the individual person named as the insured on the **Declarations Page.**

**"Your insured auto"** means any **non-owned auto** or **trailer** provided that **you** have the express permission of the **owner** to use the **auto** or **trailer**. No coverage shall apply for **you** while operating an **auto** owned by **you**, a **resident,** or a **relative** of the household in which **you** reside.

---

**AMENDMENT 3**

As used throughout this policy, **"insured person"** means **you**. No person shall be considered an **insured person** if that person uses an **auto** without having the express permission of the **owner**.

---

**AMENDMENT 4**

The Other Insurance provision in Part A - Liability  Coverage is deleted in its entirety and replaced by the following:

**OTHER INSURANCE**

The insurance provided by this Part is excess over any other collectible auto liability insurance.

---

**AMENDMENT 5**

No coverage applies under Part E - Coverage for Damage to the Insured Auto of this policy.

---

**AMENDMENT 6**

Exclusion number 16 in Part A - Liability Coverage is deleted in its entirety.

---

**AMENDMENT 7**

The terms and conditions of this endorsement and state statutes also apply to Part D - Uninsured Motorists Coverage of this policy.

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950RDR01 APPEARS ON YOUR DECLARATIONS PAGE.**

### R.S.V.P. DIRECT REPAIR ENDORSEMENT (Optional)

In consideration of the reduced premium charged for Part E of this policy, it is agreed that any covered repairs will be completed at an RSVP repair facility.

If it is determined that the damaged property is to be repaired and **you** choose to utilize a repair facility which is not an RSVP Shop, **we** will remove the discount from your policy effective as of the date of inception. If there is not a designated RSVP repair facility within a thirty (30) mile radius from the address listed on **your Declarations Page you** may choose any repair facility without penalty.

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950AIE01 APPEARS ON THE POLICY DECLARATION.**

### ADDITIONAL INTEREST ENDORSEMENT

It is agreed that such insurance as is afforded by the policy for bodily injury and property damage liability shall also apply with respect to each interest hereinafter stated as an insured; but such inclusion of additional interest or interests shall not. It is further agreed that such insurance as is afforded by this endorsement shall be excess insurance over any other valid and collectible insurance.

All other term, limits and provisions of this policy remain unchanged.

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10950UME03 APPEARS ON YOUR DECLARATIONS PAGE.**

### FLORIDA NON-STACKED UNINSURED / UNDERINSURED MOTORIST COVERAGE (Optional)

Under PART D - UNINSURED / UNDERINSURED MOTORIST COVERAGE of YOUR FLORIDA VALUE ADDED PERSONAL AUTO POLICY the section entitled LIMITS OF LIABILITY - PART D ONLY is replaced with the following:

### LIMITS OF LIABILITY - PART D ONLY

The limits of liability shown on the **Declarations Page** apply subject to the following:

1. Regardless of the number of **vehicles** insured, only one of the limits of liability for this coverage shown on the **Declarations Page** shall be the total limit of **our** liability to each person.

2. The limit of liability for this coverage shown on the **Declarations Page** for each person is the maximum **we** will pay as damages for **bodily injury**, including damages for derivative claims, to any one person in any one **accident**.

3. Subject to the limit for each person, the limit of liability for this coverage shown on the **Declarations Page** for each **accident** is the maximum **we** will pay as damages for **bodily injury**, including damages for derivative claims, to two or more persons in any one **accident**.

If **we** have issued more than one policy to **you**, the total limit of **our** liability under all policies issued to **you** shall not exceed the highest limit of liability under any one policy, selected by **you**, to apply to any one **accident** or claim. If **we** cover more than one **auto** under a policy issued to **you**, the total limit of **our** liability under all coverages shall not exceed the highest limit of liability under this policy to apply to any one **accident** or claim. The foregoing shall apply notwithstanding any provision in this policy to the contrary and shall be subject to the terms of this endorsement.

At the time of the **accident**, an **insured person** may be **occupying the insured auto**. If such is the case, the uninsured motorist coverage available is the coverage in this policy which applies to that motor vehicle.

At the time of the **accident**, an **insured person** may be **occupying** a **non-owned auto**. If such is the case, the **insured person** is entitled to select the highest limits of uninsured motorist coverage available for any one **vehicle** under a policy as to which the **insured person** is a named insured or an insured **relative**. Such coverage shall be excess over the coverage on the **vehicle** the **insured person** is **occupying**.

At the time of the **accident**, an **insured person** may not be **occupying** a **vehicle** and may be struck as a pedestrian. If such is the case, the **insured person** is entitled to select the highest limits of uninsured motorist coverage available for any one **vehicle** under a policy as to which the **insured person** is a named insured, an insured **relative**, or an insured **resident** of the named insured's household.

The uninsured motorist coverage provided by this policy does not apply to **you** or a **relative** who is injured while **occupying** any **vehicle** owned by **you** or a **relative** for which uninsured motorist coverage was not purchased.

Uninsured motorist coverage under this policy will not apply if **you** select the coverage available under any other policy covering **you** or a **relative**.

We will pay no more than these maximum amounts regardless of the number of:

1. **Vehicles** or premiums shown on the **Declarations Page;**

2. Insureds;

3. Claims;

4. Claimants;

5. Policies; or

6. **Vehicles** involved in the **accident.**

Any amounts otherwise payable for damages under this coverage shall be excess over benefits available to an **insured person**:

1. Under any workers' compensation law;

2. Under any personal injury protection benefits coverage;

3. Under any disability benefits law or similar law;

4. Under any **auto** medical payments coverage;

5. Under any motor vehicle liability insurance coverages;

6. From the **owner** or operator of the **uninsured motor vehicle;** or

7. From any person or organization jointly or severally liable for the **accident** together with such **owner** or operator of the **uninsured motor vehicle.**

---

THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10900ADB01 APPEARS ON YOUR DECLARATIONS PAGE.

## ACCIDENTAL DEATH BENEFIT ENDORSEMENT (Optional)

### INSURING AGREEMENT

In return for your premium payment, we agree with you as follows:

We will pay the limit of liability shown on the **Declarations Page** in the event of the death of an **insured person.** Such death must result from **bodily injury** caused by an **accident** involving a **vehicle.** The death must occur within one year from the date of the **accident.**

---

### ADDITIONAL DEFINITIONS

As used in this endorsement (all other definitions in the policy remain as written):

"**Insured person**" means **you, a relative** or **resident.**

"**Vehicle**" means a motor **vehicle** having more than three load-bearing wheels. It must be of a kind requiring registration under the laws of the state and relating to motor vehicles designed primarily for operation upon the public streets, roads and highways, and driven by power other than muscular power. "**Vehicle**" includes a **trailer** drawn by or attached to such a motor **vehicle.**

---

### EXCLUSIONS

**We** do not provide Accidental Death Benefits for any person who sustains an:

1. Accidental death while occupying a motorcycle, moped, motorized bicycle or similar two-wheeled **vehicle,** or all-terrain motorized **vehicle** having two, three, or four wheels.

2. Accidental death while occupying the **insured auto** when it is being used to carry persons or property for a fee, including rental of the **insured auto** to others. This exclusion does not apply to a shared expense car pool.

3. Accidental death while occupying any **vehicle** used as a residence or premises.

4. Accidental death while operating any **vehicle** other than the **insured auto,** which is owned by or furnished or available for regular use of any insured person.

5. Accidental death while occupying a **vehicle** without the express or implied permission of the **owner.**

6. Accidental death while occupying a **vehicle** when it is being used in the business of an **insured person.**

7. Accidental death while occupying a **vehicle** when it is being used in any **auto business.**

8. Accidental death caused by the discharge of a nuclear weapon (even if accidental), war (declared or undeclared), civil war, insurrection, rebellion or revolution or any consequence of any of these.

9. Accidental death from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

10. Accidental death while the motor **vehicle** is used for **racing.**

11. Accidental death where the accident occurs and arises out of the use of a motor **vehicle** while the **insured person** is in the commission of a **crime.**

## LIMIT OF LIABILITY

Regardless of the number of **insured persons,** policies or bonds applicable, claims made or **the insured autos** to which this coverage applies, the limit of our liability under Accidental Death Benefit Coverage is the limit of liability shown on the **Declarations Page** per **insured person.**

## GENERAL PROVISIONS

Part F of the policy applies to this coverage.

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 10900NCE02 APPEARS ON YOUR DECLARATIONS PAGE.**

## FLORIDA NON-CANCELABLE POLICY ENDORSEMENT

This policy meets the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security.

The following special provisions apply to this policy and supersede any contrary provisions in the policy.

The following non-cancelable provisions are effective when our underwriting is completed or sixty (60) days from the effective date of the policy, whichever comes first:

1. The policy may not be cancelled for any reason.

2. No refund of premium will be allowed.

3. This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk **vehicle,** adding **vehicles,** adding new drivers or moving to a different rating territory.

4. If there is a material change in the policy, **you** must obtain a new non-cancelable policy.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

**THE FOLLOWING ENDORSEMENT APPLIES ONLY IF FORM NUMBER 109RSE02 APPEARS ON YOUR DECLARATIONS PAGE.**

## 24-HOUR ROADSIDE ASSISTANCE ENDORSEMENT

**This endorsement amends the policy as follows. Please read it carefully.**

## INSURING AGREEMENT

**We** will provide Roadside Assistance through **our** authorized service representative up to the limit shown on your **Declarations Page** for Roadside Assistance occurences each time **your covered auto** is **disabled.** The following conditions apply:

1. The driver of the **covered auto** must be an **insured person** as defined in Part A - Liability Coverage of **your** policy.

2. Labor must be performed at the location where the **covered auto** is disabled.

3. The **covered auto** will be towed to the nearest qualified repair facility.

4. There is no coverage provided by this endorsement for towing costs or labor if **your covered auto** becomes **disabled** at its principal garaging location.

5. **We** will not provide coverage for more than five (5) disablements during a 12-month consecutive period.

6. **We** will not provide coverage if **your covered auto** at the time of disablement is being operated by a driver excluded from coverage under **your** policy with us.

7. All disablements must be reported to **our** authorized service representative prior to obtaining towing and labor for **your covered auto.**

**ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT ONLY**

As used in this endorsement:

1. **Covered auto** means an **auto** currently insured by **us**.

2. **Disabled** means that the **covered auto** cannot move due to a **covered emergency**.

3. **Covered emergency** means:

   a. Mechanical or electrical breakdown;
   b. Battery failure;
   c. Insufficient supply of fuel, oil, water or other fluid;
   d. Flat tire;
   e. Lock-out; or
   f. Entrapment in snow, mud, water or sand.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, ROADSIDE ASSISTANCE COVERAGE WILL NOT BE PROVIDED.**

This coverage does not apply to:

1. Any parts or replacement keys;

2. Fluid, lubricants or fuel in excess of the amount required to get **your** vehicle back on the road;

3. Installation of any products or materials not related to the disablement;

4. Labor or materials not related to the disablement of a **covered auto** including, but not limited to, work performed at a service station, garage or repair shop;

5. Labor on a **covered auto** for any time period in excess of sixty (60) minutes per disablement;

6. Repairing a flat tire or replacing a flat tire with any tire other than a tire **you** provide. However, if **you** are unable to provide a tire then the **covered auto** will be towed to the nearest qualified repair facility.

7. Any and all fines, vehicle storage charges, transportation or temporary living expenses;

8. Towing or storage related to impoundment, abandonment, illegal parking, or other violations of law or disablement

9. Damage or disablement due to fire, flood or vandalism;

10. Towing from a service station, garage or repair shop;

11. A second or any subsequent tow for a single disablement;

12. Mounting or removing of snow tires or chains;

13. Disablement that results from the willful acts or actions of the operator of a **covered auto**, when such acts are intended to cause the **covered auto** to become **disabled**;

14. Disablement that is not the result of a **covered emergency**;

15. Disablement service necessary as a result of a disabled trailer that is being towed by a **covered auto**;

16. Disablements that occur on roads not regularly maintained, such as sand beaches, open fields, and areas designated as not passable due to construction.

17. Any policy receiving a discount for a motor club membership.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**

**We** reserve the right to alter this program with written notice upon the renewal of **your** policy.

The coverage provided by this endorsement applies only in the United States and Canada.

Exhibit B

INFINITY AUTO INSURANCE COMPANY

P.O. BOX 830807                          Tel: 800-334-1661
BIRMINGHAM, AL 35283-0807               Fax: 800-214-5727
Email: mail.claims@ipacc.com

DATE: 11/20/18
POLICY: REDACTED 8001
CLAIM NUMBER: 20003317491
DATE OF LOSS: 09/14/18
INSURED NAME:
JORGE SARDINAS                                            SARDINAS                    JORGE
REDACTED                              CLAIMANT NAME:
REDACTED                                                  SARDINAS                    JORGE

Your vehicle damaged in the above loss has been determined to be a total loss.

In order to determine how your coverage on this vehicle will be handled, you MUST contact your local agent. You will have to either replace the vehicle or eliminate the Physical Damage Coverage for this vehicle from your policy.

If you have any questions regarding this or any portion of your claim, please contact me at 205-588-3132

Sincerely,

TOURIONO PARKMAN

Claims Representative

Florida law requires the following warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

TLNAS R0001    20003317491      000  COLL  E2W    20181120 CLAI0001

INFINITY AUTO INSURANCE COMPANY

P.O. BOX 830807                          Tel: 800-334-1661
BIRMINGHAM, AL 35283-0807               Fax: 800-214-5727
Email: mail.claims@ipacc.com

                                    DATE: 11/20/18
                        POLICY: REDACTED 8001
                        CLAIM NUMBER: 20003317491
                        DATE OF LOSS: 09/14/18
JORGE SARDINAS          INSURED NAME:
REDACTED                SARDINAS                JORGE
                        CLAIMANT NAME:
REDACTED                SARDINAS                JORGE

As a result of the above captioned accident, your vehicle was
declared a total loss.  That portion of your claim has been
settled.

Florida statutes provide that you are entitled to the Sales Tax
upon proof that the vehicle was replaced.  Sales Tax will be
computed on the value of the replacement vehicle, not to exceed
the amount of 952.90      .

If you have replaced the vehicle which was a total loss, send us
proof of replacement (Bill of Sale or Registration Application)
and we will forward our draft for the amount due.

If you have any questions, please do not hesitate to call me at
205-588-3132                  .

Very truly yours,

TOURIONO PARKMAN

Claims Adjuster

Enclosure:  Return Envelope

Florida law requires the following warning: Any person who knowingly
and with intent to injure, defraud or deceive any insurer files a
statement of claim or an application containing any false, incomplete
or misleading information is guilty of a felony of the third degree.

D9117 N0001    20003317491    000  COLL  E2W    20181120 CLAI0001



INFINITY AUTO INSURANCE COMPANY

P.O. BOX 830807
BIRMINGHAM, AL 35283-0807
Email: mail.claims@ipacc.com

Tel: 800-334-1661
Fax: 800-214-5727

DATE: 11/20/18
POLICY: REDACTED 8001
CLAIM NUMBER: 20003317491
DATE OF LOSS: 09/14/18
INSURED NAME:

JORGE SARDINAS
REDACTED

REDACTED

SARDINAS                    JORGE
CLAIMANT NAME:
SARDINAS                    JORGE

Your vehicle has been determined to be a total loss as it was damaged beyond the economic cost to repair it.  Our offer of settlement for the Actual Cash Value of your claim is as follows:

| | |
|---|---|
| Value | $ 15048.28 |
| Sales Tax (if applicable) | $ |
| DMV Fees (if applicable) | $ |
| Less Salvage Value (if applicable) | $ |
| Less Salvage Tax (if applicable) | $ |
| Salvage Fees (if applicable) | $ |
| Less Deductible (if applicable) | $ 1000.00 |
| Miscellaneous | $ |
| Net Payment: | $ 14048.28 |

A copy of our evaluation and the estimate will be sent under separate cover.  If you have any questions regarding this or wish to discuss any concerns, please contact me at 205-588-3132

Sincerely

TOURIONO PARKMAN

Claims Examiner

Florida law requires the following warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

NF24B N0001    20003317491     000  COLL   E2W     20181120 CLAI0001

Exhibit C



# CCC⊂ONE. MARKET VALUATION REPORT

Prepared for INFINITY INSURANCE COMPANY

## REPORT SUMMARY

### CLAIM INFORMATION

| | |
|---|---|
| Owner | Sardinas, Jorge |
| | REDACTED |
| | |
| Loss Vehicle | 2016 Scion tC Automatic |
| Loss Incident Date | 09/14/2018 |
| Claim Reported | 09/19/2018 |

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by INFINITY INSURANCE COMPANY.

Loss vehicle has 26% fewer than average mileage of 40,200.

### INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 90072414 |
| Claim Reference | ICS20003317491_2237024 |
| Adjuster | Aleman, Leonardo |
| Appraiser | Mckee, Jimmy |
| Odometer | 29,626 |
| Last Updated | 09/24/2018 10:40 AM |

### VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 15,642.00** |
| PRIOR DAMAGE | - $ 593.72 |
| **Adjusted Vehicle Value** | **$ 15,048.28** |
| Vehicular Tax (6.3323%) | + $ 952.90 |
| Tax reflects applicable state, county and municipal taxes. | |
| NO TAXES | - $ 952.90 |
| **Value before Deductible** | **$ 15,048.28** |
| Deductible | - $ 1,000.00 |
| **Total** | **$ 14,048.28** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

#### BASE VEHICLE VALUE

This is derived per our Valuation methodology described on the next page.

#### ADJUSTED VEHICLE VALUE

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology...........................2

Vehicle Information...............................3

Vehicle Condition...............................6

Comparable Vehicles............................7

Valuation Notes...............................9

Supplemental Information.......................10

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# VALUATION METHODOLOGY

## How was the valuation determined?



**CLAIM INSPECTION**

INFINITY INSURANCE COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:

- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

| | Owner: Sardinas, Jorge |
|---|---|
| | Claim: ICS20003317491_2237024 |

# 🚐 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | MIAMI, FL 33187-6714 |
| VIN | REDACTED |
| Year | 2016 |
| Make | Scion |
| Model | tC |
| Body Style | Automatic |
| Body Type | Hatchback |
| Engine - | |
| Cylinders | 4 |
| Displacement | 2.5L |
| Fuel Type | Gasoline |
| Carburation | Sequential MPI |
| Transmission | Automatic Transmission |
| Curb Weight | 3082 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |
| National Highway Traffic Safety Administration | 2 Recalls |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC☰ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# 🚙 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Odometer | 29,626 | |
| Transmission | Automatic Transmission | ✔ |
| Power | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Power Trunk/Gate Release | 🔲 |
| Decor/Convenience | Air Conditioning | ✔ |
| | Till Wheel | ✔ |
| | Cruise Control | ✔ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Console/Storage | ✔ |
| | Keyless Entry | ✔ |
| | Telescopic Wheel | ✔ |
| | Message Center | 🔲 |
| Seating | Cloth Seats | ✔ |
| | Bucket Seats | ✔ |
| | Reclining/Lounge Seats | ✔ |
| Radio | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Auxiliary Audio Connection | ✔ |
| | Premium Radio | ✔ |
| Wheels | Aluminum/Alloy Wheels | ✔ |
| Roof | Electric Glass Roof | ✔ |
| | Skyview Roof | ✔ |
| Safety/Brakes | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |

To the left is the equipment of the loss vehicle that INFINITY INSURANCE COMPANY provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

🔲 **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

# CCC⊠ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# VEHICLE INFORMATION

**VEHICLE EQUIPMENT**

|  |  |  |
|---|---|---|
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Head/Curtain Air Bags | ✔ |
| | Hands Free | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| Exterior/Paint/Glass | Dual Mirrors | ✔ |
| | Tinted Glass | ✔ |
| | Rear Window Wiper | ✔ |
| | Signal Integrated Mirrors | ✔ |
| | Clearcoat Paint | ✔ |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE. MARKET VALUATION REPORT**

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Carpets | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Dashboard | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Headliner | AVERAGE PRIVATE | AVERAGE | $ 0 |
| **EXTERIOR** | | | |
| Body | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Glass | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Paint | AVERAGE PRIVATE | AVERAGE | $ 0 |
| **MECHANICAL** | | | |
| Engine | AVERAGE PRIVATE | AVERAGE | $ 0 |
| Transmission | AVERAGE PRIVATE | AVERAGE | $ 0 |
| **TIRES** | | | |
| Front Tires | AVERAGE PRIVATE | LF 7/32 RF 7/32 | $ 0 |
| Rear Tires | AVERAGE PRIVATE | LR 7/32 RR 7/32 | $ 0 |
| **Total Condition Adjustments** | | | **$ 0** |

INFINITY INSURANCE COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE.** MARKET VALUATION REPORT | Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Odometer | 29,626 | 40,755 | 64,305 |
| Automatic Transmission | ✓ | ✗ | ✗ |
| 6 Speed Transmission | ✗ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✓ | ✗ | ✗ |
| Air Conditioning | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ |
| Message Center | ✓ | ✗ | ✗ |
| Cloth Seats | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ |
| Reclining/Lounge Seats | ✓ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ |
| CD Player | ✗ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ |
| Auxiliary Audio Connection | ✓ | ✓ | ✓ |
| Premium Radio | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ |
| Electric Glass Roof | ✓ | ✓ | ✓ |
| Skyview Roof | ✓ | ✓ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ |
| Head/Curtain Air Bags | ✓ | ✓ | ✓ |
| Hands Free | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ |

**Comp 1**       Updated Date: 07/14/2018
2016 Scion Tc Manual 4 2.5l Gasoline Sequential Mpi
VIN   REDACTED
Dealership South Dade Toyota
Telephone (786) 298-2183
Source Truecar
Stock # 782862A
Distance from Miami, FL
7 Miles - Homestead, FL

**Comp 2**       Updated Date: 09/01/2018
2016 Scion Tc Manual 4 2.5l Gasoline Sequential Mpi
VIN   REDACTED
Dealership Toyota Of North Miami
Telephone (866) 661-5244
Source Truecar
Stock # C851910A
Distance from Miami, FL
28 Miles - Miami, FL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

'The **Condition Adjustment** sets that comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

# CCCONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

## COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Stability Control | ✔ | ✔ | ✔ |
| Dual Mirrors | ✔ | ✔ | ✔ |
| Tinted Glass | ✔ | ✔ | ✔ |
| Rear Window Wiper | ✔ | ✔ | ✔ |
| Signal Integrated Mirrors | ✔ | ✔ | ✔ |
| Clearcoat Paint | ✔ | ✔ | ✔ |
| California Emissions | ✘ | ✔ | ✔ |
| | | | |
| **List Price** | | $ 13,498 | $ 14,000 |
| **Adjustments:** | | | |
| Make/Model/Trim | | + $ 675 | + $ 675 |
| Options | | - $ 75 | - $ 75 |
| Mileage | | + $ 1,108 | + $ 2,756 |
| Condition¹ | | - $ 772 | - $ 772 |
| **Adjusted Comparable Value** | | **$ 14,434** | **$ 16,584** |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# VALUATION NOTES

09/24/2018 10:40 - POADJ CHANGE REQUESTED BY: PARKMAN,TOURIONO

09/24/2018 10:40 - Condition Comments changed after Valuation

09/24/2018 10:40 - Pre/Post Tax data modified after Valuation

09/24/2018 10:39 - POADJ CHANGE REQUESTED BY: PARKMAN,TOURIONO

09/24/2018 10:39 - Pre/Post Tax data modified after Valuation

09/24/2018 10:39 - Options added :[Message Center,Power Trunk/Gate Release]

09/24/2018 10:39 - Post Valuation Adjustment entered for:

09/24/2018 10:39 - Options removed :[California Emissions]

09/24/2018 10:39 - Condition Comments changed after Valuation

This Market Valuation Report has been prepared exclusively for use by INFINITY
INSURANCE COMPANY, and no other person or entity is entitled to or should rely upon
this Market Valuation Report and/or any of its contents. CCC is one source of vehicle
valuations, and there are other valuation sources available.

Statutes concerning vehicle value
include Florida Statute XXXVII -
626.9743.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC☎ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides INFINITY INSURANCE COMPANY information reported by Experian regarding the 2016 Scion tC ▨▨▨▨▨▨. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✔ No Event Found
☎ Event Found
▣ Information Needed

| TITLE CHECK | RESULTS FOUND | |
|---|---|---|
| Abandoned | ✔ | No Abandoned Record Found |
| Damaged | ✔ | No Damaged Record Found |
| Fire Damage | ✔ | No Fire Damage Record Found |
| Grey Market | ✔ | No Grey Market Record Found |
| Hail Damage | ✔ | No Hail Damage Record Found |
| Insurance Loss | ✔ | No Insurance Loss Record Found |
| Junk | ✔ | No Junk Record Found |
| Rebuilt | ✔ | No Rebuilt Record Found |
| Salvage | ✔ | No Salvage Record Found |

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

| EVENT CHECK | RESULTS FOUND | |
|---|---|---|
| NHTSA Crash Test Vehicle | ✔ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ | No Frame Damage Record Found |
| Major Damage Incident | ✔ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ | No Odometer Problem Record Found |
| Recycled | ✔ | No Recycled Record Found |
| Water Damage | ✔ | No Water Damage Record Found |
| Salvage Auction | ✔ | No Salvage Auction Record Found |

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

| VEHICLE INFORMATION | RESULTS FOUND | |
|---|---|---|
| Accident | ▣ | Accident Record Found |
| Corrected Title | ✔ | No Corrected Title Record Found |
| Driver Education | ✔ | No Driver Education Record Found |
| Fire Damage Incident | ✔ | No Fire Damage Incident Record Found |
| Lease | ✔ | No Lease Record Found |
| Lien | ✔ | No Lien Record Found |
| Livery Use | ✔ | No Livery Use Record Found |
| Government Use | ✔ | No Government Use Record Found |
| Police Use | ✔ | No Police Use Record Found |
| Fleet | ✔ | No Fleet Record Found |
| Rental | ✔ | No Rental Record Found |
| Fleet and/or Rental | ✔ | No Fleet and/or Rental Record Found |
| Repossessed | ✔ | No Repossessed Record Found |
| Taxi use | ✔ | No Taxi Use Record Found |
| Theft | ✔ | No Theft Record Found |
| Fleet and/or Lease | ✔ | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ | No Duplicate Title Record Found |

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

# CCC☲ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# SUPPLEMENTAL INFORMATION

## FULL HISTORY REPORT RUN DATE: 09/24/2018

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 05/07/2016 | FL | 17 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 05/07/2016 | MIAMI, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/27/2016 | MIAMI, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 02/07/2017 | MIAMI, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 02/12/2018 | MIAMI, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/14/2018 | FL | | Police Report | ACCIDENT REPORTED |
| 09/14/2018 | FL | | Police Report | AIR BAG DEPLOYED |
| 09/14/2018 | FL | | Police Report | VEHICLE WAS TOWED |

### AUTOCHECK TERMS AND CONDITIONS:

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬤ONE. MARKET VALUATION REPORT

Owner: Sardinas, Jorge
Claim: ICS20003317491_2237024

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 2 safety related recall notices that may apply to the above valued vehicle.

DISCLAIMER: The vehicle recall information provided on this report is for information purposes only. The information might apply or not apply to the vehicle being mentioned on this valuation. Infinity does not warrant the safety of the damaged vehicle involved on this loss and urges the vehicle owner to have a mechanical safety inspection done by a qualified mechanic before using the vehicle in any way.

**NHTSA Campaign ID :** 16V236000
**Mfg's Report Date :** APR 21, 2016
**Potential Number Of Units Affected :** 94
**Summary :** Southeast Toyota Distributors, LLC (SET) is recalling certain model year 2016 Toyota Yaris, Rav4, Land Cruiser and 4Runner vehicles, and Scion FR-S, iM, and TC vehicles manufactured January 28, 2016, to March 14, 2016. The Load Carrying Capacity Modification Label may not reflect the correct added weight of the installed accessories. As a result, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard number 110, "Tire Selection and Rims for Passenger Cars."
**Consequence :** An incorrect label may result in the vehicle being overloaded, increasing the risk of a crash.
**Remedy :** SET will notify owners, and provide them a corrected label to be installed over the inaccurate label, free of charge. The recall began on June 3, 2016. Owners may contact SET customer service at 1-866-405-4226. SET's number for this recall is SET16A.
**Dates Of Manufacture :** JAN 27, 2016 to MAR 13, 2016
**Manufacturer Recall No. :** SET16A

**NHTSA Campaign ID :** 16V420000
**Mfg's Report Date :** JUN 08, 2016
**Component :** EQUIPMENT:OTHER:LABELS
**Potential Number Of Units Affected :** 4253
**Summary :** Southeast Toyota Distributors, LLC (SET) is recalling certain model year 2016 Toyota Camry and Highlander, 2015-2016 Toyota Tundra, Scion FR-S, and tC vehicles. The Load Carrying Capacity Modification Label may not reflect the correct added weight of the installed accessories. As a result, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard number 110, "Tire Selection and Rims for Passenger Cars."
**Consequence :** An incorrect label may lead an owner to overload the vehicle, increasing the risk of a crash.
**Remedy :** SET will notify owners, and provide a corrected label for placement over the inaccurate label, free of charge. The recall began on July 14, 2016. Owners may contact SET customer service at 1-866-405-4226.
**Dates Of Manufacture :** MAY 05, 2014 to MAY 12, 2016
**Manufacturer Recall No. :** SET-16C

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

Exhibit D



**ZEBERSKY PAYNE**
ZEBERSKY PAYNE SHAW LEWENZ

110 SE 6th Street
Suite 2150
Fort Lauderdale, FL 33301
Tel: 954.989.6333
Fax: 954.989.7781
www.zpllp.com

February 27, 2019

**Sent via fax to: 800-214-5727**
**and First Class Mail**
Touriono Parkman
Infinity Auto Insurance Company
P.O. Box 830807
Birmingham, AL 35283-0807

RE:    Claim #:        20003317491
         Insured/Client:   Jorge Sardinas
         DOL  :       09/14/2018

Dear Touriono Parkman:

This letter is to inform you that your insured Mr. Jorge Sardinas takes the position that INFINITY violated Florida law and breached his insurance policy ("Policy") in several respects in adjusting his total loss claim for his 2016 Scion (the "Scion") and to provide it a chance to cure those violations and breaches. He also provides this notice on behalf of all similarly situated Florida Infinity policyholders.

Use Motor Vehicle Industry Source

As a reminder, INFINITY used a CCC One Market Value Report ("CCC One Report") to calculate an actual cash value of the Scion of $15,048.28, resulting from a base value of $15,642.00, minus a prior property damage adjustment of $593.72. From that amount, Infinity subtracted a $1000 deductible and paid $14,048.28. The CCC One Report also shows an addition of $952.90 in sales tax and then a deduction of that same amount, resulting in a net $0 change to the value. Presumably INFINITY did this on the theory that it can wait until Mr. Sardinas actually buys a new car to pay sales tax. INFINITY uses CCC One Reports to value the total loss claims of all of its Florida policyholders.

Fla. Stat. § 626.9743(5)(a)(2) provides, in pertinent part, as follows:

> (5) When the insurance policy provides for the adjustment and settlement of first-party motor vehicle **total losses** on the basis of **actual cash value** or replacement with another of like kind and quality, the insurer shall use one of the following methods:

 www.zpllp.com

Touriono Parkman
Infinity Auto Insurance Company
February 27, 2019
Page 2 of 3

> (a) The insurer may elect a cash settlement **based upon the actual cost to purchase a comparable motor vehicle, including sales tax,** if applicable pursuant to subsection (9). Such cost may be derived from:
>
> ...
>
> 2. The retail cost as determined from a **generally recognized used motor vehicle industry source** such as:
>
> a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; ...

To the extent Part E of the Policy could be interpreted on its face as allowing INFINITY to value the Scion by a method other than those provided in the statute or to pay other than "the actual cost to purchase a comparable motor vehicle," Part F of the Policy, the General Provisions, provides that the Policy is deemed amended to conform to the statute. In addition, Florida law provides for such amendment.

The payment by INFINITY, the accompanying correspondence, and the CCC One Report reveal that INFINITY chose to pay a cash settlement to Mr. Sardinas of the retail cost of the Scion as determined from an electronic database, specifically the CCC One database. INFINITY does the same for all its Florida policyholders who suffer total losses. This violates § 626.9743(5)(a)(2), Florida Statutes, and thus breaches the Policy, because the CCC One database is not a "generally recognized used motor vehicle industry source."

Accordingly, Mr. Sardinas demands that INFINITY recalculate the retail cost of the Scion using an electronic database that is a generally recognized used motor industry source. Mr. Sardinas suggests using the NADA database because it is clearly a generally recognized used motor vehicle industry source, INFINITY likely already has access to it through the CCC One database, it is otherwise easily available, and it has the capability of giving a value as of the Date of Loss. If the generally recognized used motor vehicle industry source utilized by INFINITY provides a value higher than $15,048.28, then Mr. Sardinas demands that INFINITY pay him the difference plus the additional sales tax that will result. Likewise, Mr. Sardinas demands that INFINITY do the same for all its similarly situated policyholders.

<u>Retails Costs of a Comparable Motor Vehicle</u>

Also, § 626.9743(5)(a)(2), Florida Statutes, requires INFINITY to pay Mr. Sardinas *all* retail costs that he is reasonably likely to incur in purchasing a comparable motor vehicle without regard to whether he purchases a replacement vehicle and how much he pays. INFINITY recognized that sales tax is owed at some point by calculating his sales tax upfront but then deducting it pending proof he replaced his vehicle. Not paying sales tax upfront violates the statute.

[1816002/1]

 www.zpllp.com

Touriono Parkman
Infinity Auto Insurance Company
February 27, 2019
Page 3 of 3

And INFINITY did not otherwise fully pay all such retail costs, resulting in two additional violations of the statute and breaches of the Policy.

First, INFINITY should have paid Mr. Sardinas $83.25 in title/license fees, because every used car dealer in the State of Florida collects them in connection with the purchase of a used car. Mr. Sardinas thus demands their payment.

Second, every used car dealer in South Florida and, indeed, in the state of Florida charges a document fee in connection with the purchase of a used car, so INFINITY should have reasonably anticipated Mr. Sardinas would incur such a charge in purchasing a comparable motor vehicle at retail, calculated an average or typical charge and paid it to him. Mr. Sardinas now demands INFINITY do this and suggests that $500 would be a reasonable amount. Mr. Sardinas also demands that INFINITY pay such fees to all its similarly situated Florida policyholders.

Please review and respond within thirty (30) days as to whether INFINITY will cure its violations of Florida law and breaches of the Policy. If INFINITY fails to do so, Mr. Sardinas intends to file suit on his own behalf and on behalf of all INFINITY's similarly situated Florida policyholders.

Sincerely,

Edward H. Zebersky
For the Firm

[1816002/1]

Exhibit E

 **INFINITY**

P.O. Box 830807
Birmingham, AL 35283-0807

Dear Mr. Zebersky,

This letter responds to your letter dated February 27, 2019 regarding Jorge Sardinas' total
loss vehicle (2016 Scion), Claim No. 20003317491.

To the extent your letter suggests that the use of a CCC Market Valuation Report as part of
any total loss vehicle adjustment process inherently violates Fla. Stat. § 626.9743(5), you
have offered no supporting authority, and Infinity respectfully disagrees. Infinity's use of
CCC comprises only one component of the total loss adjustment process, and Infinity is
willing to consider additional sources of vehicle value. As stated on the first page of the
CCC Report, "The CCC ONE® Market Valuation Report reflects CCC Information
Services Inc.'s opinion as to the value of the loss vehicle[.]" If you believe that the amount
offered for the 2016 Scion is too low, please provide us with your data source(s) so that we
can consider any additional adjustments that may be appropriate. Also, if you believe that
any of the factual information set forth in the CCC Report is inaccurate, please let us know
so that we can revise the estimate.

You have also requested payment of sales tax and registration fees for the 2016 Scion, in
addition to the actual cash value. As you know, Florida law specifies that sales tax is
payable when it has actually been incurred. *See* Fla. Stat. Ann. § 626.9743(9). We interpret
your letter as specifying that Sardinas has now incurred additional costs for the replacement
of his vehicle, and accordingly we have included a supplemental payment of $952.90.

With regard to your request for a document fee, please clarify as it is our position that such a
fee is not owed. If you have information or support otherwise, please submit and we will re-
evaluate.

Finally, if you still contend that Infinity has offered less than the actual cash value of the
2016 Scion, then please note that there is an appraisal clause in the Policy to resolve any
dispute over the amount of the loss. The appraisal clause provides:

> **You** or **we** may demand appraisal of the **loss**. Both parties will be bound by
> the results of the appraisal. Each party will appoint and pay a competent
> disinterested appraiser and will equally share other appraisal expenses. Each
> appraiser will state separately the **actual cash value** and the amount of **loss**.
> If the appraisers fail to agree, they will select an umpire and submit their
> differences to the umpire. If the appraisers cannot agree on an umpire, either
> may request that a Judge of a court having jurisdiction make selection. An
> award in writing by any two of these three will determine the amount
> payable, subject to the terms of this policy. Attorney fees shall not be
> regarded as appraisal expenses. **We** do not waive any rights by agreeing to
> an appraisal.

*Florida law requires the following warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a
false statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third
degree.*

(Policy, Part E - Coverage for Damage to the Insured Auto, p. 15.)

If you wish to further discuss this loss or to invoke appraisal, please advise.

Sincerely,

John Miller
Manager Total Loss Claims
Infinity Auto Insurance Company
PH: 205-588-3604
Fax: 888-210-4921

*Florida law requires the following warning: Any person who knowingly and with intent to injure, defraud or deceive any insurer files a false statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.*

FL-001