UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61369-CIV-DIMITROULEAS/SNOW

JORGE SARDINAS,

        Plaintiff,

v.

INFINITY AUTO INSURANCE COMPANY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's Motion to Dismiss or Stay, or in the Alternative, to Dismiss and Compel Appraisal (ECF No. 8), which was referred to United States Magistrate Judge Lurana S. Snow by the Honorable William P. Dimitrouleas, United States District Judge. (ECF No. 19)

## I. BACKGROUND

The Plaintiff filed this proposed class action in state court on April 30, 2019, on behalf of Defendant's insureds whose vehicles had been declared a total loss by Defendant. Complaint (ECF No. 1-1). The Defendant, an Ohio corporation, was served with the Complaint on May 3, 2019 (ECF No. 1-1, at 3 of 112), and on May 31, 2019, removed the action to this court, pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1453. Specifically, the Defendant asserted that federal jurisdiction exists under the Class Action Fairness Act, 28 U.S.C.§ 1332(d) (CAFA). Two months after being served with the Complaint, the Defendant filed a Motion to Dismiss, under Fed. R. Civ. P. 12(b)(6), arguing, *inter alia*, that the Complaint should be dismissed or stayed because a prior

class action against Infinity Insurance Company was filed in the Middle District of Florida on September 25, 2018, involving some of the same claims as alleged here.[1]

The Plaintiff describes his experience as follows. The Plaintiff's vehicle, a 2016 Scion IC Automatic, was insured by the Defendant. As a result of an accident on September 14, 2018, the vehicle was deemed a total loss, and the Plaintiff made a claim with his insurer, the Defendant. Complaint (ECF No. 1-1), at ¶¶ 48-49. On November 20, 2018, the Defendant provided the Plaintiff with an explanation of its planned net payment (after a deductible of $1,000) of $14,048.28 for the actual cash value of the vehicle. Id., at ¶ 50. The Defendant also advised that it would pay sales tax of $952.50 but only if the insured proved that he replaced the vehicle. Id., at ¶ 51.

The Defendant provided Plaintiff with a report from the CCC ONE electronic system and attendant database, used by the Defendant to adjust and settle total loss claims. Id., at ¶ 29. The CCC system generates a CCC Market Valuation Report that explains the valuation of a total loss vehicle and the actual cash value payment to be made. Id., at ¶ 31. According to the CCC Report provided to the Plaintiff, the Defendant calculated the actual cash value of the Plaintiff's vehicle as $15,048.28, and after reducing that amount by the deductible of $1,000, the Defendant paid the Plaintiff $14,048.28. Id., at ¶¶ 50, 52-53, 94-105.[2] The Plaintiff claims that he should have been paid

---

[1]The Defendant also argues that the Complaint should be dismissed pending completion of an appraisal, pursuant to the terms of the insurance policy, because "the crux of Plaintiff's allegation specifically implicates the amount of loss." Motion (ECF No. 8), at 10. The Plaintiff did not respond to the Defendant's argument about appraisal, and requests the opportunity to do so if the Court decides not to transfer or dismiss the case on the basis of the "first to file" rule. Response to Motion (ECF No. 16), at 2.

[2]According to the CCC Report, as noted in a letter sent by the Plaintiff's counsel to the Defendant, the base value of the Plaintiff's vehicle was $15,642, and a reduction of $593.72 was made for prior property damage. (ECF No. 1-1, at 94, 107-109)

$83.25 in title/license fees, in addition to a "document fee" charged by used car dealers (which the Plaintiff sometimes refers to as a "Dealer fee").

The Plaintiff, with the help of counsel, wrote to the insurer on February 27, 2019, asking that the insurer cure the problems the Plaintiff identified in the adjustment of his claim. (ECF No. 1-1, at 107-109) In response to the Plaintiff's letter, and in the belief that the Plaintiff had incurred sales tax for the replacement of his vehicle, the Defendant made a supplemental payment of $952.90. (ECF No. 1-1, at 111).

The insurance policy, at Part E-Coverage for Damage to the Insured Auto, provides that the insurer will pay for loss to the insured vehicle, and the limit of liability shall not exceed the lesser of: "the actual cash value of the ... property, at the time of loss, which may include an adjustment for depreciation and/or betterment ...." Policy (ECF No. 1-1, at 56, 58). "Actual cash value" is defined as the "market value at the time of the loss based upon vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment." Policy (ECF No. 1-1, at 56). The policy also provides that either the insured or the insurer may demand appraisal "of the loss" and that both parties "will be bound by the results of the appraisal." Policy (ECF No. 1-1, at 59), at 15. The policy also states that the insurer cannot be sued "unless there is full compliance with all terms of this policy." Id., at 18.

In his Complaint, the Plaintiff specifically states that he is not claiming that the amount he was paid for the actual cash value of his vehicle was too low, other than the Defendant's failure to include sales tax, title and registration fees and dealer fees in the payment. Complaint (ECF No. 1-1), at ¶ 58. On July 2, 2019, the Defendant sent a letter to the Plaintiff's counsel, as a "written

3

demand for an appraisal of Jorge Sardinas' loss, pursuant to the terms of his Personal Automobile Policy." (ECF No. 8-3)

Although the Defendant's Motion to Dismiss or Stay remains pending, on August 12, 2019, the parties filed a Joint Scheduling Report. (ECF No. 18)

## II. DISCUSSION

The Defendant seeks dismissal under the "first to file" rule and Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, dismissal of this action and entry of an order compelling the Plaintiff to proceed with the appraisal process identified in the insurance policy. The Plaintiff concedes that the "first to file" rule applies, but asks that this case not be dismissed and instead be transferred to the Middle District of Florida, where the earlier-filed case, Junior v. Infinity Auto Insur. Co., Case No. 6:18-cv-1598-ORL-40-TBS (M.D. Fla.), is pending. The Plaintiff has not yet addressed the Defendant's arguments regarding the appraisal process.

**A. Subject matter jurisdictional prerequisites have been met**

Pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. 1332(d)(2), district courts have subject matter jurisdiction over class actions (of at least 100 members) in which any member of the plaintiff class is of a state different from any defendant and the aggregate total of the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (5), (6). The Plaintiff has brought both a claim for declaratory judgment and also claims for breach of contract.[3] Although the

---

[3]The Eleventh Circuit has held that even a purely declaratory judgment action can satisfy the amount-in-controversy requirement of CAFA. S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312 (11th Cir. 2014) (reversing district court decision to remand to state court declaratory action filed by insured's assignee seeking alternate interpretation of insurance policy that would

4

Plaintiff's Complaint is silent as to a specific amount of damages, the Defendant alleged in its Notice of Removal that the class size exceeds 100, and that the amount in controversy exceeds $5,000,000, and there has been no subsequent dispute as to this issue.[4] Because the jurisdictional prerequisites have been met, the Court finds a sufficient basis for exercise of the subject matter jurisdiction granted under 28 U.S.C. § 1332(d).

**B. The first-filed rule**

In its Motion to Dismiss, the Defendant seeks dismissal under the "first to file" rule. As recently described by the Eleventh Circuit, the "first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." Broward Bulldog, Inc. v. U.S. Dep't of Justice, No. 17-13787, 2019 WL 4593316 (11th Cir. Sept. 23, 2019), citing Collegiate Licensing Co. v. Am. Cas. Co. of Ready, Pa., 713 F.3d 71, 78 (11th Cir. 2013).

In Collegiate Licensing, the court explained that analysis under the first-filed rule

---

result in additional payments for medical treatment already provided). "[T]he value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective, ... [and] must be 'sufficiently measurable and certain' to satisfy the amount-in-controversy requirement." Id., at 1316, quoting Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268-69 (11th Cir. 2000).

[4] At the time of removal, Plaintiff's original Complaint did not include a specific amount of damages, and instead alleged only that the amount in controversy exceeded $15,000, Complaint (ECF No. 1-1, at 10 of 112), ¶ 18. The Plaintiff alleged that "[a]t this time, Sardinas and the Class have no basis to claim that the aggregate amount in controversy in this case exceed[s] $5 million," id., at ¶ 19, but Defendant sufficiently demonstrated that the amount-in-controversy requirement had been met by providing a Declaration estimating the amount in controversy to be in excess of $7,400,000 ($7,400,000 is the estimated unpaid sales tax as to 12,000 first-party personal total loss vehicle claims filed by its Florida insureds over the past five years). Declaration of Fucich (ECF No. 1-2), at ¶ 4.

5

"looks to the character of the suits and the parties to the suits, not simply to the similarity of issues without regard to the identity of the parties asserting them and their asserted rights as presented in the initial lawsuit." Id., 713 F.3d at 79. The first-filed rule not only establishes which court may decide the merits of substantially similar cases, "but also generally establishes which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." Collegiate Licensing, 713 F.3d at 78, citing Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971). In Mann Mfg., the court found that:

> [o]nce the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the court [in Texas, the jurisdiction where the later-filed case was filed] to resolve the question of whether both should be allowed to proceed.... the ultimate determination of whether there actually was a substantial overlap requiring consolidation of the two suits in [New York, the jurisdiction where the earlier case was filed] belonged to the United States District Court in New York.

Id., 439 F.2d at 408.

The party objecting to the later-filed case being transferred to the first-filed jurisdiction must "carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005), quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1983).

**1. Comparison of the character of the two cases**

In Count I the Plaintiff seeks a declaration "regarding past conduct as well [as] future conduct." Complaint (ECF No. 1-1), at ¶ 80. Specifically, the Plaintiff seeks a declaration that the CCC system, used by the Defendant to determine the actual cash value of a total loss vehicle, is not a proper "vehicle valuation method" under Fla. Stat. § 626.9743(5). The Plaintiff also alleges that Fla. Stat. § 626.9743(5) requires payment of dealer fees and title/license plate registration fees, and

6

the up-front payment of sales tax, as part of a total loss settlement. Complaint, at ¶¶ 7-8, 95, 96.[5]

The Plaintiff specifically alleges that he is not seeking monetary relief, id., at ¶ 79, but he also seeks "further supplemental relief" in the form of an order requiring the Defendant to pay title and license plate registration fees (of $83.25) and sales tax to all members of the class of Plaintiffs to whom the Defendant has not paid that tax, id., at ¶¶ 95-96. In Counts II and III the Plaintiff brings a breach of contract action based on the Defendant's failure to pay title and license plate registration fees and sales tax, respectively. Id., at ¶¶ 99-100, 103-04.

In the Second Amended Complaint filed in Junior v. Infinity Auto Insur. Co., the plaintiff alleged a single count for breach of contract, claiming that the defendant failed to pay the actual cash value to each member of the proposed class, because the defendant failed to pay sales tax and title transfer fees when adjusting the insureds' total loss vehicles.

**2. Comparison of the identity of the parties asserting their rights in each of the two cases**

According to the Complaint, the Plaintiff seeks to represent a class of:

> all Florida citizens including Sardinas who: (a) on or after April 30, 2014; (b) are or were covered by an INFINITY personal automobile insurance Policy issued in Florida; (c) made a claim under the Collision or Comprehensive coverage of that Policy for damage or loss to a covered vehicle that INFINITY accepted and treated as a total loss claim; and (d) INFINITY paid the claim on a cash settlement basis with the actual cash value derived from the CCC system.

Complaint (ECF No. 1-1, at 23 of 112), ¶ 63. In Junior, the class identified in the Second Amended

---

[5]The Plaintiff alleges that the Defendant "systematically breaches the Policy, because it routinely refuses to pay sales tax as part of the cash settlement .... Florida courts have already held that upfront payment of sales tax, like title and license plate registration fees, are mandatory, necessarily included in the replacement costs of a total loss vehicle, and therefore are components of actual cash value under the Policy which must be paid ...." Complaint, at ¶ 8.

Complaint is defined as comprising two subparts:

### MONETARY RELIEF CLASS

All insureds, under any Florida policy issued by Infinity Auto Insurance Company and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was field until the date of any certification order.

### INJUNCTIVE RELIEF CLASS

All persons insured by Infinity Auto Insurance Company and its subsidiaries for private-passenger auto physical damage coverage for comprehensive or collision coverage.

Complaint in Junior v. Infinity, (filed in this case at ECF No. 8-2), at ¶ 62.

It is clear that the class definition in the present case substantially overlaps the class definition in the earlier-filed case. Having compared the pleadings in the two cases, the Court finds that the likelihood of substantial overlap between the two suits has been demonstrated.

The parties apparently do not disagree that the first-filed rule applies, but do disagree as to the steps this Court should take. The Defendant seeks dismissal or a stay of the case, and the Plaintiff seeks transfer. The Defendant, as the party objecting to this case being transferred to the Middle District of Florida, has the burden of proving "compelling circumstances" to warrant an exception to application of the first-filed rule, and has failed to carry that burden.

In summary, the Court finds that transfer of this case would be appropriate based on the first-filed rule. Although the Court finds that transfer is appropriate, the Court notes that the Junior case appears to be close to an amicable resolution by the parties. On August 30, 2019, the parties in that case (including the same Defendant before the Court in the present case) jointly filed a motion seeking additional time to file their briefs on the class certification issue, noting that they

"are currently engaged in the process of exchanging documents to memorialize the resolution of this matter." Joint Motion for Enlargement of Time, filed in Junior v. Infinity Auto Insur. Co., Case No. 6:18-cv-1598-ORL-40-TBS, at ECF No. 38.[6]

Because the Court finds that transfer is appropriate, the Court need not address the Defendant's arguments seeking dismissal under Rule 12(b)(6), Fed. R. Civ. P. The Court does, however, provide the following recommendation in the event that the undersigned's recommendation of transfer is not adopted.

**C. The sufficiency of the pleading**

The Defendant also seeks dismissal of this action under Rule 12(b)(6), Fed. R. Civ. P., on the basis that the insurance policy requires "full compliance" with all terms of the policy before a suit can be brought, and the Plaintiff has refused to comply with the Defendant's July 2, 2019, demand to engage in the appraisal process set forth in the policy. As noted above, the Plaintiff has not yet addressed the Defendant's arguments as to the appraisal process.

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all well-pled factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff. Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246 (11th Cir. 2016). Detailed factual allegations are not required, but a plaintiff must include sufficient factual allegations to support a claim for relief that is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[7]

---

[6] Although one of the attorneys for the defendant in that case, Mark Hanover, is also counsel of record for the Defendant in the present case, the Defendant failed to advise this Court of the pendency of the settlement in the Junior case.

[7] Although the Plaintiff is seeking declaratory relief in Count I under Chapter 86 of the Florida Statutes, the elements required under the Florida declaratory judgment act "are not

"[O]n the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations are assumed to be true, "legal conclusions without adequate support are entitled to no assumption of truth." Dusek, at 1246 (internal quotations omitted).

Generally, when evaluating the sufficiency of a complaint challenged under Rule 12(b)(6), the court can consider documents attached to or incorporated in the complaint by reference, in addition to the pleading's allegations. Saunders v. Duke, 766 F.3d 1262 (11th Cir. 2014). A document "need not be physically attached to a pleading to be incorporated by reference into it." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).[8] The parties' insurance contract was attached to the Plaintiff's Complaint, along with the CCC Report and the Court can consider such documents at this stage of the proceeding.

Interpretation of insurance contracts is a question of law. Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir. 2015); Coleman v. Fla. Ins. Guar. Ass'n, 517 So.2d 686 (Fla. 1988). Under Florida law, insurance contracts are construed according to their "plain meaning," Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co., 913 So.2d 528, 532 (Fla. 2005), as understood by the "average person," Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla. 1997).[9]

---

materially different" than those required under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Maryland Cas. Co. v. Smartcop, Inc., No. 4:11-cv-10100-KMM, 2012 WL 2675476 (S.D. Fla. July 6, 2012)(citations omitted).

[8]Written "instruments" attached to a pleading are a part thereof for all purposes, Fed. R. Civ. P. 10(c), but other types of documents attached to a pleading or a motion to dismiss may be considered when ruling on a motion to dismiss only if they are central to the plaintiff's claim and their contents are not in dispute. Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

[9]The parties appear to agree that Florida law governs the interpretation of the insurance policy at issue.

In construing insurance contracts, courts should read the contract, or policy, as a whole, "endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000). When the language of the insurance contract is plain and unambiguous, *i.e.*, the terms are susceptible to only one reasonable interpretation, the contract will be enforced as written. Taurus Holdings, Inc., 913 So.2d at 532. If a term of the contract is ambiguous, *e.g.*, is susceptible to two or more meanings, that ambiguity is "interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla. 1993). Despite these principles of construction favoring the insured, "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." Intervest Const. of Jax, Inc. v. General Fidelity Ins. Co., 133 So.3d 494, 497 (Fla. 2014) (internal quotations and citations omitted).

**1. Claim for declaratory relief as to the use of the CCC ONE system**

As noted above, the Plaintiff asks first for a declaration that the Defendant's use of the CCC ONE system is invalid under Fla. Stat. § 676.9743(5), and also seeks supplemental relief in the form of an order requiring each of the class members' losses to be recalculated using a method that complies with the Florida Statutes. The Plaintiff specifies that the relief sought includes prospective relief.

The Plaintiff's insurance policy defines "Actual cash value" as the "market value at the time of the loss based upon vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment." Policy (ECF No. 1-1, at 56). The Plaintiff's claims in Count I rest on Fla. Stat. § 626.9743, which provides:

11

> When the insurance policy provides for the adjustment and settlement of first-party motor vehicle losses on the basis of actual cash value ..., the insurer shall use one of the following methods:
>
> (a) The insurer may elect a cash settlement based upon the actual cost to purchase a comparable motor vehicle, including sales tax [if applicable]. Such cost may be derived from:
>
>> 1. When comparable motor vehicles are available in the local market area, the cost of two or more such comparable motor vehicles available within the preceding 90 days;
>>
>> 2. The retail cost as determined from a generally recognized used motor vehicle industry source such as:
>>
>>> a. An electronic database if the pertinent portions of the valuation documents generated by the database are provided by the insurer to the first-party insured upon request; or
>>>
>>> b. A guidebook that is generally available to the general public if the insurer identifies the guidebook used as the basis for the retail cost to the first-party insured upon request; or
>>
>> 3. The retail cost using two or more quotations obtained by the insurer from two or more licensed dealers in the local market area.
>
> ....
>
> (c) When a motor vehicle total loss is adjusted or settled on a basis that varies from the methods described in paragraph (a) ... , the determination of value must be supported by documentation, and any deductions from value must be itemized and specified in appropriate dollar amounts. The basis for such settlement shall be explained to the claimant in writing, if requested, and a copy of the explanation shall be retained in the insurer's claim file.
>
> (d) Any other method agreed to by the claimant.

Fla. Stat.§ 626.9743(5).[10]

The Plaintiff alleges that the CCC ONE system is not a "generally recognized used

---

[10]The statute also provides that "[n]othing in this section shall be construed to authorize or preclude enforcement of policy provisions relating to settlement disputes." Fla. Stat. § 626.9743(10).

motor vehicle industry source" Complaint (ECF No. 1-1), at ¶¶ 6, 39-42, 55, and, thus, the Defendant has failed to comply with the provisions of Fla. Stat.§ 626.9743(5)(c), which require that "the determination of value must be supported by documentation."

In Florida, any insurance policy which contains a condition or provision not in compliance with the requirements of Florida's insurance code is not rendered invalid, generally, "but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy ... been in full compliance with this code." Fla. Stat.§ 627.418(1). "Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights." Foundation Health v. Westside EKG Assoc., 944 So. 2d 188, 195 (Fla. 2006) ("[W]here parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into their engagements with reference to such statute, and the same enters into and becomes a part of the contract.")

In addition to the challenge to the use of the CCC ONE system, the Plaintiff seeks a declaration, and supplemental relief in the form of an order, that the Defendant must pay sales tax plus $83.25 for title/license plate registration fees to all member of the class. Essentially, the Plaintiff is attempting to claim that the Defendant breached a statutory provision, Fla. Stat. § 676.9743(5), that the Plaintiff alleges was incorporated in the parties' insurance contract. Complaint (ECF No. 1-1), at ¶ 6.[11]

---

[11]The only reported decision in the Eleventh Circuit interpreting Fla. Stat. § 676.9743 rejected an insurer's argument that the statute should be read into an insurance contract. Bastian v. United Svcs. Auto. Ass'n, 150 F. Supp. 3d 1284, 1295 (M.D. Fla. 2015) (finding that reference in Fla. Stat. § 676.9743(9) to payment of sales tax "incurred" was permissive and because insurer had failed to adopt such language in the policy, insureds were owed full amount of sales tax due on the purchase of a comparable vehicle to their covered vehicle after a total loss, even if

The Plaintiff's pleading contains no challenge to the specific dollar amount he was paid as actual cash value for his vehicle; instead he argues that the Defendant is using an improper method for calculating actual cash value, and that the insurer violated Florida law by failing to pay sales tax up-front and title/license fees. The Plaintiff alleged that "[a]ll conditions precedent" to the maintenance of this case "have occurred, have been performed, have been waived, or [the Defendant] is estopped from asserting them ...." Complaint, at ¶ 21.

The Defendant's Motion to Dismiss and Compel Appraisal argues that by failing to participate in the appraisal process the Plaintiff has failed to comply with all the terms of the policy and, thus, has no right to sue the Defendant. The Court disagrees, particularly in light of its obligation to construe the factual allegations in the light most favorable to the Plaintiff at this stage of the proceedings.

When issues are presented as to the coverage of an insurance policy, such issues are to be "judicially determined by the court and [are] not subject to a determination by appraisers." Johnson v. Nationwide Mut. Ins. Co., 828 So. 2d 1021, 1025 (Fla. 2002). "Unlike arbitration, appraisal exists for a limited purpose - the determination of the amount of the loss." Fla. Ins. Guaranty v. Reynolds, 148 So. 3d 840, 842 (Fla. 5th DCA 2014) (internal quotations omitted), citing Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo Ass'n, 117 So.3d 1226, 1230 (Fla. 3rd DCA 2013).

Moreover, although the Defendant has demanded that the Plaintiff submit to the appraisal process, the Defendant does not appear to agree that payment of the sales tax up-front, or payment of the title/license fees, or "document fee" and/or "Dealer fee," is required under the policy.

---

insureds did not incur exact amount of sales tax).

In Lopez v. Progressive Select Insur. Co., No. 18-61844, (S.D. Fla. May 14, 2019), Judge Dimitrouleas held that appraisal of the parties' dispute as to whether the salvage value was to be included in the actual cash value of a total loss vehicle was "not merely an issue of the amount of money paid to the insureds" and, instead, "there are issues of interpretation for the Court, including whether use of the Mitchell Method [a system for valuing vehicles] was a violation of the Policy and Florida law, and whether Defendant was required to pay the insureds the salvage value of their vehicles under the terms of the Policy." Judge Dimitrouleas quoted the observation of the undersigned, that questioned "what would be the effect of sending the issue to appraisal only to have Defendant later maintain that the policy does not provide for salvage and, accordingly, there is no dispute as to the amount of salvage owed." Judge Dimitrouleas concluded that the plaintiff in Lopez presented "issues of coverage under the Policy, and issues of interpretation of Florida law," and that the case was "not merely a dispute about the *amount* paid to the insured." Accordingly, he declined to compel appraisal.[12]

Based on the Court's review of the parties' arguments, the Court finds that the Plaintiff has sufficiently alleged, at this early stage of the proceedings, and viewing the pleading in the light most favorable to the Plaintiff, a claim for declaratory relief in Count I that is not subject to the appraisal provisions of the policy.

**2. Claims for breach of contract**

In Counts II and III, the Plaintiff argues that the Defendant breached its contract of insurance by failing to pay title and license plate registration fees and sales tax (up-front),

---

[12] Judge Dimitrouleas also noted that the defendant in Lopez had "arguably waived the right to seek appraisal" by participating in the litigation for months before requesting appraisal.

respectively. To state a claim for breach of contract under Florida law, a party must allege the existence of a contract, a material breach of that contract, and resulting damages. <u>Abbott Labs., Inc. v. Gen. Elec. Capital</u>, 765 So.2d 737, 740 (Fla. 5th DCA 2000); <u>see</u>, <u>also</u>, <u>In re Standard Jury Instructions - Contract and Business Cases</u>, 116 So.3d 284 (Fla. June 6, 2013) (No. 416.4, Breach of Contract - Essential Factual Elements). The Defendant also argues that these claims are subject to the appraisal process.

The sufficiency, at least at this stage of the proceedings, of the Plaintiff's allegations of a breach of contract is demonstrated by a comparison to the allegations that were made in <u>Roth v. GEICO General Insur. Co.</u>, No. 16-62942, 2018 WL 3412852 (S.D. Fla. June 14, 2018). In that case, Judge Dimitrouleas granted summary judgment on the plaintiff's breach of contract claim, holding that sales tax and title transfer fees are mandatory parts of replacement costs of a vehicle under Florida law and, therefore, are components of "actual cash value" under the GEICO policies at issue, which defined actual cash value as the price to repair or replace the vehicle at the time of the loss.[13] In the present case, the Plaintiff relies on the provision in his policy of insurance issued by the Defendant that defines "actual cash value" as the "market value at the time of the loss" and specifies that the market value is based, at least in part, on "comparable vehicles available for sale within a reasonable geographic radius." Taking these allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has sufficiently alleged a breach of contract in Counts II and III.

---

[13]Judge Dimitrouleas did not need to rely on Fla. Stat. § 676.9743 for his ruling in <u>Roth</u>, as other statutes were the source for his determination that sales tax and title transfer fees are mandatory fees imposed by Florida law. <u>Roth</u>, at *4, citing Fla. Stat. §§ 212.05, 319.34. Similarly, in <u>Jones v. Government Employees Insur. Co.</u>, No. 6:17-cv-891-ORL-40LRH, 2019 WL 3254207 (M.D. Fla. July 19, 2019), the court found that license plate transfer fees are included in actual cash value, relying on Fla. Stat. §§ 320.02(1) and 320.0605.

Further, the Court finds that these are not the types of disputes that are subject to the appraisal process, for the reasons stated by Judge Dimitrouleas in Lopez v. Progressive Select Insur. Co., No. 18-61844, (S.D. Fla. May 14, 2019).

### III. CONCLUSION

Based on the demonstrated likelihood of substantial overlap between the two cases, the first-filed rule supports the transfer of this case to the Middle District of Florida. In the alternative, if transfer is not ordered, the Court finds that the Plaintiff's claim for declaratory judgment and "supplemental relief" in Count I, and claims for breach of contract as to the unpaid title/license fees, Count II, and for the failure to pay sales tax, Count III, have been sufficiently stated, and are not the type of claims subject to the appraisal process described in the parties' insurance contract.

For the reasons stated above, it is

RECOMMENDED that Defendant's Motion to Dismiss or Stay, or in the Alternative, to Dismiss and Compel Appraisal (ECF No. 8) be DENIED. Further, based on the first-filed rule, it is

RECOMMENDED that this case be transferred to the Middle District of Florida, where an earlier-filed case is pending: Junior v. Infinity Auto Insur. Co., Case No. 6:18-cv-1598-ORL-40-TBS (M.D. Fla.).

The parties shall have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by the Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the

Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

DONE and SUBMITTED at Fort Lauderdale, Florida this 25th day of September, 2019.

_____
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
 Counsel of Record