**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| JORGE SARDINAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-61369-CIV- |
| | ) | DIMITROULEAS |
| INFINITY AUTO INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RENEWED MOTION TO DISMISS AND COMPEL APPRAISAL
AND INCORPORATED MEMORANDUM IN SUPPORT**

Defendant Infinity Auto Insurance Company ("Infinity"), through its undersigned counsel, respectfully moves this Court to dismiss Plaintiff's Complaint (ECF. 1 (attaching Complaint as Ex. 1)) and compel Plaintiff Jorge Sardinas ("Plaintiff") to proceed with contractually-mandated appraisal. Due to multiple transfers and re-assignments of this case (explained further below) Infinity files this Renewed Motion to clarify the procedural posture.

## INTRODUCTION

Plaintiff's claims should be dismissed, and Plaintiff should be compelled to proceed with the contractually-mandated appraisal process set forth in his insurance policy. In other cases pending in the Southern District of Florida, Plaintiff's counsel has attempted to prosecute legal theories similar to those in this case. But his attempts have been repeatedly thwarted where the claim was subject to a timely-invoked mandatory appraisal process, like the one that Infinity has invoked here. Once appraisal has been invoked by either the policyholder or the insurer, then completion of appraisal constitutes a condition precedent to suit on the policy. As the insurance policy and the Federal Rules of Civil Procedure both require satisfaction of all conditions precedent prior to filing suit, then Plaintiff's Complaint must be dismissed.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint in Florida circuit court on April 30, 2019.  (ECF. 1 (attaching Complaint as Ex. 1).)  On May 31, 2019, Infinity timely removed this case to the United States District Court for the Southern District of Florida. (ECF 1.)  On July 8, 2019, Infinity filed a Motion To Dismiss Or Stay, Or In The Alternative, To Dismiss and Compel Appraisal, (ECF 8) ("Initial Motion to Dismiss"), arguing that this action should be dismissed or stayed based on the "first-to-file" rule, in favor of the first-filed action captioned *Junior v. Infinity Auto Insur. Co.*, Case No. 6:18-cv-1598-ORL-40-TBS (M.D. Fla.) (J. Berger).  In the alternative, Infinity argued that Plaintiff's claims should be dismissed, and Plaintiff should be compelled to proceed with the contractually-mandated appraisal process set forth in his insurance policy.  Plaintiff opposed Infinity's Initial Motion to Dismiss, (ECF 16), and Infinity filed a reply in support of its motion (ECF 17).

Judge Dimitrouleas referred Infinity's Initial Motion to Dismiss to Magistrate Judge Lurana Snow by Order of August 14, 2019.  (ECF 19.)  On September 25, 2019, Judge Snow issued a Report and Recommendation, recommending that the case be transferred to the Middle District of Florida where the earlier-filed *Junior* case is pending, and further recommending that Infinity's Initial Motion to Dismiss be denied ("R&R").  (ECF 20.)  With respect to Judge Snow's recommendation to transfer to the Middle District of Florida, neither Infinity nor Plaintiff objected. However, Infinity did timely object on October 9, 2019 to the portion of the R&R recommending denial of the Initial Motion to Dismiss.  (ECF 21.)  Plaintiff opposed Infinity's objection on October 30, 2019.  (ECF 28.)  Infinity filed a reply in support of its objections on November 6, 2019.  (ECF 29.)

On January 22, 2020, Judge Dimitrouleas ordered the case to be transferred to Judge Berger in the Middle District of Florida pursuant to the "first-to-file" rule, and denied any pending motions

as moot.  (ECF 30.)  Judge Dimitrouleas expressly *did not rule on the merits* of Infinity's motion to dismiss and compel appraisal. (*Id*.)  This case was then transferred to the Middle District of Florida, and randomly assigned to Judge Byron.  (ECF 32.)  Infinity filed an unopposed motion to reassign the case to Judge Berger in accordance with Judge Dimitrouleas' January 22, 2020 Order. (ECF 35.)  Judge Byron advised Judge Berger of the pending motion to reassign and, receiving no response, denied the motion and transferred the case back to the Southern District of Florida.  (ECF 42.)  The case was randomly assigned to Judge Smith.  Plaintiff then moved to transfer this case back to Judge Dimitrouleas.  (ECF 52.)  Judge Dimitrouleas issued a Notice to the Parties that he and Judge Berger conferred, and they agreed that the case will remain in the Southern District of Florida.  (ECF 54.)

As Judge Dimitrouleas' Order of January 22, 2020 did not rule on the merits of Infinity's alternative motion to dismiss and compel appraisal, Infinity now files its Renewed Motion to Dismiss and Compel Appraisal for the Court's consideration.

## RELEVANT FACTUAL ALLEGATIONS

On September 14, 2018, Plaintiff was involved in a motor vehicle accident.  (Compl. ¶ 48.) At the time of the accident, Plaintiff's vehicle was insured under a motor vehicle insurance policy issued by Infinity (the "Policy").  (*Id*.)  On November 20, 2018, Infinity declared the vehicle a total loss.  (*Id*. at ¶ 50.)  In accordance with the terms of the Policy and Florida law, Infinity computed the actual cash value of Plaintiff's vehicle and tendered payment.  (Ex. B and C to Compl.)  Plaintiff accepted Infinity's payment.  (Compl. ¶ 53.)

On February 27, 2019, Plaintiff sent a letter to Infinity alleging that Infinity violated Florida law and breached the Policy in adjusting his total loss claim.  (Ex. D to Compl.)  Plaintiff contended that Infinity improperly used a "CCC One Market Value Report" to calculate the actual cash value of the vehicle, and demanded that Infinity "recalculate the retail cost of the [vehicle] using a

generally recognized used motor vehicle industry source" and, "[i]f the generally recognized used motor vehicle industry source used by INFINITY provides a value higher than $15,048.28, then Mr. Sardinas demands that INFINITY pay him the difference plus the additional sales tax that will result." (*Id.*)  Plaintiff also demanded that Infinity pay $83.25 in title/license fees and $500 for a "document fee," that is purportedly charged by "every used car dealer[.]" (*Id.*)

Infinity responded by letter of March 28, 2019, disagreeing that its method of adjusting the loss vehicle violated Florida law.  (Ex. E to Compl.)  Infinity advised Plaintiff, "[i]f you believe that the amount offered for [the loss vehicle] is too low, please provide us with your data source(s) so that we can consider any adjustments that may be appropriate." *Id.*  Infinity included a supplemental payment of $952.90 for sales tax and registration fees, and advised Plaintiff that the "document fee" was not owed.  (*Id.*)  Finally, Infinity indicated that if Plaintiff "still contend[ed] that Infinity has offered less than the actual cash value of the [vehicle], then please note that there is an appraisal clause in the Policy to resolve any dispute over the amount of the loss." (*Id.*)

Instead of responding to Infinity's letter, Plaintiff filed this suit.  He alleges two counts for "Breach of Contract" [sic] and one count for declaratory judgment, on behalf of himself and a putative class.  (*See id.* at ¶¶ 78-105.)  Plaintiff seeks the following declaratory relief:  (1) a judgment that the vehicle valuation Infinity utilizes purportedly fails to comply with Florida law and the policy; and (2) a judgment that Florida law and the policy require payment of dealer fees, license plate registration fees, title transfer fees, and sales tax when paying total loss vehicle claims. (*Id.* at pp. 28-29.)[1]  Plaintiff also seeks compensatory damages, prejudgment and post-judgment

---

[1] In an earlier filed action against Infinity that remains pending, *Junior v. Infinity Auto Insur. Co.*, Case No. 6:18-cv-1598-ORL-40-TBS (M.D. Fla.) (J. Berger), Infinity has agreed to settle this particular claim on a class basis.  On June 5, 2020, Magistrate Judge Embry Kidd issued a Report and Recommendation urging the court to grant preliminary approval to the putative class action settlement in *Junior*.  *Id.* at ECF 56.

interest, and attorneys' fees and costs on behalf of himself and the putative class.[2]  (*Id*. at pp. 28-30.)

Infinity's payment obligations are governed by the terms of the Policy and Florida law.  In particular, Part E of the Policy provides in pertinent part:

**INSURING AGREEMENT**

If the **Declarations Page** shows a premium charged for **collision** coverage, we will pay for direct and accidental **loss** to the **Insured auto**, including its factory-installed equipment caused by **collision**, less any applicable **deductible** for each separate **loss**.

**ADDITIONAL DEFINITIONS USED IN PART E ONLY**

1.  "**Actual cash value**" means market value at the time of the **loss** based upon **vehicle** mileage, age, condition, original optional equipment, and comparable **vehicles** available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less **depreciation** and/or **betterment**.

3.  "**Betterment**" means a deduction for making an item better or adding value thereto.

7.  "**Depreciation**" means the loss of value caused by physical, technological, social, and/or location deterioration.

**APPRAISAL - PART E ONLY**

**You** or **we** may demand appraisal of the **loss**. Both parties will be bound by the results of the appraisal.  Each party will appoint and pay a competent disinterested appraiser and will equally share other appraisal expenses.  Each appraiser will state separately the **actual cash value** and the amount of **loss**.  If the appraisers fail to agree, they will select an umpire and submit their differences to the umpire.  If the appraisers cannot agree on an umpire, either may request that a judge of a court having jurisdiction make selection.  An award in writing may by any two of these

---

[2] The putative class is defined as:  "[A]ll Florida citizens including Sardinas who: (a) on or after April 30, 2014; (b) are or were covered by an INFINITY personal automobile insurance Policy issued in Florida; (c) made a claim under the Collision or Comprehensive coverage of that Policy for damage or loss to a covered vehicle that INFINITY accepted and treated as a total loss claim; and (d) INFINITY paid the claim on a cash settlement basis with the actual cash value derived from the CCC system.  The class period will be from April 30, 2019 [sic], to the date of class certification[.]"  (Compl. ¶ 63).

three will determine the amount payable, subject to the terms of this policy. Attorney fees shall not be regarded as appraisal expenses.  **We** do not waive any rights by agreeing to an appraisal.

(Ex. A to Compl. at pp. 12-13, 15.)  The Policy also provides in pertinent part:

**SUITS AGAINST US**

**We** may not be sued unless there is full compliance with all terms of this policy.

(*Id*. at p. 18.)

## ARGUMENT

### I.    Standard

Rule 9(c) of the Federal Rules of Civil Procedure requires a plaintiff to plead that "all conditions precedent have occurred or have been performed."  Fed. R. Civ. P. 9(c).  If a defendant denies with particularity that a condition precedent has been performed, then the plaintiff "bears the burden of providing that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied."  *Myers v. Cent. Fla. Inv., Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010) (citation omitted).  "When a party fails to meet the requirements of Rule 9(c), his claim is subject to dismissal."  *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV, 2019 WL 2245475, at *2 (S.D. Fla. Mar. 15, 2019) (Mag. J. Seltzer) (citing *Moore v. Travelers*, 321 F. Appx. 911, 913 (11th Cir. 2009)); *Cambridge Condo Holdings, LLC v. Indian Harbor Ins. Co.*, No. 10-23961-CIV, 2011 WL 13220994, at *1 (S.D. Fla. Apr. 13, 2011) ("Although the complaint baldly asserts that it '[has] satisfied or will satisfy all other conditions precedent to the filing of this cause of action,' it has not met the standard required by Rule 9(c).").

### II.    Plaintiff's Claims Should Be Dismissed Pending Completion Of Mandatory Appraisal Because, Once Invoked By Infinity, Appraisal Became A Condition Precedent To Suit On The Policy.

By the plain terms of the Policy, Plaintiff and Infinity agreed to resolve all disputes over the amount of the loss by appraisal upon invocation by either party.   (Ex. A to Compl. at p. 15

("**You** or **we** may *demand* appraisal of the **loss**. Both parties will be bound by the results of the appraisal. Each party *will* appoint and pay a competent disinterested appraiser and *will* equally share other appraisal expenses. Each appraiser *will* state separately the **actual cash value** and the amount of **loss**." (emphasis in bold original, emphasis in italics added)).) Infinity sent a letter to Plaintiff on July 2, 2019 demanding appraisal and thereby invoking the obligatory, binding process contemplated in the Policy ("Appraisal Demand Letter") (attached hereto as **Ex. 1**). Because the crux of Plaintiff's allegation specifically implicates the amount of loss, *infra* Section III, appraisal is the appropriate and contractually-required method for resolving his claim.

Further, completion of an appraisal is a condition precedent to suit on the Policy by virtue of the "Suits Against Us" clause, which states that Infinity "may not be sued unless there is full compliance with all terms of this policy." (*Id.*) Thus, this suit must be dismissed unless and until the amount of the loss is resolved through appraisal. *See Moore*, 321 F. Appx. at 913 (affirming dismissal of claims that insurer failed to include general contractor costs for failure to comply with the appraisal provision as condition precedent); *Bettor v. Esurance Property and Casualty Insurance Company*, Case No. 18-61860-CIV (S.D. Fla. entered Mar. 28, 2019) (Seltzer, Mag. J.), ECF No. 29, *rep. and rec. adopted in Bettor v. Esurance Property and Casualty Insurance Company*, Case No. 18-61860-CIV-MORENO (S.D. Fla. entered June 17, 2019) (Moreno, J.), ECF No. 42 (dismissing class action declaratory judgment and breach of contract claims and compelling appraisal); and *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV, 2019 WL 2245475 (S.D. Fla. entered Mar. 15, 2019) (Seltzer, Mag. J.), *rep. and rec. adopted in Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059-CIV, 2019 WL 5209015 (S.D. Fla. Aug. 6, 2019) (Gayles, J.) (same). *See also Walker v. Allstate Property & Casualty Insurance Company, et al.*, Case No. 2:19-CV-701-RDP (N.D. Ala. entered Mar. 10, 2020), ECF Nos. 71 and 72 (granting motion to dismiss and compelling appraisal), and *McGowan v. First Acceptance*

*Ins. Co., Inc.*, Case No. 8:19-cv-01101-SCB-CPT (M.D. Fla. entered Aug. 14, 2019), ECF 30 (same), *appeal docketed*, No. 19-13485 (11th Cir. Sept. 5, 2019).   The Reports and Recommendations in *Bettor* and *Bloomgarden*, and the Orders in *Bettor*, *Bloomgarden*, *McGowan* and *Walker*, are attached hereto as compilation **Ex. 2**.

The *Bettor* and *Bloomgarden* cases are directly on point.  The plaintiff's counsel in those cases was the same as in this case.  Like here, the plaintiff's counsel filed putative class action suits for declaratory judgment and breach of contact against insurers arising out of total loss vehicle claims that were allegedly underpaid due to the use of an allegedly improper adjustment process.  Also like here, each insurer sent a letter invoking appraisal.  In each case, the court dismissed the claims and compelled appraisal, as Infinity urges the Court to do here.

Enforcing the appraisal provision not only fulfills the contractual expectations of the parties, but also serves the interests of efficiency.  "Courts in Florida favor appraisal provisions for which the parties themselves have contracted, preferring appraisal over resolution through judicial means." Ex. 2, *Bettor* Report and Recommendation at 5 (citing *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. 3d DCA 1995).)  This is in part because "[c]onsiderable resources might otherwise be required to resolve the underlying factual and legal issues can be saved at the outset by the appraisers' relatively swift and informal decision as to the amount of the disputed loss." *Id*. at 5-6 (citing *Middleton*, 648 So. 2d at 1201-02).

Courts in the Eleventh Circuit are not alone in their reasoning.  Indeed, courts across numerous jurisdictions have dismissed similar claims in favor of appraisal.  *See Enger v. Allstate Ins. Co.*, 407 Fed. App'x. 191, 193 (9th Cir. 2010) (upholding dismissal of declaratory judgment action that insurer used improper valuation method and finding that "until an appraisal is completed, it is impossible to know whether [plaintiff's] claim in fact was undervalued, such that her claims for breach of contract, breach of the covenant of good faith and fair dealing, and Cal.

Bus. & Prof. Code § 17200 et seq., are viable."); *Marchinek v. Safeco Ins. Co. of Am.*, Case No. CV 17-70-BLG-SPW-TJC, 2018 WL 934631, *5 (D. Mont. Jan. 26, 2018) (dismissing claims and compelling appraisal); *Shearer v. State Farm Fire & Cas. Co.*, Case No. 16-09469(FLW)(LHG), 2017 WL 3611743, *3 (D.N.J. Aug. 22, 2017) (compelling appraisal); *Botai v. Safeco Ins. Co. of Illinois*, Case No. 2:14-CV-00445-EJL-REB, 2015 WL 4507486, *5 (D. Idaho July 24, 2015) (compelling appraisal). *Cf. Alfiero v. MetLife Auto & Home Ins. Agency, Inc.*, Case No. 2:16-CV-513-DBH, 2017 WL 2804902, *3 (D. Me. June 28, 2017) (granting summary judgment to insurer for insured's failure to participate in appraisal).

### III.   Appraisal Is Appropriate Here Because The Core Dispute Concerns Whether Infinity Undervalued Plaintiff's Total Loss Vehicle.

Plaintiff alleges that Infinity's use of the CCC valuation tool resulted in an actual cash value for his total loss vehicle that was too low.  Thus, the fundamental dispute between the parties concerns valuation, or "the amount of the loss."  Count I seeks a declaration that the Policy and Florida law do not allow Infinity to adjust and settle total loss claims using the CCC system and that Infinity must pay Dealer Fees and title/license plate fees and sales tax up-front as part of its cash settlements of total loss claims.  (Compl. ¶ 10.)  There is no doubt that Plaintiff contends Infinity undervalued the actual cash value of his vehicle.  *See, e.g.*, *id.* at ¶ 34 ("Upon information and belief, the CCC system omits some of the highest priced comparable vehicles in the area *in order to decrease the "Base Vehicle Value*.") (emphasis added); *id.* at ¶ 35 (The CCC system "makes a uniform *downward price adjustment*[.]") (emphasis added); *id.* ¶ 36 ("This systematic *downward adjustment* … results in a flat and uniform *value decrease* … thereby *lowering the average adjusted prices*" and "*lowering* the total loss vehicle's "Base Vehicle Value.") (emphasis added); *id.* at ¶ 37 ("… '[R]etail cost' should not be *adjusted downward* ….") (emphasis added); *id.* at ¶ 38 ("[T]he CCC methodology results in 'Adjusted Values' *that are lower than* the NADA

and KBB retail clean or dealer values.") (emphasis added); and *id*. at ¶ 40 ("…calculated to *decrease the value* of vehicles below actual cost …") (emphasis added); *see also* Ex. D to Compl. ("If the generally recognized used motor vehicle industry source used by INFINITY provides a value higher than $15,048.28, then Mr. Sardinas demands that INFINITY pay him the difference plus the additional sales tax that will result.").) Because Plaintiff's Complaint plainly alleges that Infinity undervalued his total loss vehicle, appraisal is the appropriate and contractually-required method for resolving his claim.

### a. Infinity Respectfully Disagrees With Judge Snow's Recommendations Respecting Appraisal in the R&R.

To the extent Judge Snow found that the Complaint allegedly raises only issues of coverage rather than a dispute over the amount of the loss, (ECF No. 20, pp. 14-15 and 17), Infinity respectfully disagrees. Beneath the veneer of allegations about a purported violation of Florida statutes, the core dispute here concerns whether Infinity paid enough under the Policy for Plaintiff's total loss vehicle. The R&R ignores numerous portions of the Complaint, *supra* Section III, evidencing Plaintiff's contention that Infinity allegedly underpays the actual cash value of his car, and seeks a higher payment due to the alleged undervaluation.

The R&R also did not consider or distinguish the numerous analogous cases cited above, dismissing similar class action complaints in favor of appraisal. *See supra* Section II. In *Bloomgarden* and *Bettor*, Judge Gayles and Judge Moreno respectively came down squarely opposite to Judge Snow. Contrary to the recommended findings of the R&R, Judge Gayles adopted a Report and Recommendation that found as follows:

> Although [Plaintiff] purports to 'seek[] no monetary relief' … , and 'not disput[e] the values of the totaled vehicle[] or loss[],' … the broad thrust of his pleading, and more particularly, his wherefore clauses, belie those representations. Indeed, as an adjunct to his request for declaratory relief in Count I, [Plaintiff] plainly asks the Court for a judgment requiring [the Insurer] to 'readjust total loss claims,' and he openly seeks a damages award based on that readjustment.

-10-

Ex. 2, *Bloomgarden*, 2019 WL 2245475, at *3.  *See also* Ex. 2, *Bettor* Report and Recommendation at 7 ("Stated simply, this litigation is not about coverage, but about the amount of money owed to Bettor following an unsatisfactory claim adjustment.  Bettor cannot avoid the application of the appraisal provision by the simple expedient of highly technical and internally inconsistent pleading.").)  Moreover, after the conclusion of briefing on Infinity's Initial Motion to Dismiss, *two more* federal district courts in the Eleventh Circuit granted an insurer's motion to dismiss and compel appraisal in a total loss vehicle putative class action.  *Supra* Section I (citing *McGowan* and *Walker*).  Thus, Judge Snow's R&R contravenes the prevailing weight of authority.

In the R&R, Judge Snow relies upon *Lopez v. Progressive Select Insurance Co.*, Case No. 0:18-cv-61844-WPD (S.D.Fla. entered May 14, 2019) (Dimitrouleas, J.), ECF 56, which found that plaintiffs' claims were not subject to appraisal. (ECF No. 20, pp. 15 and 17.)  However, *Lopez* is easily distinguishable because Judge Dimitrouleas found the insurer "arguably waived the right to seek appraisal by filing a joint scheduling report, engaging in discovery, and generally participating in this action on the merits for months before requesting trial." *Lopez* Amended Order at 7.  That is not the situation here.  No responsive pleading has been filed prior to this one, and there has been no scheduling report, no discovery, and no "general participation" in the case.

### b.  Plaintiff Cannot Avoid Appraisal By Characterizing His Claim As One For Declaratory Judgment.

Attempting to disguise the nature of his claim, Plaintiff contends that he "does not claim that the value that INFINITY paid him for his car … was too low," (Compl. at ¶ 38), and thus the appraisal clause is purportedly inapplicable.  This argument is disingenuous for multiple reasons: (a) the Complaint makes clear Plaintiff's contention that he was allegedly underpaid, *see supra* Section III;  (b) Plaintiff concedes that he seeks additional payments contingent on the outcome of

his preferred valuation methodology;[3] and (c) in the absence of any alleged underpayment (*i.e.*, payment of less than the amount of the loss) Plaintiff has identified no injury or damages, and thus has no standing to prosecute the suit. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (to establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision"). In other words, whatever broader challenges Plaintiff seeks to raise regarding Infinity's adjusting practices or valuation methodology, Plaintiff has no standing to prosecute this suit *if Infinity already sufficiently paid the amount of the loss—* and the Policy explicitly specifies that "the amount of the loss" will be determined through appraisal when either party invokes it. Plaintiff may prefer to dive into the intricacies of vehicle market valuation reports, but he has no authority to set aside integral components of the Policy that would resolve a threshold question regarding the amount of the loss.

Moreover, even if Plaintiff were not disputing the amount of the loss, that does not impair Infinity's absolute contractual right to invoke appraisal. (Ex. A to Compl. at p. 15.) Nor does it change the fact that, once appraisal has been invoked, then completion constitutes a condition precedent to suit on the Policy. It is for that very reason that Plaintiff's self-serving conclusion has been squarely rejected by multiple courts. In *Bloomgarden*, which involved the same plaintiff's counsel as this case, plaintiff similarly argued that he "does not disagree with [the insurer] over the 'amount' of loss in Count I, but only the 'method' for reaching it." Ex. 2,

---

[3] *See, e.g.*, Compl. pp. 28-29 (" … award as further or supplemental relief that INFINITY must recalculate Sardinas's and each Class Member's total loss using a method that complies with Section 626.9743(5), Florida Statutes, and make them new offers based upon the lawful method if the recalculated amounts exceed the amounts paid based on the CCC system"); and ECF No. 28, pp. 3-4 (" … INFINITY must recalculate Sardinas' and each Class Member's total losses, using a method that complies with Section 626.9743(5), Florida Statutes, and make them new **offers** based upon the lawful method, **if** the recalculated amounts exceed the amounts paid based on the CCC system." (emphasis original).)

*Bloomgarden*, 2019 WL 2245475, at *3.  The plaintiff in *Bloomgarden* "characterize[d] his challenge as directed to the lawfulness of [the methodology,] not the valuation of the loss." *Id.* The Magistrate Judge rejected this ploy:

> [Plaintiff's] claims are untenable.  Although [Plaintiff] purports to 'seek[] no monetary relief' … , and 'not disput[e] the values of the totaled vehicle[] or loss[],' … the broad thrust of his pleading, and more particularly, his wherefore clauses, belie those representations.  Indeed, as an adjunct to his request for declaratory relief in Count I, [Plaintiff] plainly asks the Court for a judgment requiring [the Insurer] to 'readjust total loss claims,' and he openly seeks a damages award based on that readjustment.

*Id.* at *3.

As in *Bloomgarden*, the "Wherefore" clause of the Complaint in this case seeks:  "that INFINITY *must recalculate* Sardinas's and each Class Member's total loss using a method that complies with Section 626.9743(5), Florida Statutes, and *make them new offers* based upon the lawful method if the recalculated amounts exceed the amounts paid based on the CCC system[.]" (Compl. pp. 28-9 (emphasis added).)  Thus, Plaintiff here "plainly asks the Court for a judgment requiring [Infinity] to 'readjust total loss claims' and 'openly seeks a damages award based on that readjustment.'" Ex. 2, *Bloomgarden*, 2019 WL 2245475, at *3.  The "crux of the dispute" in Count I is "not about coverage, but about the amount of money owed to [Plaintiff] following an unsatisfactory claim adjustment." *Id.* at *4.  And like *Bloomgarden*, Plaintiff here "cannot avoid the application of the appraisal provision by the simple expedient of highly technical and internally inconsistent pleading." *Id.*[4]  *See also Bettor* and *McGowan*.  Stated simply, Plaintiff's dispute with

---

[4] Counts II and III also plainly allege undervaluation of the total loss value.  Count II alleges breach of contract "for underpaid Collision insurance coverage benefits in the form of title and license plate registration fees."  (Compl. ¶ 99.)  Plaintiff seeks a specific dollar amount—$83.25—in damages.  (*Id*. at ¶ 100; p. 29.)  Count III alleges breach of contract "for underpaid Collision insurance coverage benefits in the form of sales tax," (*id*. at ¶ 103), and seeks damages "in the amount of the unpaid sales tax to all Class members to whom it was not paid" (*id*. at p. 30).

Infinity comes down to disagreement over the amount of the loss for his total loss vehicle claim, and the contract of insurance specifies that this disagreement must be resolved through appraisal.

The Ohio and California cases[5] cited by Plaintiff in his Notice of Supplemental Authority (ECF 55) are neither controlling nor persuasive here, particularly in light of the ample authority from the Eleventh Circuit and nationwide granting appraisal in circumstances analogous to the instant case.  *See supra* Section II.

Finally, this Court's recent decision in *Signor v. Safeco Ins. Co.*, No. 19-cv-61937-WPD (S.D. Fla. Mar. 23, 2020) (J. Dimitrouleas) denying an insurer's motion to dismiss has no bearing on this case.  That decision did not even consider, much less address, the overarching ground for dismissal here: whether the case should be dismissed based on the requirement, which clearly exists here, that the plaintiff complete a contractually mandated appraisal process.  As set forth above, courts, including the majority of courts in Florida to have considered the issue, have specifically rejected, in favor of appraisal, lawsuits alleging an insurer improperly used CCC to evaluate claims and failed to pay the same types of fees Plaintiff complains of here.  As these cases show, where, as here, the defendant has invoked the appraisal requirement, the case should be dismissed.  The *Signor* court simply did not address this issue.  Thus, the Court should dismiss this suit pending completion of appraisal.

**WHEREFORE**, Infinity respectfully requests this Court to enter an Order dismissing or staying this action and compelling Plaintiff to proceed with appraisal as required under his Policy.

Respectfully submitted this 8th day of June 2020.

---

[5] Those cases are *Davis v. GEICO Cas. Co.*, No. 2:19-CV-2477, 2020 WL 68573 (S.D. Ohio Jan. 7, 2020), *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 134169 (S.D. Ohio Jan. 13, 2020), *appeal docketed*, No. 20-3177 (6th Cir. Feb. 14, 2020), and *Munoz v. GEICO Gen. Ins. Co.*, No. 19-CV-03768-HSG, 2019 WL 6465297 (N.D. Cal. Dec. 2, 2019).

By: _/s/Scott A. Cole_
    Scott A. Cole
    FBN: 885630
    COLE, SCOTT & KISSANE, P.A.
    COLE, SCOTT & KISSANE BUILDING
    9150 South Dadeland Boulevard
    Suite 1400
    Miami, Florida 33156
    Scott.Cole@csklegal.com

    Mark L. Hanover (*pro hac vice*)
    Kathleen V. Kinsella (*pro hac vice*)
    DENTONS US LLP
    233 South Wacker Drive
    Suite 5900
    Chicago, Illinois 60606
    Telephone:  (312) 876-8000
    Email:  mark.hanover@dentons.com
    kathleen.kinsella@dentons.com

    *Attorneys for Infinity Auto Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June 2020, I caused a true and correct copy of the foregoing **RENEWED MOTION TO DISMISS AND COMPEL APPRAISAL, AND INCORPORATED MEMORANDUM IN SUPPORT** to be electronically filed with the clerk of the court using the CM/ECF system and sent via e-mail to the following attorneys of record:

Edward H. Zebersky, FBN: 0908370
Mark S. Fistos, FBN: 909191
ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 S.E. 6th Street, Suite 2150
Ft. Lauderdale, FL 33301
(954) 989-6333
*ezebersky@zpllp.com*
*mfistos@zpllp.com*
*ndiaz@zpllp.com*

Alec Schultz, FBN: 35022
Carly A. Kligler, FBN 83980
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, FL 33134
(305) 740-1975
*aschultz@leoncosgrove.com*
*ckligler@leoncosgrove.com*
*eperez@leoncosgrove.com*
*cmanzano@leoncosgrove.com*

Scott R. Jeeves, FBN: 0905630
THE JEEVES LAW GROUP, P.A.
954 First Avenue North
St. Petersburg, FL 33705
(727) 894-2929
*sjeeves@jeeveslawgroup.com*
*khill@jeveslawgroup.com*
*rmandel@jeevesmandellawgroup.com*

Craig E. Roghburd, Esq, FBN: 49182
CRAIG E. ROTHBURD, P.A.
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606
(813) 251-8800
*crothburd@e-rlaw.com*

Casim Adam Neff, Esq., FBN: 94030
NEFF INSURANCE LAW, PLLC
P.O. Box 15063
St. Petersburg, FL 33733-5063
(727) 342-0617
*cneff@neffinsurancelaw.com*

*By:/s/Scott A. Cole*
Scott A. Cole